# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
#### (at Frankfort)

**ZILLOW, INC.**                          Case No.

       **Plaintiff**,               Judge:

v.

**HON. DANIEL P. BORK,**
**Commissioner of the Kentucky**
**Department of Revenue**

Serve: Hon. Andy Beshear
Kentucky Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

and

**HON. BRAD MCDOWELL,**
**Property Valuation Administrator for**
**Shelby County, Kentucky**

Serve: Hon. Andy Beshear
Kentucky Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

and

**HON. KELLIE LANG**
**Property Valuation Administrator for**
**Franklin County, Kentucky**

Serve: Hon. Andy Beshear
Kentucky Attorney General
700 Capitol Avenue, Suite 118

1

Frankfort, KY 40601

and

**HON. JASON SCRIBER**
**Property Valuation Administrator for**
**Henry County, Kentucky**

Serve: Hon. Andy Beshear
Kentucky Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

and

**HON. BLAKE ROBERTSON**
**Property Valuation Administrator for**
**Owen County, Kentucky**

Serve: Hon. Andy Beshear
Kentucky Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

and

**HON. JILL M. MAHONEY**
**Property Valuation Administrator for**
**Trimble County, Kentucky**

Serve: Hon. Andy Beshear
Kentucky Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

and

**HON. JASON NEELY**
**Property Valuation Administrator for**
**Clark County, Kentucky**

2

Serve: Hon. Andy Beshear
Kentucky Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601

      **Defendants**.

---

## COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

Plaintiff Zillow, Inc. ("Zillow"), by and through its attorneys, alleges as follows:

### Introduction

1.     This is a civil action seeking declaratory and equitable relief to prevent the deprivation of Plaintiff's rights, privileges, and immunities under the First and Fourteenth Amendments to the United States Constitution.  Plaintiff asks this Court to declare Kentucky Revised Statutes (KRS) §§ 61.874, 61.8745 & 133.047 ("Commercial Purpose Fee Statutes"), unconstitutional, and to permanently enjoin enforcement of those portions of the statutes that condition Plaintiff's receipt of public records upon satisfying onerous requirements that Kentucky law does not impose upon other similarly situated public records requestors, and which impose penalties for failing to disclose a "commercial purpose."

2.     The Commercial Purpose Fee Statutes violate the First and Fourteenth Amendment by discriminating against Plaintiff on the basis of its viewpoint, and the content of its speech, in violation of its fundamental rights under the Free Speech and

Equal Protection Clauses of the First and Fourteenth Amendments. Further, the Commercial Purpose Fee Statutes are unconstitutional because there is no rational connection between the statutes and a legitimate government interest, and therefore violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## <u>Jurisdiction</u>

3.      This is a civil action seeking a declaratory judgment and injunctive relief to vindicate and safeguard rights of freedom of speech and equal protection under the law secured by the Constitution of the United States. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 2201 & 2202. This action is authorized by 42 U.S.C. § 1983.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to Zillow's claims occurred in this district, and because the defendants are public officials who perform their duties in, and are located within, this judicial district.

## <u>The Parties</u>

5.      Plaintiff Zillow is a Washington for-profit corporation, with its principal place of business in Seattle, Washington.

6.      Defendant Daniel P. Bork ("Commissioner Bork") is the Commissioner of the Kentucky Department of Revenue ("DOR") and is charged with directing,

instructing, and supervising each Kentucky property valuation administrator ("PVA") throughout the Commonwealth of Kentucky, including their enforcement of the Commercial Purpose Fee Statutes.

7.     Defendant Brad McDowell ("PVA McDowell") is the Property Valuation Administrator for Shelby County, Kentucky, and the public official charged with enforcing the Commercial Purpose Fee Statutes for Shelby County, Kentucky.

8.     Defendant Kellie Lang ("PVA Lang") is the Property Valuation Administrator for Franklin County, Kentucky, and the public official charged with enforcing the Commercial Purpose Fee Statutes for Franklin County, Kentucky.

9.     Defendant Jason Scriber ("PVA Scriber") is the Property Valuation Administrator for Henry County, Kentucky, and the public official charged with enforcing the Commercial Purpose Fee Statutes for Henry County, Kentucky.

10.     Defendant Blake Robertson ("PVA Robertson") is the Property Valuation Administrator for Owen County, Kentucky, and the public official charged with enforcing the Commercial Purpose Fee Statutes for Owen County, Kentucky.

11.     Defendant Jill M. Mahoney ("PVA Mahoney") is the Property Valuation Administrator for Trimble County, Kentucky, and the public official charged with enforcing the Commercial Purpose Fee Statutes for Trimble County, Kentucky.

12.     Defendant Jason Neely ("PVA Neely") is the Property Valuation Administrator for Clark County, Kentucky, and the public official charged with

enforcing the Commercial Purpose Fee Statutes for Clark County, Kentucky. (PVAs McDowell, Lang, Scriber, Robertson, Mahoney, Neely are collectively referred to as the "Defendant PVAs.")

