UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ZILLOW, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:19-cv-00049-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DANIEL P. BORK, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Commercially relevant information contained within government public records is naturally the source of interest from profit-minded companies. One of those companies, Zillow, Inc., believes its access to this information has been unconstitutionally restricted. It specifically takes issue with Kentucky statutes that allow public agencies to charge additional fees when copies of public records are requested for commercial purposes, alleging these statutes violate the First and Fourteenth Amendment. Zillow's complaint names as Defendants certain Kentucky officials tasked with implementing the statutory directives. In response, Defendants move to dismiss on grounds that Zillow has failed to state a claim upon which relief can be granted. For the reasons that follow, Defendants' Motion to Dismiss is **DENIED**.

**I**

**A**

The Kentucky Open Records Act, KRS §§ 61.870–884, was enacted based on the policy that "free and open examination of public records is in the public interest." *Commonwealth v. Chestnut*, 250 S.W.3d 655, 660 (Ky. 2008) (quoting KRS § 61.871). As part of the Act, when

copies of public records are sought for "commercial purposes," public agencies may impose higher fees than when copies are sought for "noncommercial purposes." KRS § 61.874(4); KRS § 61.870(4). For public records kept by property valuation administrators (PVAs), the closely related statutory provision, KRS § 133.047, requires that the Kentucky Department of Revenue provide PVAs "a reasonable fee schedule to be used in compensating for the cost of personnel time expended in providing information and assistance to persons seeking information to be used for commercial or business purposes."[1] By the terms of these Commercial Purpose Fee Statutes, this fee schedule applies whenever individuals or entities request public records from PVAs for commercial purposes. KRS § 133.047(4)(b). In contrast, when records are requested for a noncommercial purpose, public agencies, PVAs included, are to charge fees "not [to] exceed the actual cost of reproduction"—a cost which expressly cannot include the personnel time expended. KRS § 61.874(3).

On April 25, 2019, Zillow made requests for "current 2018 Assessment Files or Tax Roll Files" to PVAs in six Kentucky counties: Shelby, Franklin, Henry, Owen, Trimble, and Clark County. [R. 24 at 7.] Pursuant to KRS § 61.870(2) and KRS § 133.047(1), these property-tax related items are public records within the meaning of the Open Records Act. Zillow's requests specified that it "intend[ed] to make some or all of the information contained in the real property records sought by this request available to users of its website, Zillow.com, free of charge." *Id.* (citation omitted). The requests also clarified that Zillow generated revenue from the sale of advertising space on the website "where the information contained in these records will appear." *Id.* Upon receipt, each of the PVAs classified the respective requests as ones made for a

---

[1] For purposes of this Memorandum Opinion and Order, the statutory provisions which establish the commercial purpose charges, KRS § 61.870(4), KRS § 61.874(4), and KRS § 133.047, will be referred to as the Commercial Purpose Fee Statutes. [*See* R. 24 at 2.]

2

...

commercial purpose. *Id.* As such, in accordance with the fee schedule provided by the Department of Revenue, the PVAs either charged Zillow a fee in accordance with the Commercial Purpose Fee Statutes or indicated that Zillow would be charged such a fee after the request was completed. [*Id.* at 8; R. 22-1 at 2–3.]

Subsequently, Zillow filed this lawsuit against the six PVAs and the Commissioner of the Kentucky Department of Revenue. [*See* R. 1.] Zillow brings two separate constitutional claims: claiming the Kentucky statutes are unconstitutional facially and as-applied under both the First and Fourteenth Amendment.[2] [*Id.* at ¶¶ 77, 93; R. 24 at 8.] Defendants now move to dismiss, asserting Zillow's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as both claims fail as a matter of law. [R. 22.]

**B**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the Plaintiff's complaint.[3] In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court has explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[2] Based on the allegations in the complaint, Zillow has standing to pursue each of its claims. A burden on a fundamental right ordinarily amounts to injury in fact. And, because Zillow is subjected to charges under the statutes and expresses an intent to request records in the future, the remaining Art. III standing requirements are met. *See Sullivan v. Benningfield*, 920 F.3d 401, 408 (6th Cir. 2019).