**Zillow's Business**

13.     Zillow is a publicly traded company, which was founded in 2006. Zillow owns and operates a portfolio of real estate and home-related brands. Zillow's brands focus on all stages of the home lifecycle: renting, buying, selling, financing, and more. Central to Zillow's corporate mission is "empowering consumers with unparalleled data, inspiration and knowledge around homes."

14.     Zillow's most well-known brand is its website www.zillow.com ("Zillow.com"). Through Zillow.com, anyone with an internet connection can access— free of charge—a living database of more than 110 million U.S. homes ("Database") – including homes for sale, homes for rent and homes not currently on the market. Home information available on Zillow.com includes the type of home (e.g., single family), the year the home was built, the type of heating and air-conditioning, number of parking spots, the lot size, the number of bedrooms, the number of bathrooms, the square footage of the home, available appliances, flooring types, total number of rooms, home style (e.g., colonial), roof type, exterior material, foundation type, price history, property tax history, school district information, and more. Zillow has approximately

131,000,000 unique users who use Zillow's website and mobile apps each month on average.

15.      Zillow.com does not charge users for accessing home listings on its website, but instead derives revenue from, among other ways, selling advertising space on its webpages to other businesses offering real estate-related services and products, and offers its own products such as Zillow Offers and Zillow Home Loans.

16.      To ensure that its Database stays up to date, Zillow regularly makes public records requests to state officials.

17.      Zillow's database contains 1,776,956 homes located in the Commonwealth of Kentucky based on public records. Of those homes, 79,156 are located in the Kentucky counties of Shelby, Franklin, Henry, Owen, Trimble, and Clark. Zillow obtains various pieces of information about those homes from several Kentucky state and county offices, including the PVAs for each county.

18.      From the PVAs, Zillow requests the tax roll, tax assessment, and tax appraisal files (hereinafter "Tax Roll File").

19.      Upon receipt of the Tax Roll File, Zillow adds the data to its Database so that the information can be accessed by its users. One of Zillow's primary uses for the data contained in the Tax Roll File is in creating an estimate of the current value of homes in its Database to its users, which it refers to as a Zestimate®.

20.     Although Zillow does not currently do so, it may decide to resell data extracted from the Tax Roll File to third-parties in the future. Zillow does not currently resell the actual Tax Roll File received to third-parties, and has no plans to do so at this time.

## Property Valuation Administrators

21.     Pursuant to KRS § 132.370, each county must have a PVA, who is an elected state official.

22.     KRS § 132.420 provides:

> The property valuation administrator shall, **_subject to the direction, instruction, and supervision of the Department of Revenue_**, make the assessment of all property in the county except as otherwise provided, prepare property assessment records, and have other powers and duties relating to assessment as may be prescribed by law or by the department.

(Emphasis added.)

23.     Among the duties of the PVA is the duty to prepare the property tax rolls for his or her respective county. KRS § 132.530 (hereinafter "Tax Roll File").

## The Kentucky Open Records Act

24.     The Kentucky Open Records Act, KRS §§ 61.870 through 61.884 (hereinafter "ORA"), and KRS § 133.047 (hereinafter "Tax Roll Statute"), creates two classes of requestors: "noncommercial purpose" and "commercial purpose." KRS § 61.874(4) provides, in pertinent part:

**(a)** Unless an enactment of the General Assembly prohibits the disclosure of public records to persons who intend to use them for commercial purposes, if copies of nonexempt public records are requested for commercial purposes, the public agency may establish a reasonable fee.

**(b)** The public agency from which copies of nonexempt public records are requested for a commercial purpose may require a certified statement from the requestor stating the commercial purpose for which they shall be used, and may require the requestor to enter into a contract with the agency. The contract shall permit use of the public records for the stated commercial purpose for a specified fee.

**(c)** The fee provided for in subsection (a) of this section may be based on one or both of the following:

   **1.** Cost to the public agency of media, mechanical processing, and staff required to produce a copy of the public record or records;

   **2.** Cost to the public agency of the creation, purchase, or other acquisition of the public records.

**(5)** It shall be unlawful for a person to obtain a copy of any part of a public record for a:

**(a)** Commercial purpose, without stating the commercial purpose, if a certified statement from the requestor was required by the public agency pursuant to subsection (4)(b) of this section; or

**(b)** Commercial purpose, if the person uses or knowingly allows the use of the public record for a different commercial purpose; or

**(c)** Noncommercial purpose, if the person uses or knowingly allows the use of the public record for a commercial purpose. A newspaper, periodical, radio or television station shall not be held to have used or knowingly allowed the use of the public record for a commercial purpose merely because of its publication or broadcast, unless it has also given its express permission for that commercial use.