[3] Zillow attached nine substantive exhibits to the complaint. The Court may consider these exhibits without converting the motion to dismiss to a motion for summary judgment because the exhibits were attached to the complaint. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).

## II

### A

The First Amendment's free speech clause, applied to states through the Fourteenth Amendment, "generally prevents government from proscribing speech . . . because of disapproval of the ideas expressed." [4] *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992). Where a free speech claim challenges a law restricting access to government information, courts look to whether the restriction is based on the viewpoint or content of a recipient's speech—commonly referred to as a "content-based" regulation—to determine whether the First Amendment is implicated. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). In other words, a court must determine whether the government "condition[s] the disclosure of [information] on the nature of the recipient's speech." *Amelkin v. McClure*, 330 F.3d 822, 828 (6th Cir. 2003).

#### 1

Zillow claims the Commercial Purpose Fee Statutes violate the First Amendment by charging Zillow more to obtain copies of public records than others based on its anticipated use

---

[4] In the First Amendment context, courts have also identified an interrelated right of access to specific government information. *See, e.g.*, *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). However, that right of access extends "only to particular judicial records and documents." *Stone*, 855 F.2d at 180. In this case, Zillow does not claim it has a constitutional "right of access" to the public records at issue.

of those copies. This is a novel theory. Other courts to apply the First Amendment in the "access to government information" context have largely considered state laws which wholly deny access to government information to a certain group based on their eventual speech purposes. *See, e.g.*, *Lanphere & Urbaniak v. State of Colo.*, 21 F.3d 1508, 1513 (10th Cir. 1994) (finding the First Amendment was implicated where a state law "disallow[ed] the release of records to those wishing to use them for commercial speech, while allowing the release of the same records to those having a noncommercial purpose"); *Legi-Tech, Inc. v. Keiper*, 766 F.2d 728, 731 (2d Cir. 1985). These more severe laws are clearly distinct from the statutes at issue here.

The Commercial Purpose Fee Statutes do not fully deny Zillow access to the public records. As set forth by KRS § 61.872(1), "[a]ll public records shall be open for inspection by any person," with minor limitations. Further, KRS § 133.047(1) specifically provides that "[t]he property tax roll shall be available for public inspection during the regular working hours of the office of the [PVA]." Zillow does not, and seemingly cannot, point to any Kentucky statutory provision that prohibits it from simply inspecting or reviewing the records at issue.

Instead, Zillow's access is restricted in a more nuanced manner—it is charged an additional fee that does not apply to noncommercial requestors. From a practical standpoint, the Court recognizes that this charge may inhibit a large company like Zillow from accessing public records in an economically efficient manner. More importantly, from a hypothetical standpoint, if a statutory scheme charges based on the content of the recipient's speech it would likely implicate the First Amendment. *See Amelkin*, 330 F.3d at 828 (citation omitted) ("The statute would also be constitutionally suspect if it had singled out a small group for unfavorable treatment based either on the content or the viewpoint of the group's speech."). This latter consideration—whether the statutory scheme amounts to a content-based regulation—is the

5

primary focus here. At this preliminary stage, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in its favor, Zillow has plausibly alleged that the Commercial Purpose Fee Statutes amount to a content-based regulation and implicate the First Amendment.

a

The Commercial Purpose Fee Statutes appear unobjectionable on initial review. The statutes simply allow public entities to charge higher fees for copies where the requestor intends to use the public records for a commercial purpose. As defined by the Open Records Act, commercial purpose means "the direct or indirect use of any part of a public record or records, in any form, for sale, resale, solicitation, rent, or lease of a service, or any use by which the user expects a profit either through commission, salary, or fee." KRS § 61.870(4)(a). Based on this broad definition, there are many scenarios in which a requestor may use public records for a commercial purpose but not engage in any speech related activities. In consideration of the economic gain these types of individuals or entities may receive by way of information within public records, the Kentucky legislature simply made the policy determination that those parties should reimburse the state for the time spent compiling the information. The statutory text is clear: the fees are charged based on whether the recipient seeks economic gain, not based on the content of the recipient's speech.