1.       The term "commercial purpose" is defined by the ORA as follows:

**(a)** "Commercial purpose" means the direct or indirect use of any part of a public record or records, in any form, for sale, resale, solicitation, rent, or lease of a service, or any use by which the user expects a profit either through commission, salary, or fee.

**(b)** "Commercial purpose" shall not include:

**1**. Publication or related use of a public record by a newspaper or periodical;

**2.** Use of a public record by a radio or television station in its news or other informational programs; or

**3.** Use of a public record in the preparation for prosecution or defense of litigation, or claims settlement by the parties to such action, or the attorneys representing the parties[.]

20.     For copies of records sought for "noncommercial purposes," a public agency may only charge "the actual cost of reproduction, including the costs of the media any mechanical processing cost incurred by the public agency, but not including the cost of staff required." KRS § 61.874(3).

21.     With respect to public records of the PVA, KRS § 133.047(4) provides:

**(b)** However, in addition to the provisions of KRS 61.874, the Department of Revenue shall develop and provide to each property valuation administrator a reasonable fee schedule to be used in compensating for the cost of personnel time expended in providing information and assistance to persons seeking information to be used for commercial or business purposes.

As used in this paragraph:

**1.** "Reasonable fee" has the same meaning as the fee described in KRS 61.874(4)(c); and

**2.** "Personnel time" means the cost to the agency to create any mechanical processing, data collection, or data creation; the staff required to process, produce, collect, or create data or information; or the cost to the agency for the creation, purchase, or other acquisition of information.

**(c)** Any person seeking information on his own property, or any other person, including the press, seeking information directly related to property tax assessment, appeals, equalization, requests for refunds, or similar matters shall not be subject to fees for personnel time.

22.     The penalties for violations of the commercial purpose requestor requirements are set forth in KRS 61.8745, which provides:

A person who violates subsections (2) to (6) of KRS 61.874 shall be liable to the public agency from which the public records were obtained for damages in the amount of:

**(1)** Three (3) times the amount that would have been charged for the public record if the actual commercial purpose for which it was obtained or used had been stated;

**(2)** Costs and reasonable attorney's fees; and

**(3)** Any other penalty established by law.

23.     In accordance with KRS § 133.047(4)(b), the DOR publishes a fee schedule applicable to requests for PVA records ("DOR Fee Schedule") made for a "commercial or business purpose," a true and accurate copy of which is attached hereto as **Exhibit A**.[1]

---

[1] A copy of the current DOR fee schedule was obtained from the DOR's website at https://revenue.ky.gov/PVANetwork/Pages/PVA-Forms.aspx

11

24.     In addition to the fee schedule, the DOR has created two form documents for use by PVA's in connection with commercial purpose requests. The first is entitled "REQUEST FOR REPRODUCTION OF PVA PUBLIC RECORDS AND CONTRACT FOR COMMERCIAL USERS (KRS 61.870, 61,874 [sic] AND 133.047)" (hereinafter "DOR Request Form and Contract"), a true and accurate copy of which is attached hereto as **Exhibit B**.[2]

25.     The second document is entitled "Contract and Fee Schedule for Commercial Users of PVA Office Records For Use When Non-Geographic Information System (GIS) Records are Requested" (hereinafter "DOR Non-GIS Contract") a true and accurate copy of which is attached hereto as **Exhibit C**.[3]

26.     Use of the DOR Fee Schedule, DOR Request Form and Contract, and DOR Non-GIS Contract is not mandated by law, but PVAs frequently use them in connection with "commercial purpose" requests.

27.     Consistent with KRS § 61.874(4)(b), the DOR Request Form requires a requestor to state whether "use of the information" will be for a "commercial" or "noncommercial" purpose, and to acknowledge that "the information can be used only for the stated purpose and cannot be resold to any other entity." The DOR Request Form further provides a section for a "commercial applicant" to provide a "certified

---

[2] A copy of the current DOR Request Form and Contract was obtained from the DOR's website at https://revenue.ky.gov/PVANetwork/Pages/PVA-Forms.aspx
[3] A copy of the current DOR Non-GIS Contract was obtained from the DOR's website at https://revenue.ky.gov/PVANetwork/Pages/PVA-Forms.aspx

statement" that the "records requested . . . will be used only for the commercial purpose as stated" and that the requestor "agree[s] to the conditions and terms specified in the attached contract or License Agreement."

28.     The DOR Request Form also includes language setting forth the penalties a court may impose under KRS § 61.8745 for a violation of KRS § 61.874(2) through (6).

**Zillow's ORA Requests**

29.     The Tax Roll File prepared by the PVA is a "public record" within the meaning of KRS § 61.870(2). KRS § 133.047(1).

30.     Additionally, "[o]ther real property records in the office of the property valuation administrator shall be subject to the provisions of [the ORA]."