The operative provisions of the statutes further support this interpretation. Although KRS § 61.874(b) provides that the public agency "may require a certified statement from the requestor stating the commercial purpose," the statute does not vest the public agency with any discretion to deny access or charge a higher fee based on the nature of the commercial purpose. Instead, the commercial purpose fees are based solely on the cost required to produce the copies.

*See* KRS § 61.874(4)(c); KRS § 133.047(4)(b).  All commercial purpose requests are treated the same, regardless of whether that commercial purpose entails any dissemination of the public records.

**b**

But the analysis does not end there.  An exception within the Commercial Purpose Fee Statutes provides that "publication or related use of public records by newspapers or periodicals" does *not* fall within the meaning of "commercial purpose."  *See* KRS § 61.870(4)(b).  On its face, the "newspaper exception" operates to prevent public agencies from charging these entities the additional fees they may charge other parties requesting copies of records for a commercial purpose.  This complicates matters.

Zillow argues the newspaper exception shows that the fees charged under the statutes "target only those who intend to disseminate the information for disfavored commercial reasons."  [R. 24 at 15.]  In response, Defendants argue that these publications are not exempted based on content but based on the medium of communication.  [R. 26 at 4–5 ("Those who conduct their business through a certain medium of communication have an exemption, and all other businesses do not.").]  Defendants fail to develop this argument and, at this juncture, Court declines to give this minor distinction any weight.  Indeed, discriminating based on the medium used, as a matter of logic, often will inevitably result in discriminating based on the identity of the speaker.  *See Reed*, 135 S. Ct. 2218, 2230 ("[A] law limiting the content of newspapers, but only newspapers, could not evade strict scrutiny simply because it could be characterized as speaker based.").

To Zillow's point, for the most part, newspapers and similar entities very clearly obtain public records with the express intent of publication.  It follows that, in consideration of the

7

important role these entities play in informing the public, and in line with the policy behind the Open Records Act, the government ensured their functions were not impaired. For all other requesting parties, Zillow included, the statute charges fees for copies without regard to any eventual dissemination and, instead, simply focuses on whether the requestor seeks economic gain. This established, in analyzing the significance of the exception, the Court will accept as true Zillow's assertion that the exception was included to avoid impairing the ability of newspapers and periodicals to disseminate information.

The newspaper exception may seem unexceptional, even justified. But the First Amendment requires a closer inquiry into the operation of a challenged law, not its motives. *Reed*, 135 S. Ct. at 2228. And, the Sixth Circuit has plainly explained that where a law favors excepted content over other content, "it discriminates against that other content." *Thomas v. Bright*, 937 F.3d 721, 728 (6th Cir. 2019); *see also id.* (emphasis in original) ("The fact that this content-based aspect is in the *exception* to the general restriction, rather than the restriction itself, does not save it from this analysis."). Where a distinction is made based on the identity of the speaker, not content itself, further scrutiny is still warranted when, nonetheless, "the legislature's speaker preference reflects a content preference." *Reed*, 135 S. Ct. at 2230 (citation omitted).

Drawing all reasonable inferences in Zillow's favor, its assertion that the "newspaper exception" is a content-based exception is plausible. As set out above, it is reasonable to infer that an exception that operates to exempt certain *publications* from being charged does so based on the content of those publications' eventual speech. Given the role of newspapers this may be an innocuous justification, but "an innocuous justification cannot transform a facially content-based law into one that is content neutral." *Reed*, 135 S. Ct. 2218, 2228 (2015). Zillow has stated a plausible First Amendment claim that the fee structure within the Commercial Purpose

Fee Statutes amounts to a content-based regulation of speech.

**2**

The above conclusion is bolstered when turning to Zillow's as-applied challenge. "In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Women's Medical Professional Corp. v. Voinovich,* 130 F.3d 187, 193 (6th Cir. 1997) (internal quotations and citations omitted). The applicable standard remains the same—whether restriction of access to information was content-based—but now the PVAs' implementation of the Commercial Purpose Fee Statutes is analyzed in the context of Zillow's recent requests. [R. 24 at 7.]