31.     The Tax Roll File contains information regarding residential homes that Zillow cannot obtain from any other reliable source, including the assessor's parcel number, the land use or property class, the year built, the lot size, the number of stories, building area, assessed value, tax amount; and legal description, among other information.

32.     On April 25, 2019, Zillow made requests to the Defendant PVAs for an electronic copy of the "current 2018 Assessment Files or 'Tax Roll File'" for all parcels located within their respective counties of Shelby, Franklin, Henry, Owen, Trimble, and Clark.

33.     In each of the requests, Zillow stated:

. . . Zillow is an online real estate and rental marketplace that provides free access to online property listing, among other services. Zillow intends to make some or all of the information contained in the real property records sought by this request available to users of its website, Zillow.com, free of charge. Zillow generates revenue from, among other sources, the sale of advertising space on Zillow.com, where the information contained in these records will appear. More information about Zillow can be found at https://www.zillow.com/copr/About.htm.

If your office deems Zillow's intended use for these records to constitute a "commercial purpose" within the meaning of KRS § 61.870(4)(a), please provide the reasons for classifying Zillow's use as such. If your office requires additional information regarding Zillow's intended use of these records, please let me know what additional information you will require to make this assessment. If no additional information is required, please let me know what, if any, requirements Zillow must fulfill to obtain these records in the electronic format requested.

*Shelby County Response*

34.     A copy of Zillow's ORA request to Shelby County PVA McDowell is

attached hereto as **Exhibit D** ("Shelby County Request").

35.     In his response, Shelby County PVA McDowell wrote:

I received your request dated April 25 in today's mail.

I have attached the required forms to be completed and signed for the purchase of the Shelby Country assessment files. I have also included an invoice for the cost of the files . . .

If you plan to move forward with the purchase, please complete all necessary forms and return with your payment.

36.     PVA McDowell sent the DOR Non-GIS Contract and the DOR Request

Form and Contract to Zillow to complete and sign. PVA McDowell also sent a

document with the file name "Notice to VendorsSHELBY.doc" which provided:

14

You have requested a copy of the SHELBY County tax roll. Please be aware the use of the information provided is restricted to the use that your company has indicated and that the information, original or repackaged, shall not be resold, given, assigned, etc. without a fourteen (14) day prior notice given to the undersigned, and the undersigned's consent. The payment for, or receipt of, the tax roll indicates that you intend to comply with the provisions of the Kentucky Open Records Act, KRS 61.870-61.884, especially KRS 61.874 and KRS 61.8745.

37.     PVA McDowell sent an invoice to Zillow requesting payment of $39,079.95 for the Shelby County Tax Roll File.

38.     Upon information and belief, the payment requested by PVA McDowell to obtain the Shelby County Tax Roll File exceeds the fees that a PVA would lawfully be able to charge a noncommercial requestor under KRS 61.874(3), as it is not based on "the actual cost of reproduction, including the costs of the media any mechanical processing cost incurred by the public agency, but not including the cost of staff required."

39.     Further, the ORA does not permit a PVA to require a noncommercial requestor to enter into the DOR Non-GIS Contract and the DOR Request Form and Contract to obtain the PVA's Tax Roll File.

40.     Zillow would be willing to pay the charge allowable under KRS 61.874(3) for a noncommercial requestor, and comply with any other requirements the ORA permits a PVA to impose on noncommercial requestors, to obtain a copy of the Shelby County Tax Roll File.

*Franklin County Response*

41.     A copy of Zillow's ORA request to Franklin County PVA Lang is attached hereto as **Exhibit E** ("Franklin County Request").

42.     In response to the request, on April 29, PVA Lang informed Zillow that she "will need to charge your company for this request." Zillow requested a price quote the same day, and PVA Lang's office through an email from Jill Maynard responded that "[t]he price will be 50.00 request fee and .40 per parcel (24686)" for a price of $9,924.40. PVA Lang's office also stated that the price did not include the "Tax Amount to be paid." PVA Lang's office later clarified, in response to a subsequent email from Ms. Noto, that the ".40 per parcel" was "the fee for a 'commercial purpose.'"

43.     Upon information and belief, the payment requested by PVA Lang to obtain the Franklin County Tax Roll File exceeds the fees that a PVA would lawfully be able to charge a noncommercial requestor under KRS 61.874(3), as it is not based on "the actual cost of reproduction, including the costs of the media any mechanical processing cost incurred by the public agency, but not including the cost of staff required."

44.     Zillow would be willing to pay the charge allowable under KRS 61.874(3) for a noncommercial requestor, and comply with any other requirements the ORA permits a PVA to impose on noncommercial requestors, to obtain a copy of the Franklin County Tax Roll File.

16

*Henry County Response*

45.     A copy of Zillow's ORA request to Henry County PVA Scriber is attached

hereto as **Exhibit F** ("Henry County Request").