**a**

In making its requests for copies, Zillow did not expressly state whether its use of the copies was for a commercial purpose. [*See* R. 24 at 7.] Instead, it left it up to the respective PVAs to decide. *See id.* (citation omitted) ("If your office deems Zillow's intended use for these records to constitute a 'commercial purpose' . . . please provide the reasons for classifying Zillow's use as such."). So, the PVAs were left to make that determination based on Zillow's stated purpose: making the information available to users of Zillow.com. *Id.* Each of the PVAs classified Zillow's request as one made for a commercial purpose within the meaning of the statutes. *Id.* (citing R. 1 at 14–22.).

Zillow believes the PVAs' decision making process implicates the First Amendment. [R. 24 at 19.] In light of the newspaper exception, it argues that its use for the information "is similar to a newspaper in substance" and, in not exempting Zillow from charges, the PVAs must have considered the eventual content of Zillow's speech. [R. 24 at 20.] Defendants offer little argument on this point except to argue that the First Amendment does not speak to Zillow's "right to be considered a newspaper." [R. 26 at 6.]

9

Again, drawing all reasonable inferences in its favor, the Court agrees with Zillow at this preliminary stage. Indeed, it is apparent that in making the commercial purpose determination, the PVAs necessarily considered the purpose of Zillow's eventual use of the information—a use which undeniably amounts to commercial speech. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 5611 (1980) (citations omitted) ("Commercial speech [is] expression related solely to the economic interests of the speaker and its audience."). It is true that based on the statutory definition of commercial purpose Zillow's revenue generation through its website, not its status as a "commercial speaker," is the determinative fact. But it is reasonable to infer that the PVAs considered the medium of the content, a consideration closely tied to the identity of the speaker, to determine whether the newspaper exception applied.

It is worth noting that the statutes themselves do not call for this type of inquiry by the individual PVAs. Instead, it is left to the requestor to state whether the request is for a commercial purpose. KRS § 61.874(4). But, here, Zillow declined to state definitively whether the request was for a commercial purpose, forcing the PVAs' hands. In turn, the respective PVAs each made the determination that Zillow's requests were for a commercial purpose and, in doing so, necessarily engaged in some level of analysis—although the nature and extent of those analyses is unclear on the present record. *Cf. Thomas*, 937 F.3d at 727 (cleaned up) ("[U]nder the Act, the only way to determine whether a sign [meets the exception], is to consider the content of the sign . . . .").

Zillow has introduced sufficient allegations that the PVAs implemented the Commercial Purpose Fee Statutes in a way that implicated the First Amendment. Thus, both its facial and as-applied challenges state plausible claims for relief and survive the motion to dismiss.

**B**

Lastly, the Court turns to Zillow's Fourteenth Amendment claim. Here, Zillow asserts that the Commercial Purpose Fee Statutes violate its right to equal protection due to the alleged burden on its fundamental right to freedom of speech. [R. 1 at 28.]

The Fourteenth Amendment prohibits states from "mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citation omitted). Because Zillow states a viable First Amendment claim, a heightened level of scrutiny may ultimately apply. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565–66 (2011)). At base, this heightened level of scrutiny requires that the state "show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest."[5] *Id.* at 572.

If this heightened level of scrutiny applies in this case then, at the very least, Defendants bear the burden of demonstrating that the fee structure within Commercial Purpose Fee Statutes is supported by a legitimate governmental interest and appropriately tailored to alleviate a real harm. But Defendants have yet to argue that the fee structure passes this heightened level of scrutiny as a matter of law. And, without further development of the record, Defendants cannot meet this burden. Zillow continues to state a viable Fourteenth Amendment claim.

**III**

Simply because Zillow advances somewhat novel claims does not mean these claims fail as a matter of law. On review, Zillow's complaint states sufficient allegations which, taken as

---

[5] In application, this heightened scrutiny has recently "inched closer to strict scrutiny." *L.D. Mgmt. Co. v. Thomas*, No. 3:18-CV-722-JRW, 2020 WL 1978387, at *3 (W.D. Ky. Apr. 24, 2020) (citing *Sorrell*, 564 U.S. at 572).

true, establish plausible First and Fourteenth Amendment claims. As such, 12(b)(6) dismissal is unwarranted. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Defendants' Motion to Dismiss [**R. 22**] is **DENIED**.

This the 22d day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge

12