46.     In response to the request, on April 25 PVA Scriber wrote to Ms. Noto via

email:

> The information that you have requested is available for a fee according to
> our fee schedule.
>
> If you would like to request this information, please complete the attached
> form & return.  Once I receive the form, I can provide you with a quote on
> the cost of the information.

47.     The form attached to PVA Scriber's email was the DOR Request Form and

Contract.

48.     In response to PVA Scriber's email, Ms. Noto asked PVA Scriber on May

1: "[D]oes your office consider Zillow's intended use to be for a 'commercial purpose'?

And if so, can you provide the reasons for this decision?" The next day, PVA Scriber

responded: "Your intended use is considered a 'commercial purpose' pursuant to KRS

61.870(4)(a)."

49.     Upon information and belief, and based on PVA Scriber's classification of

Zillow as a "commercial purpose" requestor, the charge to obtain the Henry County

Tax Roll File will exceed the fees that a PVA would lawfully be able to charge a

noncommercial requestor under KRS 61.874(3), as it will not be based on "the actual

cost of reproduction, including the costs of the media any mechanical processing cost incurred by the public agency, but not including the cost of staff required."

50.     Further, the ORA does not permit a PVA to require a noncommercial requestor to enter into the DOR Request Form and Contract to obtain the PVA's Tax Roll File.

51.     Zillow would be willing to pay the charge allowable under KRS 61.874(3) for a noncommercial requestor, and comply with any other requirements the ORA permits a PVA to impose on noncommercial requestors, to obtain a copy of the Henry County Tax Roll File.

### *Owen County Response*

52.     A copy of Zillow's ORA request to Owen County PVA Robertson is attached hereto as **Exhibit G** ("Owen County Request").

53.     In response to the request, PVA Robertson sent a letter via email to Zillow quoting prices of $1.75 for "Properties," and $.70 for "Additional Buildings" for the current Owen County Tax Roll File, resulting in a total charge of $18,901.05.

54.     In a follow-up email, Ms. Noto asked:

Are the fees of $18,901.05 quoted based on your office's determination that Zillow's intended use for the records is for a "commercial purpose," based on the information I provided in my letter?
If so, could you provide me with the reasons your office made that determination? Last, will your office require anything additional beyond payment of the $18,901.05 quoted to obtain the records?

55.     PVA Robertson replied:

18

This charge is a fee that we would charge for anyone requesting this information. We don't care how you use this information internally we just ask that you do not sell this info to anyone else without our authorization. The $18,901.05 quoted to you will be the only fees you are charged to obtain the information. Once you have signed our contract and we receive a check will we get all of the requested info to you. If you have any further questions feel free to ask. Have a wonderful day!

56.     Upon information and belief, the payment requested by PVA Robertson to obtain the Owen County Tax Roll File exceeds the fees that a PVA would lawfully be able to charge a noncommercial requestor under KRS 61.874(3), as it is not based on "the actual cost of reproduction, including the costs of the media any mechanical processing cost incurred by the public agency, but not including the cost of staff required."

57.     Further, the ORA does not permit a PVA to require a noncommercial requestor to enter into a contract or otherwise agree to limitations on its ability to disseminate the records to obtain the PVA's Tax Roll File.

58.     Zillow would be willing to pay the charge allowable under KRS 61.874(3) for a noncommercial requestor, and comply with any other requirements the ORA permits a PVA to impose on noncommercial requestors, to obtain a copy of the Owen County Tax Roll File.

*Trimble County Response*

59.     A copy of Zillow's ORA request to Trimble County PVA Mahoney is attached hereto as **Exhibit H** ("Trimble County Request").

60.     In response to the request, PVA Mahoney wrote: "I have included the contract for services that needs to be completed and signed along with the invoices for cost of the information you are requesting."

61.     The "contract for services" PVA Mahoney sent to Zillow was the DOR Non-GIS Contract, partially completed to indicate that the contract would be with the Trimble County Property Valuation Administrator. The invoices PVA Mahoney sent to Zillow for the Trimble County Tax Roll File totaled $23,494.20.

62.     Upon information and belief, the payment requested by PVA Mahoney to obtain the Trimble County Tax Roll File exceeds the fees that a PVA would lawfully be able to charge a noncommercial requestor under KRS 61.874(3), as it is not based on "the actual cost of reproduction, including the costs of the media any mechanical processing cost incurred by the public agency, but not including the cost of staff required."

63.     Further, the ORA does not permit a PVA to require a noncommercial requestor to enter into the DOR Non-GIS Contra to obtain the PVA's Tax Roll File.

64.     Zillow would be willing to pay the charge allowable under KRS 61.874(3) for a noncommercial requestor, and comply with any other requirements the ORA permits a PVA to impose on noncommercial requestors, to obtain a copy of the Trimble County Tax Roll File.

*Clark County Response*

65.     A copy of Zillow's ORA request to Clark County PVA Neely is attached

hereto as **Exhibit I** ("Clark County Request").

66.     In response to the request, PVA Neely wrote via email:

> I have attached the contract that needs to be signed for the data to be
> released.  The cost is $31,055.50 and once the contract is signed and sent
> back along with payment then the data will be sent in an excel
> spreadsheet.  There is not a breakdown between land & building but
> everything else you requested can be provided.

Attached to PVA Neely's email was the DOR Request Form and Contract.

67.     On May 1, Ms. Noto emailed Mr. Neely for clarification regarding the

quoted fee, writing:

> Thank you for your response. As Zillow has not yet completed the
> "Request for Production of Public Records" form you sent, I wanted to
> understand if your office has already determined that Zillow's intended
> use for the records—as set out in my letter—is for a "commercial
> purpose," and that the fee quote of $31,055.50 you provided is based on
> that determination. Also, could you please let me know how you
> calculated the fee?

68.     In response, PVA Neely wrote via email: "Your intended use is considered

a 'commercial purpose' pursuant to KRS 61.870(4)(a). The fee is based on the PVA's

Open Records Commercial Fee Guidelines."

69.     Upon information and belief, the payment requested by PVA Neely to

obtain the Clark County Tax Roll File exceeds the fees that a PVA would lawfully be

able to charge a noncommercial requestor under KRS 61.874(3), as it is not based on

"the actual cost of reproduction, including the costs of the media any mechanical processing cost incurred by the public agency, but not including the cost of staff required."

70.     Further, the ORA does not permit a PVA to require a noncommercial requestor to enter into the DOR Request Form and Contract to obtain the PVA's Tax Roll File.

71.     Zillow would be willing to pay the charge allowable under KRS 61.874(3) for a noncommercial requestor, and comply with any other requirements the ORA permits a PVA to impose on noncommercial requestors, to obtain a copy of the Clark County Tax Roll File.

## <u>COUNT I</u>
### (First & Fourteenth Amendment - Violation of Right to Freedom of Speech)

72.     Zillow incorporates the preceding paragraphs as if fully restated here.

73.     Zillow engages in the business of disseminating public government information in a truthful, nonmisleading, and noncoercive manner, which is activity protected under the First and Fourteenth Amendments of the United States Constitution. *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 569 (2011) (citing *L.A. Police Dep't v. United Reporting & Pub'g Corp.*, 528 U.S. 32 (1999)).

74.     Zillow attempted to qualify to obtain access to the Tax Roll File by submitting a proper request for those records to the Defendant PVAs in accordance with the requirements of the ORA.

75.     Based on the Commercial Purpose Fee Statutes, Defendant PVAs imposed conditions on Zillow's right to access the Tax Roll File that "noncommercial purpose" requestors would not have to satisfy to obtain access, including fees that would exceed those the ORA permits a PVA to charge a noncommercial requestor, and Zillow's assent to contractual requirements limiting its right to lawfully disseminate the information.

76.     Zillow was therefore unable to obtain access to the Tax Roll Files from the Defendant PVAs on the same terms and conditions as other similarly situated requestors, burdening its right to engage in the dissemination of otherwise public government information through its website Zillow.com.

77.     Further, Zillow was compelled to disclose the nature of its intended use for the Tax Roll Files upon threat of being subjected to financial and other penalties pursuant to KRS § 61.8745.

78.     The conditions the Commercial Purpose Fee Statutes permit a PVA to impose on a requestor making a public records request under the ORA for a "commercial purpose" are unconstitutional on their face, and as applied to Zillow, as they impose both content- and speaker-based burdens on the speech of requestors who wish to disseminate public government information in the Tax Roll File for a "commercial purpose."

79.     The Commercial Purpose Fee Statutes impose a burden on the protected speech of "commercial purpose" requestors, such as Zillow, who seek access to public

government information like the Tax Roll File based on the content of their speech, because the statutes have the practical effect of preventing requestors who seek to use government information, directly or indirectly, "for any use by which the user expects a profit either through commission, salary, or fee." The Commercial Purpose Fee Statutes thus disfavor the dissemination of government information by requestors who do so for profit derived through commission, salary, or fee, unless the requestor is a newspaper, periodical, radio station, television station, person who will use the information for "informational programs," or an attorney using the information for litigation or claims settlement. *See IMS Health, Inc.*, 564 U.S. at 555.

80.     The Commercial Purpose Fee Statute also impose a speaker-based burden on the protected speech of "commercial purpose" requestors, such as Zillow, who seek public government information like the Tax Roll File, because the statutes allow requestors who do not expect a profit either through commission, salary, or fee from the dissemination of the record, or who qualify as a newspaper, periodical, radio station, television station, person who will use the information for "informational programs," or an attorney using the information for litigation or claims settlement. *See Cincinnati v. Discovery Network*, 507 U.S. 410, 429 (1992).

81.     Because the Commercial Purpose Fee Statutes impose specific content- and speaker-based burdens on protected expression, which are more than incidental, the statutes are facially subject to at least heightened judicial scrutiny. *IMS Health, Inc.*,

564 U.S. at 565. To satisfy this standard, Defendants must show that the Commercial Purpose Fee Statutes "directly advance a substantial governmental interest and that the measure is drawn to achieve that interest." *Id.* at 560. "There must be a fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* (internal quotations omitted).

82.    Moreover, Zillow's dissemination of the information contained in public government information, such as the Tax Roll File, is not "core" commercial speech. Zillow does not utilize public government information it disseminates for free through Zillow.com to propose a commercial transaction with its website visitors. Its speech is thus analogous to a newspaper or periodical. *Discovery Network*, 507 U.S. at 423. As applied to Zillow, therefore, the Commercial Purpose Fee Statutes are subject to strict scrutiny. To satisfy this standard, Defendants must demonstrate that the Commercial Purpose Fee Statutes are "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).

83.    Requests made by those who seek to profit, directly or indirectly, from the use of the Tax Roll File, do not increase Defendant PVAs' costs in acquiring or creating the data they collect pursuant to their statutory obligation to prepare the Tax Roll File under KRS § 132.530.

84.    The Commercial Purpose Fee Statutes nevertheless allow Defendant PVAs to charge "commercial purpose" requestors, like Zillow, for the "cost to the agency to

25

create any mechanical processing, data collection, or data creation; the staff required to process, produce, collect, or create data or information; or the cost to the agency for the creation, purchase, or other acquisition of information."

85.     Defendants have no legitimate interest in controlling the dissemination of truthful public government information, and as such, cannot justify the requirement that "commercial purpose" requestors enter into a contract, such as the DOR Request Form and Contract or DOR Non-GIS Contract, that would waive Zillow's First Amendment rights to re-sell or otherwise disseminate that information to third-parties. *Cf. Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 102 (1979). *See also Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2595-96 (2013).

86.     To the extent Defendants' interest in enforcing the Commercial Purpose Fee Statutes is for the purpose of raising revenue for the purpose of offsetting the costs of running Defendant PVA's offices, it may accomplish that goal through charging uniform fees to all requestors. *See Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 586 (1983). The means chosen by the legislature to raise revenue on the backs of "commercial purpose" requestors are thus more extensive than necessary to serve its objective. Thus, there is not a sufficient fit between the objective of the Commercial Purpose Fee Statutes and the means chosen by the legislature to achieve that objective.

87.     As applied to Zillow, the Commercial Purpose Fee Statutes are not narrowly tailored to serve compelling state interests. An interest in raising revenue alone does not constitute a "compelling state interest" sufficient to serve as justification for a burden placed on protected speech. *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231-232 (1987). Further, there are less restrictive means the legislature may employ, such as imposing the same fees for obtaining access to the Tax Roll File on all requestors.

88.     Unless restrained by order of this Court, the Defendant PVAs or some of them or their agents or assistants, will continue to deny Zillow, and other "commercial purpose" requestors, the ability to obtain access to the Tax Roll File without complying with conditions the Commercial Purpose Fee Statutes permit the Defendant PVAs to impose under the direction, instruction, and supervision of Defendant Bork or his agents or assistants.

89.     Permitting Defendant PVAs to continue to enforce the Commercial Purpose Fee Statutes in such a way as to unconstitutionally burden Zillow's, and other commercial requestors' right to access the Tax Roll File and disseminate that information in a truthful, nonmisleading, and noncoercive manner without restriction, will cause Zillow to suffer a serious, immediate, and irreparable injury.

## COUNT II

**(Fourteenth Amendment - Violation of Right to Equal Protection Based on Burden on Fundamental Right to Freedom of Speech)**

90.     Zillow incorporates the preceding paragraphs as if fully restated here.

91.     The Commercial Purpose Fee Statutes classify requestors based on whether they make ORA requests with the intention of using public government information, and specifically the Tax Roll File, for a "noncommercial" or "commercial or business" purpose.

92.     Zillow's right to disseminate the public government information contained in the Tax Roll File to users of its website, for profit, is protected under the First Amendment, as made applicable to the states by the Fourteenth Amendment. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 761 (1976). *See also L.A. Police Dep't v. United Publ'g Corp.*, 528 U.S. 32, 42 (1999) (Scalia, J. concurring).

93.     The Commercial Purpose Fee Statutes burden the fundamental right of Zillow, and other requestors classified as "commercial purpose," to exercise this fundamental right by making it more difficult for those classified as "commercial purpose" requestors to obtain access to the Tax Roll File on the same terms as those who do not seek to disseminate the information "for profit," or do so "for profit," but for an approved government purpose such as publication or related use in a "newspaper or periodical"; "news or other information programs" broadcast by radio

or television stations; or by lawyers "in the preparation for prosecution or defense of litigation, or claims settlement." *See Discovery Network*, 507 U.S. at 426-27.

94.     The Commercial Purpose Fee Statutes thus impose both content- and viewpoint-based burdens on Zillow's speech. *IMS Health, Inc.*, 564 U.S. at 559.

95.     A government classification that burdens the fundamental right of freedom of speech is subject to strict scrutiny. To survive strict scrutiny, a government classification that burdens a fundamental right must be "narrowly tailored to serve a compelling interest." *O'Toole v. O'Connor*, 802 F.3d 783, 789 (6th Cir. 2015).

96.     Alternatively, to the extent Zillow's dissemination of public government information for profit constitutes "commercial speech," the law is nevertheless subject to heightened scrutiny. *See IMS Health, Inc.*, 564 U.S. at 571-72. Under heightened scrutiny, "the State must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Id.* at 572. "There must be a fit between the legislature's ends and the means chosen to accomplish those ends'" *IMS Health, Inc.*, 564 U.S. at 572 (internal quotations omitted).

97.     Defendants have no legitimate interest in controlling the dissemination of truthful public government information, and as such, cannot justify the requirement that "commercial purpose" requestors enter into a contract, such as the DOR Request Form and Contract or DOR Non-GIS Contract, that would waive Zillow's First Amendment rights to re-sell or otherwise disseminate that information to third-parties.

98.     To the extent Defendants' interest in enforcing the Commercial Purpose Fee Statutes is for the purpose of raising revenue for the purpose of offsetting the costs of running Defendant PVA's offices, it may accomplish that goal through charging uniform fees to all requestors. *See Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 586 (1983). The means chosen by the legislature to raise revenue on the backs of "commercial purpose" requestors are thus more extensive than necessary to serve its objective. Thus, there is not a sufficient fit between the objective of the Commercial Purpose Fee Statutes and the means chosen by the legislature to achieve that objective.

99.     As applied to Zillow, the Commercial Purpose Fee Statutes are not narrowly tailored to serve compelling state interests. Nor are the Commercial Purpose Fee Statutes drawn to achieve that interest, as there is not a sufficient fit between the legislature's interest in raising revenue, and the discriminatory classification utilized by the legislature to achieve the goal of raising revenue. An interest in raising revenue alone does not constitute a compelling or substantial state interest sufficient to serve as justification for a burden placed on protected speech. Further, there are less restrictive means the legislature may employ, such as imposing the same fees for obtaining access to the Tax Roll File on all requestors, or exempting all requestors who disseminate the public government information for free, irrespective of their motives for doing so.

100.    Unless restrained by order of this Court, the Defendant PVAs or some of them or their agents or assistants, will continue to deny Zillow, and other "commercial purpose" requestors, the ability to obtain access to the Tax Roll File without complying with conditions the Commercial Purpose Fee Statutes permit Defendant PVAs to impose under the direction, instruction, and supervision of Defendant Bork or his agents or assistants.

## PRAYER FOR RELIEF

**WHEREFORE**, Zillow demands:

A.    A declaration that the Commercial Purpose Fee Statutes are unconstitutional on their face under the First and Fourteenth Amendments to the United States Constitution;

B.    A declaration that the Commercial Purpose Fee Statutes are unconstitutional as applied to Zillow in that they burden Zillow's rights under the First and Fourteenth Amendments to the United States Constitution to exercise its right to freedom of speech;

C.    A declaration that the Commercial Purpose Fee Statutes are unconstitutional on their face under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as they burden the fundamental right of those classified as "commercial

purpose" requestors under the statutes to engage in protected speech activities;

D.     A declaration that the Commercial Purpose Fee Statutes are unconstitutional as applied to Zillow in that they burden Zillow's fundamental right to freedom of speech in violation of its rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

E.     A permanent injunction restraining the enforcement of the Commercial Purpose Fee Statutes;

F.     The costs, including reasonable attorney's fees, Zillow has incurred in bringing this action pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

*Of Counsel:*                                          /s/ Darren W. Ford

John C. Greiner                                       J. Stephen Smith (KBA 86612)
GRAYDON HEAD & RITCHEY LLP                            Darren W. Ford (KBA 95373)
312 Walnut Street                                     GRAYDON HEAD & RITCHEY LLP
Suite 1800                                            2400 Chamber Center Dr.
Cincinnati, OH  45202                                 Suite 300
Phone:  (513) 621-2734                                Ft. Mitchell, KY 41017
Fax:    (513) 651-3836                                Phone: (859) 578-7263
E-mail: jgreiner@graydon.com                          Fax: (859) 578-3073
                                                      E-mail: ssmith@graydon.com
                                                              dford@graydon.com


                                                      COUNSEL FOR PLAINTIFF
                                                      ZILLOW, INC.


9348754.3