Page 1

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF KENTUCKY

3               CENTRAL DIVISION

4                 FRANKFORT

5      CIVIL ACTION NO. 3:19-CV-00049-GFVT

6

7                 ZILLOW, INC.,

8                    Plaintiff

9

10                     V.

11

12   HON. THOMAS B. MILLER, IN HIS/HER OFFICIAL CAPACITY AS

13    COMMISSIONER OF THE KENTUCKY DEPARTMENT OF REVENUE,

14                  ET AL.,

15                   Defendants

16

17

18

19

20

21

22

23   DEPONENT:  SUSAN NOTO

24   DATE:      MAY 5, 2021

25   REPORTER:  LINDSEY N. JOHNSON

Page 2

```
1              APPEARANCES
2  ON BEHALF OF THE PLAINTIFF:
3  Darren W. Ford, Esq.
4  Graydon Head & Ritchey, LLP
5  2400 Chamber Center Drive
6  Suite 300
7  Fort Mitchell, Kentucky 41017
8  Telephone No.: 859-578-7263
9  E-mail: dford@graydon.com
10 (Appeared via videoconference)
11
12 AND
13
14 Rachel Wilka, Esq.
15 Patrice Bazianos, Esq.
16 Zillow
17 701 Fifth Avenue
18 Suite 5100
19 Seattle, Washington 98104
20 Telephone No.: 206-854-8240
21 E-mail: rachelwi@zillowgroup.com
22 E-mail: patrice@axiomlaw.net
23 (Appeared via videoconference)
24
25
```

Page 3

```
1      APPEARANCES (CONTINUED)
2
3  ON BEHALF OF THE DEFENDANTS:
4  Richard W. Bertelson, III, Esq.
5  Nicole Sergent, Esq.
6  Office of Legal Services for Revenue
7  PO Box 423
8  Frankfort, Kentucky 40602
9  Telephone No.: 502-564-9572
10 E-mail: richard.bertelson@ky.gov
11 E-mail: nicole.sergent@ky.gov
12 (Appeared via videoconference)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1                INDEX
2                     Page
3  PROCEEDINGS              7
4  DIRECT EXAMINATION BY MR. BERTELSON    9
5
6              EXHIBITS
7  EXHIBIT           Page
8  1 - Notice of Deposition        14
9  2 - Notice of Fed.R.Civ.P.30(b)(6)
10    Deposition             14
11 3 - Letter from Ms. Noto to Clark County
12    PVA               24
13 4 - E-mail correspondence between Ms. Noto
14    and Clark County PVA       27
15 5 - Letter from Ms. Noto to Franklin
16    County PVA            30
17 6 - E-mail correspondence between Ms. Noto
18    and Franklin County PVA      31
19 7 - Letter from Ms. Noto to Henry
20    County PVA            34
21 8 - E-mail correspondence between Ms. Noto
22    and Henry County PVA       35
23 9 - Letter from Ms. Noto to Owen
24    County PVA            36
25
```

Page 5

```
1        EXHIBITS (CONTINUED)
2  EXHIBIT           Page
3  10 - E-mail correspondence between Ms. Noto
4     and Owen County PVA          37
5  11 - Letter from Ms. Noto to Shelby
6     County PVA          40
7  12 - E-mail correspondence between Ms. Noto
8     and Shelby County PVA        41
9  13 - Letter from Ms. Noto to Trimble
10    County PVA          43
11 14 - E-mail correspondence between Ms. Noto
12    and Trimble County PVA        44
13 15 - Zillow's Objections and Responses
14    to Defendants' First Set of
15    Interrogatories        51
16 16 - Zillow, Inc.'s Responses to
17    Defendants' First Set of
18    Interrogatories Verification    52
19
20
21
22
23
24
25
```

2 (Pages 2 - 5)

Page 6

1        STIPULATION

2

3 The deposition of SUSAN NOTO was taken at the office of

4 Kentuckiana Court Reporters, located at 730 West Main

5 Street, Suite 101, Louisville, Kentucky, 40202, via

6 videoconference in which all participants attended

7 remotely, on Wednesday, the 5th day of May 2021, at

8 11:04 a.m.; said deposition was taken pursuant to the

9 Federal Rules of Civil Procedure.  The oath in this

10 matter was sworn remotely pursuant to FRCP 30.

11

12 It is agreed that Lindsey N. Johnson, being a Notary

13 Public and Court Reporter for the State of Kentucky, may

14 swear the witness and that the reading and signing of

15 the completed transcript by the witness is not waived.

16

17

18

19

20

21

22

23

24

25

Page 7

1        PROCEEDINGS

2        COURT REPORTER:  We are now on the record.

3 Will all parties present please state your

4 appearance, how you are attending, and the location

5 you are attending from?

6        MR. BERTELSON:  My name is Rick Bertelson.  I'm

7 an attorney for the Kentucky Department of Revenue.

8 I'm appearing on behalf of the defendants in this

9 matter, and I'm appearing from the state office

10 building in Frankfort, Kentucky, and I'm appearing

11 Zoom teleconference.

12        MR. FORD:  Darren Ford for the plaintiffs

13 Zillow, Inc., and the witness.  I'm appearing via

14 Zoom from my office in Ft. Mitchell, Kentucky.

15        THE WITNESS:  I'll go.  I'm Susan Noto.  I work

16 for Zillow.  I'm appearing via Zoom, and I'm at my

17 home in Las Vegas, Nevada.

18        MS. SERGENT:  I'll go.  Nicole Sergent.  I'm

19 appearing on behalf of the Department of Revenue,

20 and I am based in Lexington, Kentucky, attending via

21 Zoom.

22        MS. WILKA:  Rachel Wilka representing the

23 plaintiff, observing from my home in west Seattle.

24        MS. BAZIANOS:  Patrice Bazianos.  I'm here on

25 behalf of the deponent and from -- via Zoom remotely

Page 8

1 from Chicago, Illinois.

2        COURT REPORTER:  Thank you.  Ms. Susan, how do

3 you pronounce your last name?

4        THE WITNESS:  It's Noto.

5        COURT REPORTER:  Noto.  Thank you.  Ms. Noto,

6 will you please hold your driver's license up to the

7 camera and wait until it is focused?  Uh-oh.  We

8 have Zoom background interference.  Could you -- I

9 think it's -- if you hold up a white piece of paper

10 behind your -- I think that helps.  Nope.  Makes it

11 worse.  How did I fix this last time?  Oh, we had it

12 there for a second.

13        THE WITNESS:  Okay.

14        COURT REPORTER:  It's fuzzy.  Can anybody read

15 that, or can we agree on the record that everybody

16 is in agreement that this is, in fact, Susan Noto?

17        MR. FORD:  No objection from me.

18        MS. BAZIANOS:  I can read it.  No objection.

19        MR. BERTELSON:  No objection from the defense.

20        THE WITNESS:  Are we okay?

21        COURT REPORTER:  Yes.  Thank you.  You can put

22 that down, ma'am.  And will you please raise your

23 right hand?  Do you swear or affirm that the

24 testimony you are about to give will be the truth,

25 the whole truth, and nothing but the truth?

Page 9

1        THE WITNESS:  I do.

2        COURT REPORTER:  Thank you.

3 Mr. Bertelson.

4        MR. BERTELSON:  Thank you.

5        DIRECT EXAMINATION

6 BY MR. BERTELSON:

7    Q.  Good morning, Ms. Noto.

8    A.  Good morning.

9    Q.  Can you please give us your business address

10 and telephone number?

11    A.  Sure.  The phone number is area code

12 (949) 398-1824, and the address of the office that I

13 work from would be 2600 Mickelson Drive in Irvine, and I

14 would have to guess at the ZIP code without looking it

15 up in California.

16    Q.  But you're currently working remotely?

17    A.  Remotely, yes.  Yes.

18    Q.  Before the pandemic, did you work in

19 California, or did --

20    A.  I did --

21    Q.  Okay.

22    A.  -- yes.

23    Q.  Okay.  All right.  Today we're here to take

24 your deposition in the matter of Zillow, Incorporated,

25 versus Thomas V. Miller, Commissioner of the Kentucky

3 (Pages 6 - 9)

Page 10

1 Department of Revenue, et al. Are you familiar with
2 that case?
3    A.  I am.
4    Q.  And you know that you're here today to be
5 deposed pursuant to Rules 26 and 30 of the Federal Rules
6 of Civil Procedure?
7    A.  Yes.
8    Q.  And you know that also that you have been
9 designated, at least in part, to answer questions on
10 behalf of Zillow as their corporate representative; is
11 that correct?
12    A.  Yes.
13    Q.  Okay.
14    THE WITNESS:  No.
15    MS. WILKA:  For the --
16    MR. FORD:  You want to go off the record for a
17 second?
18    MS. WILKA:  Yeah.
19    MR. FORD:  Rick, do you mind?
20    MR. BERTELSON:  No.
21    (OFF THE RECORD)
22 BY MR. BERTELSON:
23    Q.  And has -- has your counsel, Mr. Ford, has he
24 provided you with what I provided him as far as being
25 the exhibits that we would be looking at today?

Page 11

1    A.  Yes.
2    Q.  And do you have those either printed out or
3 available to look at, as we're talking about?
4    A.  I have them available to look at, yes.
5    Q.  Okay.  Good.  All right.  Have you ever been
6 deposed before for a case, a legal case?
7    A.  No.
8    Q.  Okay.  Have you testified in any legal matter,
9 either in court or an administrative format?
10    A.  I don't -- no.  No.
11    Q.  Are you familiar with how a deposition is
12 supposed to work?
13    A.  A little bit, yes.
14    Q.  Okay.  We'll run -- we'll through that just in
15 a second.  But I'm going to ask you first a couple of
16 preliminary questions.  Are you feeling well today?
17    A.  Yes.
18    Q.  Okay.  Are you suffering from now or have you
19 ever been diagnosed with any physical or mental illness
20 that may affect your ability to comprehend my questions
21 or to provide true and accurate responses to my
22 questions?
23    A.  No.
24    Q.  Do you have any difficulty hearing?
25    A.  No.

Page 12

1    Q.  Are you currently under the influence of any
2 drug, alcohol, or prescription medication that is
3 affecting your thoughts, demeanor, or the ability to
4 answer my questions truthfully and accurately today?
5    A.  No.
6    Q.  Okay.  All right.  I'm going to ask you
7 several questions about this Zillow, Incorporated, case,
8 and in particular, how Zillow, Incorporated, went about
9 asking the Kentucky property value administrators, who
10 are the defendants in this case, for the public records
11 that are the subject of this case.  I would ask that you
12 please answer the question to your best ability.  And I
13 may refer to Zillow -- Zillow, Incorporated, and/or the
14 Zillow Group companies as simply "Zillow" for short.
15 But in doing so, I intend for you to respond as if I had
16 said Zillow, Inc., or Zillow Group companies.  Do you
17 understand that?
18    A.  Yes.
19    Q.  Okay.  And I might also refer to the property
20 value administrators as PVAs, but in doing so, I would
21 intend for you to respond as if I said, "property value
22 administrators."  Do you understand and agree to that?
23    A.  Yes.
24    Q.  Now, for this deposition, I'm basically just
25 going to ask you questions, and like I said, you'll

Page 13

1 hopefully respond in, you know, to your best ability.
2 If at any time you don't understand my question or can't
3 hear me, please ask me to repeat it or restate the
4 question in another way so that you better understand
5 what I'm asking about.  If at any time you need take a
6 break for any reason, just stop me, and we'll take a
7 break.  However, I'll ask the you finish answering the
8 specific question that we were on before we take that
9 break.  Do you understand and agree to that?
10    A.  I understand, yes.
11    Q.  Now, if your counsel objects to a question
12 that I ask, you are still required to answer the
13 question unless your counsel specifically instructs you
14 not to answer.  Do you understand that?
15    A.  Yes.
16    Q.  And that your counsel may only instruct you
17 not to answer if it would protect a privilege of some
18 type or to enforce a limitation on the evidence as
19 directed by the court.  And as of this time, I'm not
20 aware of any such limitation.
21    MR. FORD:  Objection to your characterization
22 of the law, but go ahead.
23    Q.  So do you understand what I've just explained
24 to you?
25    A.  Yes.

4 (Pages 10 - 13)

Page 14

1    Q.   Okay.  Do you have any questions for me or
2  your counsel before we begin here today?
3    A.   No.
4         (EXHIBIT 1 MARKED FOR IDENTIFICATION)
5  BY MR. BERTELSON:
6    Q.   Okay.  All right.  I'd like you take out or
7  look at the exhibit marked as Exhibit 1, which is called
8  the -- styled as the "Notice of Deposition to Susan
9  Noto."
10   A.   Yes.
11   Q.   Do you see that?
12   A.   Yes.
13   Q.   Okay.  And have you seen that document before?
14   A.   Yes.
15   Q.   All right.  So you knew you were to be here
16  today to appear for this deposition; correct?
17   A.   Yes.
18        (EXHIBIT 2 MARKED FOR IDENTIFICATION)
19  BY MR. BERTELSON:
20   Q.   All right.  I'd like you look at what's been
21  marked as Exhibit number 2.
22   A.   Okay.
23   Q.   I'll pull it up here for myself.  I didn't
24  have the right window open.  All right.  And you see
25  that's styled as "Notice of Federal Civil Procedure

Page 15

1  30(B)(6) Deposition"?
2    A.   Yes, I see that.
3    Q.   And have you seen this document before?
4    A.   Yes.
5    Q.   And have you had the chance to read through
6  it?
7    A.   Yes.
8    Q.   Okay.  And for purposes of this deposition, on
9  page 2 of that document, there's a series of --
10  numbered 1 through 4, the the matters of which we'll ask
11  you or ask the company to answer questions with regard.
12  Are you able to answer questions with regard to all four
13  of these areas?  Or which areas are you here to answer
14  questions about?
15   A.   I'm -- I'm not here to answer those questions.
16  I'm really here just to answer about the sourcing
17  questions.
18   Q.   Okay.  And by "sourcing," what do you mean?
19  The sourcing of the data that --
20   A.   Yes.  Of the public record data.
21   Q.   Okay.  All right.  What is your educational
22  background?
23   A.   I only have a high school diploma, and I have
24  on-the-job training from when I started in this business
25  years ago.

Page 16

1    Q.   Okay.  Can you tell us about your employment
2  history starting with your first full-time up to the
3  present?
4    A.   Sure.  Sure so.  I started in January of 1994,
5  working for -- it was Mead Data Central working for the
6  LexisNexis database, and within that year, they sold
7  LexisNexis off, and it became its own company, so I
8  continued with them through March of 2004.
9    Q.   Okay.
10   A.   And then from there, in January of 2005, I
11  worked for Fidelity National Financial, which went
12  through a few name changes.  And when I left, they were
13  known as Lender Processing Services, and I left them, I
14  think it was 2012, in April of 2012.  And then I started
15  with Zillow in May of 2014.
16   Q.   Okay.  Did you work at Realtors Property
17  Resource, did you say?
18   A.   I was a consultant for them.  And then I
19  worked for them for a very short time, yes, for maybe
20  eight months.
21   Q.   Okay.  Were you a data analysis manager for
22  Realtors Property Resource?
23   A.   Yes.
24   Q.   And Lender Processing Services, Inc., has that
25  now become a company called Black Knight?

Page 17

1    A.   Yes.
2    Q.   Okay.  And Black Knight, that company, is that
3  a mortgage management company, mortgage services
4  company?
5    A.   I only worked for the public records division.
6  I assume that they have different departments that do
7  different things, yes.  I think that they might have
8  something -- I don't know if they have a mortgage
9  division or not.  That wasn't what I worked for.
10   Q.   Okay.  And so you've been with Zillow Group
11  since 2014; is that correct?
12   A.   Yes.
13   Q.   Okay.  What are the job positions you've held
14  with Zillow -- the Zillow Group?
15   A.   Sure.  So I started out as at source
16  acquisition manager, and then I moved to my current role
17  as the source acquisition strategist.
18   Q.   Okay.  When you say, "source acquisition,"
19  what do you mean by "source"?
20   A.   Acquiring public records from across the
21  country.  So acquiring them from the source.
22   Q.   Okay.  Okay.  Can you give me a description of
23  your job duties as the -- as the acquisition -- or as
24  the data acquisition manager when you first started?
25   A.   Sure.  I was hired to help build out a team of

Page 18

1 people to source public records from county offices
2 across the country. And I did that, and then I switched
3 from managing people into the role that I have now.
4 Q. Okay. And in the role that you have now as
5 the acquisition strategist, what is your -- what are
6 your job duties there?
7 A. Sure. Well, I still back up the team as the
8 subject matter expert in public records. So I -- if
9 there -- you know, if they have a question on acquiring
10 data, they would come to me. I also work with legal in
11 any of the counties that have a contract that needs to
12 be reviewed. That goes through me ultimately up through
13 to Rachel for review. And I just track the statuses of
14 those agreements.
15 Q. When you say Rachel, do you mean Rachel Wilka,
16 or is there someone else?
17 A. Yes. Rachel Wilka.
18 Q. What's Rachel Wilka's job position?
19 A. She is, I believe, senior corporate counsel.
20 Q. Okay. What's your -- what's your hometown?
21 A. Where I currently live?
22 Q. No. Where you were born and raised?
23 A. I grew up in Saratoga, California.
24 Q. Okay. Have you ever lived in Kentucky?
25 A. I have not.

Page 19

1 Q. Have you ever traveled to Kentucky?
2 A. I have not.
3 Q. Too bad. It's a beautiful state. You should
4 come sometime. Are you familiar with the organizational
5 structure of Zillow Group, Incorporated?
6 MR. FORD: Objection. Vague. Go ahead.
7 A. I don't understand the question.
8 Q. Are you familiar with how the corporate
9 hierarchy is organized in the Zillow Group,
10 Incorporated?
11 MR. FORD: Objection vague. Go ahead.
12 BY MR. BERTELSON:
13 Q. Do you know where in the hierarchy of the
14 Zillow Group, Incorporated, organization Zillow,
15 Incorporated, fits?
16 MR. FORD: Objection vague. Go ahead.
17 A. No.
18 Q. Is Zillow Group, Incorporated, the parent
19 company for which you work?
20 MR. FORD: Objection. Lack of foundation.
21 Go ahead.
22 A. Does that mean -- you guys are very confusing
23 to me. It means answer the question.
24 MR. FORD: Correct. If I say, "Go ahead," I'm
25 making an objection for the record. If I say, "Go

Page 20

1 ahead," you are free to go ahead and answer if you
2 can.
3 A. Yes.
4 Q. Okay. And Zillow, Inc., is that a
5 sub-corporation underneath the Zillow Group,
6 Incorporated?
7 MR. FORD: Objection. Lack of foundation.
8 Go ahead.
9 A. I do not know.
10 MR. BERTELSON: Darren, is your other witness
11 going to be able to answer that question?
12 MR. FORD: It's one of the topics. It's on the
13 list of topics. We'll -- Rick, if you want to
14 stipulate to corporate structure, I think we did
15 that already. I believe that's one of the
16 stipulations in there. But, if you need a parent --
17 if you need a parent sub-stipulation, I'll offer
18 that to you. She's not here the testify as a
19 30(b)(6) as corporate substructure, so I'm not going
20 to tell her not to answer the questions. But she's
21 not prepared on that. So, I don't want her to say
22 something that she doesn't -- you know, those are
23 complex questions, so if you need a stipulation that
24 Zillow, Inc., is the -- is the sub to Zillow Group,
25 Inc., I'll go offline with my client and confirm

Page 21

1 that, but I don't think that's a problem to get that
2 stipulation. So if that helps.
3 MR. BERTELSON: I think I'm asking her
4 questions, I guess, any employee of Zillow Group,
5 Incorporated, might necessarily know as far as who
6 they work for.
7 MR. FORD: Well, I think you didn't ask her who
8 she worked for. You asked her what the corporate
9 structure was, and what is a sub, and what's a
10 parent. And those are legal relationships, and
11 she's not a lawyer. So, I mean, again, you can ask
12 her if she knows. I'm not going to instruct her not
13 to answer, but I'm not sure what, you know, purpose
14 it serves.
15 MR. BERTELSON: I don't see you how you could
16 instruct not her to answer that question --
17 MR. FORD: I'm not -- I'm not. I'm not
18 instructing her not to answer. I'm just simply
19 saying I'm objecting she doesn't have a foundation
20 to answer questions about the corporate hierarchy.
21 And we'll give you a stipulation, I'm pretty sure
22 it's in the 10-K, so, you know. Ask your question.
23 If she knows, she can answer. But I'm just telling
24 you we're not disputing that relationship. So go
25 ahead.

Veritext Legal Solutions
www.veritext.com                                      888-391-3376

Page 22

1 BY MR. BERTELSON:
2    Q.  All right.  Ms. Noto, do you work for Zillow,
3 Inc.?
4    A.  I believe I work for Zillow Group, Inc.
5    Q.  Okay.  And are you testifying today that you
6 do not know how Zillow, Inc., is related to Zillow
7 Group, Inc.?
8    A.  I am not testifying to that.  I -- I don't
9 know.
10    Q.  Okay.  You said you're familiar with the
11 litigation that we're here discussing, the civil
12 complaint that was filed in this matter; is that
13 correct?
14    A.  Yes.
15    Q.  Okay.  And the civil complaint -- the
16 plaintiff party is Zillow, Inc., in that complaint; is
17 that correct?
18    A.  That is correct.
19    Q.  Okay.  So were you involved with the sourcing
20 of -- or not -- were you involved in the gathering of
21 the information that went into the writing and filing of
22 that complaint?
23    A.  Some of it, yes.
24    Q.  Okay.  So if Zillow, Inc., is the plaintiff in
25 that party, what do you know about Zillow, Inc., as far

Page 23

1 as how it is related to Zillow Group, Inc., your
2 employer?
3    A.  I would be guessing, but I am assuming that
4 Zillow, Inc., is the parent corporation of the Zillow
5 Group, Inc.
6    Q.  Okay.  All right.  So your current job, does
7 it involve strategic data acquisition?
8    A.  It does, yes.
9    Q.  Okay.  What does that field involve?
10    A.  It would be sourcing records, reviewing
11 layouts and data of available, that would, you know --
12 what a county would be releasing, information, comparing
13 it to possibly what they may be showing online, and
14 trying to get the best data set for Zillow.
15    Q.  Okay.  Does part of your job involve finding
16 data that is then put into Zillow's living database of
17 homes?
18    A.  Ultimately, yes.
19    Q.  All right.  Does part of your job involve
20 finding ways to acquire data for Zillow's database of
21 homes in a -- in the least costly manner possible?
22    MR. FORD:  Objection.
23    A.  Yes.
24    MR. FORD:  Go ahead.
25    Q.  Do you know John Mabe, Vice President of

Page 24

1 Engineering in Zillow Group, Incorporated?
2    A.  I have met him, yes.
3    Q.  Okay.  Do you interact with him in your -- in
4 your job duties?
5    A.  Not usually, no.
6    Q.  Okay.  So he's not a -- he's not a direct
7 report or -- to you, and you're not a manager of him?
8    A.  I am not, no.
9    Q.  Okay.  And he is not your manager?
10    A.  No.
11    (EXHIBIT 3 MARKED FOR IDENTIFICATION)
12 BY MR. BERTELSON:
13    Q.  Okay.  All right.  I'd like you to pull out
14 the Exhibit number 3.  Do you have that in front of you?
15    A.  I do, yes.
16    Q.  Okay.  Do you recognize that document?
17    A.  Yes.
18    Q.  What is that document?
19    A.  It's a letter that was sent to the PVA
20 administrator for Clark County.
21    Q.  Clark County?
22    A.  Kentucky.
23    Q.  Okay.  Prior to sending this letter to the
24 Clark County PVA, had you had any other interactions
25 with the Clark County PVA in Kentucky?

Page 25

1    A.  I don't recall.
2    Q.  Okay.  And in this letter, what were you
3 trying to communicate to the Clark County PVA by this
4 letter?
5    MR. FORD:  So I'm going to caution you, Sue, to
6    the extent you can answer this question without
7    revealing any communications that you may have had
8    with any attorneys.  Beyond that extent, you can
9    answer independently of that.  You can go ahead.
10    A.  Can you repeat the question?
11    Q.  Yes.  What were you trying to communicate to
12 the Clark County property valuation administrator by
13 this letter?
14    A.  I was writing to the county to find out what
15 information would be available and how to go about
16 acquiring that information.
17    Q.  Okay.  There's a list of types of data or
18 information on the first page.  Can you read through
19 those?
20    A.  Yes.
21    Q.  Okay.  Read it out loud, please.
22    A.  Got it.  So, Listing out various fields, would
23 be the "parcel number or account number, the owner
24 names, the mailing address, the city, state, and zip of
25 the mailing address, the property or the 911 address,

Page 26

1 any property use or class code to identify what type of
2 property that is, the legal description, the acreage or
3 lot size of a property, the breakdown of the assessed
4 values including land and building, the breakdown of
5 market values including the land and building, tax
6 amount, any sales information, date, or price -- sales
7 price, deed book, deed page, and any property
8 characteristic information," and listing some of them
9 out, but not all of them, because different counties
10 have different information available.
11    Q.  Okay.  And then on the second page -- in the
12 first paragraph on the second page, did you indicate
13 what it is that Zillow, Inc., was -- or whoever you work
14 for Zillow Group was intending to use this -- these
15 records for?
16    A.  Can you clarify your question?
17    Q.  On the second page of Exhibit number 3, did
18 you indicate to the Clark County PVA what it is that
19 Zillow was intending to use this information for?
20    A.  Yes.
21    Q.  And what was that?
22    A.  Well, to acquire the public record information
23 to ultimately put onto Zillow.com.
24    Q.  Okay.  And when you say, "put onto
25 Zillow.com," do you mean put it into the living database

Page 27

1 of homes?
2    A.  Yes.
3       (EXHIBIT 4 MARKED FOR IDENTIFICATION)
4 BY MR. BERTELSON:
5    Q.  Okay.  All right.  And then let's look at
6 what's been marked as Exhibit number 4.
7    A.  Yes.
8    Q.  Are you familiar with that document?
9    A.  Yes.
10    Q.  Okay.  And is that a series of e-mail
11 communications between you and the Clark County PVA?
12    A.  Yes.
13    Q.  Okay.  And does this start -- does this e-mail
14 chain start on Thursday, April 25, 2019?
15    A.  Yes.
16    Q.  With an e-mail to you from Jason Neely, the
17 Clark County PVA?
18    A.  Yes.
19    Q.  And then it concludes with a May 2, 2019,
20 e-mail from Jason Neely to you?
21    A.  Yes.
22    Q.  And in his May 2, 2019, e-mail what is -- what
23 did Mr. Neely say to you?
24    A.  Would you like me to read from the e-mail?
25    Q.  Please.

Page 28

1    A.  So, "Ms. Noto, your intended use is considered
2 a commercial purpose pursuant to KRS61.874A.  The fee is
3 the based on the PVA's open records commercial fee
4 guidelines.  Thank you."
5    Q.  Okay.  And do you know what KRS61.874A is?
6    A.  I understand that it's the -- a Kentucky
7 statute, but I am not familiar -- I mean, I have read
8 it, but I am not super familiar with it.
9    Q.  Okay.  But you had referred to that in your
10 letter that's marked as Exhibit number 3; is that
11 correct?
12    A.  In the original request letter, yes.
13    Q.  Yes.  Okay.  So before you sent that letter,
14 had you reviewed and tried to understand what the --
15 what that Kentucky statute says?
16       MR. FORD:  Objection.  And just to clarify, to
17    the extent you're asking her if she independently
18    reviewed that statute.  But to the extent, too, that
19    it would require you to disclose any communications
20    about the statute with legal counsel, I would
21    instruct you not to answer to that extent.
22    Go ahead.
23       THE WITNESS:  Can you repeat your question
24    again.
25       MR. BERTELSON:  Yes.

Page 29

1 BY MR. BERTELSON:
2    Q.  Did you -- before you sent this letter marked
3 as Exhibit 3, did you review KRS61.8742A in order to try
4 to understand what it means?
5       MR. FORD:  And same instruction.  To the extent
6    it would require any communications with counsel, I
7    would instruct you not to answer to that extent.
8    Otherwise, if you can answer independent of any
9    communications with counsel, go ahead.
10    A.  I know that that is the statute regarding open
11 records for Kentucky, and that is the extent of my
12 knowledge.
13    Q.  So you did not read it before you sent
14 the letter?
15       MR. FORD:  Objection.  Mischaracterizes.
16    Go ahead.
17    A.  I reviewed it, but that would be -- that would
18 be it.
19    Q.  Reviewed it meaning that you read it yourself?
20    A.  I -- well, I reviewed it, yes.  But I -- in
21 knowing that that is how to go about requesting records
22 from various offices, yes, that is what I looked at in
23 order to make my request.
24    Q.  Okay.  And did you also look at KRS133.0147?
25    A.  I don't recall.

8 (Pages 26 - 29)

Page 30

1    Q.  If you look on Exhibit number 3, the first
2 page, the first sentence of your letter says, "Pursuant"
3 --
4    A.  Yes.
5    Q.  -- "to Kentucky revised statute Section 61870
6 at sec and 133.047, I, on behalf of Zillow Group,
7 Incorporated, Zillow request copies of the current 2018
8 assessment files"?
9    A.  I see that, yes.
10    Q.  So did you review KRS133.047?
11    MR. FORD:  Objection.
12    A.  I don't recall.
13    MR. FORD:  Go ahead.  I'm sorry.
14    Q.  Did you say you don't recall?
15    A.  Yes.
16    (EXHIBIT 5 MARKED FOR IDENTIFICATION)
17 BY MR. BERTELSON:
18    Q.  Okay.  All right.  Okay.  Let's look at
19 Exhibit number 5.  Are you familiar with that exhibit --
20 with that document?
21    A.  It would be the letter sent to Franklin County
22 Kentucky PVA.
23    Q.  Okay.  And the date is April 25, 2019; is that
24 correct?
25    A.  That is correct.

Page 31

1    Q.  That's the same date that the letter marked as
2 Exhibit 3 was sent to the Clark County PVA; is that
3 correct?
4    A.  Yes.
5    Q.  Except for the name of the Franklin PVA and
6 the address of the Franklin PVA, is this letter
7 substantially identical to Exhibit number 3?
8    A.  Yes.
9    Q.  And you were requesting -- were you requesting
10 the same type of records or data from the Franklin
11 County PVA as you were requesting from the Clark County
12 PVA?
13    A.  Yes.
14    Q.  And on page 2 of that letter, did you indicate
15 the same reason or the same use that Zillow had for the
16 data that they were -- or the records that they were
17 requesting from the Franklin County PVA as -- as they
18 had requested from the Clark County PVA?
19    A.  Yes.
20    (EXHIBIT 6 MARKED FOR IDENTIFICATION)
21 BY MR. BERTELSON:
22    Q.  Okay.  Then let's look at Exhibit number 6.
23 Are you familiar with that document?
24    A.  I have it open, yes.
25    Q.  Have you seen that document before?

Page 32

1    A.  Yes.
2    Q.  Okay.  Is that document a series of e-mails
3 between yourself and both the PVA for Franklin County
4 Kentucky, as well as her -- her main deputy PVA?
5    A.  I know it's between myself and Kellie Lang,
6 the PVA.  I do not know who the other person is.
7    Q.  Okay.  The other person being Rebecca Johnson?
8    A.  The one I have open?
9    Q.  Yes.
10    A.  There's a person -- it looked like Jill
11 Maynard is copied on it.
12    Q.  Okay.  Up at top of that --
13    A.  Then I see I Rebecca Johnson, yes.
14    Q.  Okay.  And then this series of e-mails starts
15 with an e-mail from you to Kellie Lang, the Franklin
16 County PVA, on Thursday, April 25, 2019; is that
17 correct?
18    A.  Yes.
19    Q.  And then there's a series e-mail
20 communications, and it ends with an e-mail from Rebecca
21 Johnson to you on May 2, 2019; is that correct?
22    A.  Yes.
23    MR. FORD:  Object.  I want to make sure we have
24 a clear record here, because I don't know the answer
25 to this.  But the signature line at the top of that

Page 33

1 page is a Jill.  So are you representing that that
2 was from Rebecca Johnson or from Jill Maynard?
3 Because it's -- it's a little confusing.  I just
4 want to make sure the clear record who actually sent
5 the e-mail, even though it's coming from Rebecca's
6 e-mail address.
7    MR. BERTELSON:  My understanding is that "Jill"
8 is Rebecca's middle name --
9    MR. FORD:  Okay.
10    MR. BERTELSON:  -- and Maynard is her prior
11 married and Johnson is her maiden name.
12    MR. FORD:  Very good.
13    MR. BERTELSON:  I was confused, as well.
14    MR. FORD:  I just didn't want to have a
15 confused record.
16 BY MR. BERTELSON:
17    Q.  Rebecca Johnson is the person who was deposed
18 earlier in this matter, I believe, on March 3?
19    A.  Right.
20    Q.  And on May 1, did you ask in an e-mail to
21 Rebecca Johnson whether or not the fee that was quoted
22 was for a commercial purpose request?
23    A.  Yes.
24    Q.  And then what was her response on May 2, 2019?
25    A.  She wrote, "Yes.  That is the fee for a

9 (Pages 30 - 33)

Page 34

1 commercial purpose."
2       (EXHIBIT 7 MARKED FOR IDENTIFICATION)
3 BY MR. BERTELSON:
4     Q.   Okay.  All right.  Let's look at Exhibit
5 number 7.  Are you familiar with that document?
6     A.   Yes.
7     Q.   Okay.  And what is that document?
8     A.   That would be a letter to the Henry County
9 Kentucky PVA, Mr. Scriber.
10     Q.   Is it dated April 25, 2019?
11     A.   Yes.
12     Q.   And other than the name of the PVA and his
13 address, is this letter substantially identical to the
14 letter that was sent to the Franklin County PVA and the
15 Clark County PVA that we've looked at previously here
16 today?
17     A.   Yes.
18     Q.   Okay.  And the data that you're requesting
19 here on behalf of Zillow Group, Inc., was the same as
20 you had requested from the other two counties, Clark
21 County and Franklin County?
22     A.   Yes.
23     Q.   And on the second page, first paragraph, did
24 you describe to Mr. Scriber the intended use Zillow had
25 for the records that you were requesting on their

Page 35

1 behalf?
2     A.   Yes.
3       (EXHIBIT 8 MARKED FOR IDENTIFICATION)
4 BY MR. BERTELSON:
5     Q.   Okay.  And then let's open up Exhibit
6 number 8.
7     A.   Okay.
8     Q.   Are you familiar with that document?
9     A.   Yes.
10     Q.   Okay.  Is that document a series of e-mails
11 between you and the Henry County PVA, Jason Scriber?
12     A.   Yes.
13     Q.   And does it start -- does the e-mail chain
14 start on April 25, 2019, with an e-mail from you to
15 Mr. Scriber?
16     A.   Yes.
17     Q.   And is the last one an e-mail from Mr. Scriber
18 to you on May 2, 2019?
19     A.   Yes.
20     Q.   And on May 1, 2019, did you ask Mr. Scriber
21 whether Zillow's intended use was for a commercial
22 purpose?
23     A.   Can you repeat your question?
24     Q.   Did you ask Mr. Scriber on May 1, 2019, in
25 your e-mail to him, did you ask him whether or not that

Page 36

1 Zillow's intended use was for a commercial purpose?
2     A.   I believed I asked if he considered what
3 Zillow's intended use to be as a commercial purpose.
4     Q.   And then in the e-mail that he sent you on
5 May 2, 2019, what did he say?
6     A.   Yes.  He said my -- he said, "Your intended
7 use is considered a commercial purpose pursuant to
8 KRS61.874A."
9     Q.   Did you have any other communications with
10 Mr. Scriber after that point?
11     A.   I don't recall.
12     Q.   Okay.  Had you had any communications with him
13 prior to April 25, 2019?
14     A.   I don't recall.
15       (EXHIBIT 9 MARKED FOR IDENTIFICATION)
16 BY MR. BERTELSON:
17     Q.   All right.  Let's look at Exhibit number 9.
18     A.   Okay.
19     Q.   All right.  Are you familiar with that
20 document?
21     A.   Yes.
22     Q.   What is that document?
23     A.   That would be a letter that I sent to the Owen
24 County Kentucky PVA, Mr. Robertson.
25     Q.   Okay.  What's the date on the letter?

Page 37

1     A.   It is April 25, 2019.
2     Q.   Okay.  And beside -- and aside from
3 Mr. Robertson's name and his address, is this letter
4 substantially identical to the prior letters we've
5 looked at that you had sent to the Henry
6 County, Franklin County, and Clark County PVAs?
7     A.   Yes.
8     Q.   Okay.  And is the list of information that
9 you've -- you're requesting in this letter from the Owen
10 County PVA, is it the same that you were requesting from
11 the other Kentucky PVAs?
12     A.   Yes.
13     Q.   Okay.  And the second page of that letter, you
14 describe to Mr. Robertson what Zillow's intended use of
15 that -- of those records is or was?
16     A.   Yes.  Yes.
17       (EXHIBIT 10 MARKED FOR IDENTIFICATION)
18 BY MR. BERTELSON:
19     Q.   And then let's look at Exhibit number 10.  Are
20 you familiar with that document?
21     A.   Yes.
22     Q.   Is that document a series of e-mails between
23 you and the Owen County Kentucky PVA, Mr. Robertson?
24     A.   Yes.
25     Q.   Does it begin on the 25th of April 2019, with

10 (Pages 34 - 37)

Page 38

1 an e-mail from you to him?

2 A. Yes.

3 Q. And then is the last communication there an
4 e-mail from Mr. Robertson to you on May 7, 2019?

5 A. Yes.

6 Q. Okay. And in your e-mail on May 1, 2019, did
7 you ask Mr. Robertson whether Zillow's intended use for
8 the records is for a commercial purpose?

9 A. Can you repeat your question?

10 Q. Did you ask -- in your May 1, 2019, e-mail
11 from you to Mr. Robertson, did you ask what Zillow's --
12 if Zillow's intended use for the records was for a
13 commercial purpose?

14 A. I believe I asked him if the -- yes. I
15 believe that I was asking him if it was -- if he -- if
16 the price he quoted was for commercial purpose, yes.

17 Q. And on May 7, 2019, in his e-mail response to
18 you, what did he say?

19 A. I will read it. He said, "This charge is a
20 fee that we would charge for anyone requesting this
21 information. We don't care how you use this information
22 internally. We just ask that you do not sell this info
23 to anyone else without our authorization. The
24 $18,901.05 quoted to you will be the only fees you are
25 charged to obtain the information. Once you have signed

Page 39

1 our contract and we receive a check, we will get all of
2 the requested info to you. If you have any further
3 questions, feel to ask. Have a wonderful day."

4 Q. Okay. Did you have any further communications
5 with Mr. Robertson after that point?

6 A. I don't recall.

7 Q. You don't you recall if you had a phone call
8 conversation with him or any further e-mails with him?

9 MR. FORD: Objection. Go ahead.

10 A. No, I do not recall.

11 Q. Okay. We sent out discovery requests for
12 information related to these communications with the
13 PVAs -- between you and the PVAs. Did you do a search
14 of your e-mail to find if there were e-mails between you
15 and the PVAs?

16 A. Yes.

17 Q. Okay. So if there had been an e-mail between
18 you and Mr. Robertson after May 7, 2019, at 7:11 a.m.
19 Eastern Time, would you have found that and turned it
20 over to your attorney to turn it over to us?

21 MR. FORD: Objection. Calls for speculation.

22 Go ahead.

23 A. Yes.

24 Q. And did you do that with regard to e-mails for
25 Mr. Robertson -- or between you and Mr. Robertson?

Page 40

1 A. I believe I turned over everything that I had
2 received that I had -- that -- yes.

3 Q. Okay. And any e-mails you would have written
4 to Mr. Robertson, as well; correct?

5 A. I believe so, yes.

6 Q. Okay. So is it safe to say that then was no
7 communication between you and Mr. Robertson after
8 May 7, 2019, until the time the civil complaint was
9 filed?

10 MR. FORD: Objection. Lack of foundation.

11 Go ahead.

12 A. I believe so.

13 (EXHIBIT 11 MARKED FOR IDENTIFICATION)

14 BY MR. BERTELSON:

15 Q. Okay. All right. Let's look at Exhibit

16 number 11. Are you familiar with that document?

17 A. Yes.

18 Q. What is that document?

19 A. It is a letter that I sent to the Shelby
20 County Kentucky PVA, Mr. McDowell.

21 Q. Okay. What's the date on the letter?

22 A. April 25, 2019.

23 Q. Okay. And other than Mr. McDowell's name and
24 his address, is this letter substantially identical to
25 all of the other letters that we've looked at here that

Page 41

1 you sent to the -- excuse me -- Kentucky PVAs on
2 April 25, 2019?

3 A. Yes.

4 Q. Okay. And is the list of records or data on
5 the first page of that document the same as the list of
6 data or records that you sent to the other PVAs
7 requesting those records?

8 A. Yes.

9 Q. Okay. And on the second page of that
10 document, the first paragraph, did you describe to
11 Mr. McDowell Zillow's intended use of that -- of those
12 records?

13 A. Yes.

14 (EXHIBIT 12 MARKED FOR IDENTIFICATION)

15 BY MR. BERTELSON:

16 Q. All right. Let's look at Exhibit number 12.
17 All right. Do you have that document in front of you?

18 A. I do, yes.

19 Q. Okay. And are you -- have you seen that
20 document before?

21 A. Yes.

22 Q. Okay. Did you e-mail Mr. McDowell the letter
23 request, or did you just mail that hard copy to him?

24 A. I -- honestly, I don't recall. I would think
25 if I had an e-mail address for him, I e-mailed it to

11 (Pages 38 - 41)

Page 42

1 him, and I also sent a hard copy.

2    Q.  Because on this one, it's just a single page,

3 and it's just an e-mail from Mr. McDowell -- it's just

4 an e-mail from Mr. McDowell to you; correct?  There's no

5 prior e-mail from you to Mr. McDowell, is that right?

6    A.  That looks to be from this e-mail, correct.

7    Q.  Okay.  And after you got this e-mail, did you

8 have any further communication with Mr. McDowell?

9    A.  I don't recall.

10    Q.  But, again, if -- if an e-mail from -- between

11 you and Mr. McDowell after May 1, 2019, at 7:53 a.m.

12 exists, would you have looked for that in order to turn

13 it over to your attorney for disclosure in discovery in

14 response to our discovery request?

15    A.  Yes.

16    Q.  Okay.  And did you -- so did you do that with

17 regards to e-mails between you and Mr. McDowell?

18    A.  Yes.

19    Q.  Okay.  And did you have a telephone

20 conversation with Mr. McDowell after -- after he sent

21 you this e-mail?

22    A.  I don't recall.

23    Q.  Okay.  Would it be safe to say that there was

24 no communication between you and Mr. McDowell after he

25 sent you this e-mail on May 1, 2019, before the civil

Page 43

1 complaint was filed in this matter?

2       MR. FORD:  Objection.  Lack of foundation.

3 Go ahead.

4    A.  I believe so.

5       (EXHIBIT 13 MARKED FOR IDENTIFICATION)

6 BY MR. BERTELSON:

7    Q.  Okay.  All right.  Let's look at Exhibit

8 number 13.  Do you have that?

9    A.  I do, yes.

10    Q.  What is that document?

11    A.  That would be a letter that I had sent to the

12 Trimble County Kentucky PVA, Ms. Mahoney.

13    Q.  What's the date of the letter?

14    A.  April 25, 2019.

15    Q.  Okay.  And except for her name and her

16 address, is this letter substantially identical to the

17 letter that you gave to the other PVAs that we've

18 already looked at previously today?

19    A.  Yes.

20    Q.  And is it the data that you asked for copies

21 of on this first page, is that the same data or records

22 you've requested from the other PVAs we've discussed

23 earlier today?

24    A.  Yes.

25    Q.  And on the second page of that letter, did you

Page 44

1 describe to Ms. Mahoney what Zillow's intended use of

2 the records was?

3    A.  Yes.

4       (EXHIBIT 14 MARKED FOR IDENTIFICATION)

5 BY MR. BERTELSON:

6    Q.  Okay.  Let's look then at Exhibit -- excuse me

7 -- number 14.  Are you familiar with that document?

8    A.  Yes.

9    Q.  Is that document a series of e-mails between

10 you and the Trimble County PVA, Jill Mahoney?

11    A.  Yes.

12    Q.  The first one is April 25, 2019, from you to

13 Ms. Mahoney?

14    A.  Yes.

15    Q.  And you attach that letter that's Exhibit

16 number 13 to that e-mail when you sent that to her; is

17 that correct?

18    A.  Can you just repeat the question one for time?

19    Q.  Did you attach a copy of that April 25, 2019,

20 letter that's Exhibit number 13 to this e-mail when you

21 sent it --

22    A.  Yes.

23    Q.  -- to Ms. Mahoney?  Okay.  All right.  And

24 then the last communication is Wednesday May 1, 2019, at

25 4:09 p.m., from you to Ms. Mahoney; is that correct?

Page 45

1    A.  Yes.  Yes.

2    Q.  All right.  And in that e-mail, did you ask

3 whether Zillow's intended use for the records is for a

4 commercial purpose?

5    A.  I asked if her office had determined that --

6 in -- Zillow's intended use is for a commercial purpose.

7    Q.  Okay.  And there's no other e-mails after this

8 May 1, 2019, 4:09 p.m., e-mail from you to Ms. Mahoney

9 in this e-mail chain; is that correct?

10    A.  I believe so, yes.

11    Q.  Did you have any further communications with

12 her by phone or by e-mail?

13    A.  I don't recall.

14    Q.  Okay.  But like the other PVAs with regard to

15 our discovery requests, would you have looked for

16 e-mails between you and Ms. Mahoney to disclose -- to

17 give to your attorney to disclose to us in our response

18 to our discovery request?

19    A.  Yes.

20    Q.  Okay.  So is it safe to say that after this

21 May 1, 2019, e-mail from you to Ms. Mahoney, there was

22 no further communication --

23       MR. FORD:  Objection.

24    Q.  -- before the civil complaint was filed in

25 this matter?

12 (Pages 42 - 45)

Page 46

1    MR. FORD:  Objection.  Lack of foundation.
2  Calls for speculation.  Go ahead.
3    A.  I believe so, yes.
4    Q.  Okay.  All right.  So you say that you've
5  never traveled to Kentucky; is that correct?
6    A.  That's correct.
7    Q.  And the -- the county PVAs that you chose for
8  -- to send this April 25, 2019, letter, did you -- did
9  you send this April 25, 2019, letter to any other PVAs
10  in Kentucky?
11    A.  Yes.
12    Q.  Which other PVAs did you send it to?
13    A.  I would have to look them up.  I don't know
14  off the top of my head.
15    Q.  Did you send it to all of the PVAs?
16    A.  I don't believe so, no.
17    Q.  How many other PVAs do you think?
18    A.  I think I sent it to 13 or 14 PVAs.
19    Q.  And did those PVAs provide -- and so that --
20  the letter that you sent to those other PVAs that we
21  haven't discussed here today, was that -- were the
22  letters you sent to those PVAs substantially identical
23  to the ones that we have looked at here today?
24    A.  Yes.
25    Q.  Okay.  And did those PVAs provide the records

Page 47

1  that you requested?
2    A.  No.
3    Q.  Okay.  And the civil complaint in this matter
4  was filed against the PVAs of Clark County, Franklin
5  County, Henry County, Owen County, Shelby County, and
6  Trimble County, Kentucky; is that right?
7    A.  I believe so, yes.
8    Q.  That's six PVAs total; is that right?
9    A.  Yes.
10    Q.  Okay.  So there's another seven or eight PVAs
11  that were not named as defendants in this matter that
12  you sent that April 25, 2019, letter to?
13    A.  Yes.
14    Q.  Okay.  Why did you not name them as defendants
15  if they didn't provide you the records either?
16    MR. FORD:  Objection.  I'm going to instruct
17    you not to answer that question, as it will require
18    you to reveal communications or legal advice that
19    you may have received from counsel.
20  BY MR. BERTELSON:
21    Q.  All right.  So you sent the letter -- or the
22  complaint was filed against the Clark County PVA, the
23  Franklin County PVA, the Henry County PVA, the Owen
24  County PVA, and the Trimble County PVA; is that correct?
25    A.  Yes.

Page 48

1    Q.  Why did you choose the Clark County PVA to
2  send this letter to?
3    MR. FORD:  I'm going to instruct you not to
4    answer that question because it will require you to
5    divulge communications that you had with counsel.
6  BY MR. BERTELSON:
7    Q.  Do you know how many counties there are in
8  Kentucky?
9    A.  I would have to guess.  I don't know the exact
10  number.
11    Q.  What would your guess be?
12    A.  I would say between 90 and 100.
13    Q.  Okay.  If I told you it was 120 counties,
14  would you believe me?
15    A.  If that's what you are saying, I would have no
16  reason to disagree with you.
17    Q.  Okay.  And so this being six PVA -- six county
18  PVAs out of 120 PVAs, that's, what, a tenth of the -- no
19  20th -- a 20th of the number of PVAs that are in the
20  state of Kentucky are the subject of the defendants in
21  this lawsuit; is that correct?
22    A.  Yes.
23    Q.  So in your job as the acquisitions -- what did
24  we say -- the acquisition strategist, is it your job to
25  -- isn't it your job to get records and data from all of

Page 49

1  the counties in a state?
2    A.  Yes.
3    Q.  So in April of 2019, did you ask for records
4  or data from all 120 counties in Kentucky?
5    A.  No.
6    Q.  Why not?
7    MR. FORD:  Objection.  To the extent it would
8    require you to divulge communications with legal
9    counsel, I would instruct you not to answer.
10  BY MR. BERTELSON:
11    Q.  Does Zillow -- does the living database of
12  homes contain information about parcels of real property
13  in all counties in the state of -- or the Commonwealth
14  of Kentucky?
15    A.  I -- I am not 100 percent sure, but I believe
16  it has a majority of the counties, yes.
17    Q.  So as the acquisitions strategist, is it not
18  your job to make sure that the data about all those
19  parcels of real property in all of the counties in the
20  Commonwealth of Kentucky are up to date and accurate?
21    MR. FORD:  Objection.  Argumentative.  Go
22    ahead.
23    A.  To the best of my ability, yes.
24    Q.  Okay.  So -- okay.  Why did you choose to send
25  the letter to the Franklin County PVA?

13 (Pages 46 - 49)

Page 50

1     MR. FORD:  Objection.  Instruct not to answer
2 to the extent it would require you to divulge any
3 legal advice or counsel that you received in
4 connection with the public records request in
5 Kentucky.
6 BY MR. BERTELSON:
7     Q.  And so why did you send a letter to the Henry
8 County PVA?
9     MR. FORD:  Same objection.  Instruct you not to
10 answer to the extent it would require you to reveal
11 communications or legal advice you received from
12 counsel.
13 BY MR. BERTELSON:
14    Q.  Why did you send the April 25, 2019, letter to
15 the Owen County PVA?
16    MR. FORD:  Same instruction.
17    Q.  Why did you send the April 25, 2019, letter to
18 the Shelby County PVA?
19    MR. FORD:  Same instruction.
20    Q.  Why did you send the April 25, 2019, letter to
21 the Trimble County PVA?
22    MR. FORD:  Same instruction.
23    Q.  Now, I think I am going to request that you do
24 go back and look at your records and disclose to
25 Mr. Ford and have him tell me the names and the counties

Page 51

1 of those other PVAs that you sent the April 25, 2019,
2 letter to.  Can you do that in some way?
3     MR. FORD:  Can you send a request, Rick?
4 Because I'm pretty sure there wasn't a request for
5 such information.  So if you want to send another
6 document request, you are free to do so.  But we
7 will do this in discovery, because I do not believe
8 they have been requested to date, otherwise we would
9 have produced them.
10    MR. BERTELSON:  Okay.  We'll do that either by
11 the end of today or tomorrow.
12    MR. FORD:  Okay.
13    MR. BERTELSON:  Nicky, will you make a note to
14 send that request please?
15    MS. SERGENT:  Yes, I will.
16    MR. BERTELSON:  Thank you.
17    MS. SERGENT:  Okay.
18 BY MR. BERTELSON:
19    Q.  All right.  So with regard to the
20 April 25, 2019, letter, did you send a letter like that
21 to any other property valuation assessors or assessors
22 in any other states other than Kentucky in 2019?
23    A.  I don't recall.  I would assume I sent similar
24 requests for information.
25    (EXHIBIT 15 MARKED FOR IDENTIFICATION)

Page 52

1 BY MR. BERTELSON:
2     Q.  Okay.  Let's refer to -- let's open Exhibit
3 number 15.
4     A.  Okay.
5     (EXHIBIT 16 MARKED FOR IDENTIFICATION)
6 BY MR. BERTELSON:
7     Q.  Go ahead and open Exhibit number 16, as well.
8 And then let's refer back to the Exhibit number 15.  Do
9 you know what Exhibit number 15 is?
10    A.  Yes.
11    Q.  Okay.
12    A.  The -- Zillow's objections and responses to
13 defendants' first set of interrogatories.
14    Q.  Okay.  And Exhibit number 16, are you familiar
15 with that document?
16    A.  Yes.
17    Q.  Okay.  And what is -- what is that document?
18    A.  That's verification of the -- Exhibit 15.
19    Q.  Okay.  And is that your signature that appears
20 on Exhibit number 16?
21    A.  Yes.
22    Q.  Okay.  So you were the person who was verifying
23 that the answers to the interrogatories on Exhibit
24 number 15 are, in fact, true or accurate -- true and
25 accurate to the extent possible?

Page 53

1     MR. FORD:  Objection.  Mischaracterizes
2 verification.
3     Go ahead.
4     A.  Based on my review, yes.
5     Q.  Okay.  Let's -- let's look at Exhibit number
6 15.  Scroll down to Page Number 9.
7     A.  Got it.
8     Q.  Okay.  And on that page on -- in Interrogatory
9 number 15, the defendants ask for Zillow, Inc., to
10 identify by case name and full citation, including court
11 and division, all lawsuits filed Zillow, Inc., and any
12 of its Zillow Group companies between January 1, 2016,
13 and the present date in which Zillow is sought or is
14 seeking to obtain documents subject to disclosure
15 pursuant to a state's open records statutes; is that
16 correct?
17    A.  Yes.
18    Q.  And then in response to that question, on
19 pages 10 and 11, there's a table that contains a number
20 of cases, the states in which they were filed, the
21 docket numbers, and the dates they were filed; is that
22 correct?
23    A.  Yes.
24    Q.  All right.  And except for -- on page 11, the
25 Zillow Group, Incorporated, versus Wayne County, that

14 (Pages 50 - 53)

Page 54

1 was filed in Michigan on October 11, 2016, except for
2 that one, is it correct that all these lawsuits that are
3 listed here were filed during your time as the
4 acquisition strategist for Zillow?
5     A.  I believe so, yes.
6     Q.  Okay.  And so with regard to these lawsuits
7 then, are you the main client contact for all these
8 lawsuits?
9         MR. FORD:  Objection.  Vague.  Go ahead.
10    A.  Yes.
11    Q.  Okay.  So is it correct that for each of these
12 cases that is listed here -- let me back up and ask
13 first:  Did you provide this list of cases to your
14 attorney for response -- for the response to
15 Interrogatory number 15?
16    A.  No.
17    Q.  Who did?
18    A.  I believe that this was compiled -- I mean, I
19 helped compile it.  I was not the one that provided it
20 to Darren.  That would have been Patrice Bazianos.
21    Q.  Gotcha.  All right.  But did you -- and did
22 you review this answer before these interrogatories
23 were --
24    A.  Yes.
25    Q.  -- answers were provided to us?  Okay.  So for

Page 55

1 each of these cases then -- do each of these cases,
2 except for the Michigan case, these represent cases
3 where you sent an open records request to an official in
4 the states and that -- that open records request is then
5 the subject matter of each of these cases?
6     A.  Not in all of the cases.  There would be a
7 team of people that might have sent a request.  And
8 depending on what case might have been denied access to
9 records, which then would have been sent to me.
10    Q.  Gotcha.  Were you the contact for these
11 Louisiana cases?
12    A.  In some of them, yes.
13    Q.  Okay.
14    A.  When you say "contact," what -- can you
15 clarify what that means?
16    Q.  Were you the person at Zillow who sent the
17 open records to the parish assessor in each of these
18 cases that is listed?
19    A.  No.  Not all those cases.  I -- maybe some of
20 them, but not all of them.
21    Q.  Was there recently a decision last week in one
22 of these Louisiana cases in which the court denied the
23 request for the information?
24    A.  I believe so, yes.
25    Q.  Okay.  Let's refer back up in Exhibit number

Page 56

1 15 to page -- sorry -- on page 4.  In response to the
2 defendants' Interrogatory number 4, which states,
3 "Identify each person you expect to call as a witness at
4 the trial in this matter and the subject matter of the
5 person's expected testimony."  Do you see where your
6 name is listed?
7     A.  I do.
8     Q.  What does it say there with -- beside your
9 name?
10    A.  You mean after my name, what is said there?
11    Q.  Yeah.
12    A.  It says, "Zillow anticipates that Ms. Noto
13 will testify regarding Zillow's public record requests
14 to the PVA defendants in this action and the way in
15 which Zillow utilizes public records."
16    Q.  Okay.  So at the trial of this matter, if we
17 go to trial, what do you intend to say in your trial
18 testimony regarding Zillow's public record requests to
19 the PVA defendants in this action?
20        MR. FORD:  I'm going to object and instruct you
21 not to answer that question to the extent it
22 requires you to reveal communication with counsel
23 and work-product.  Rick, if you can rephrase that,
24 great.  But, obviously, Work-product goes into trial
25 strategy and that sort of thing, so I'm going to

Page 57

1 instruct her not to answer on that basis.
2         MR. BERTELSON:  Okay.  I'm not asking her any
3 information about what's communicated between
4 herself and you or other counsel.  I'm asking her:
5 When you testify at the trial in this matter, what
6 do you intend to testify about?
7         MR. FORD:  Objection.  Vague.
8         Go ahead.
9     A.  Well, I would have to know what questions
10 would be asked in order to be able to -- to answer that
11 question.
12    Q.  Okay.  Well, it says here that you will
13 testify regarding the Zillow's public record requests to
14 the PVAs defendants in this action?
15    A.  Correct.  Yes.
16    Q.  So what -- will there be any information that
17 you will testify to at the trial that is different from
18 your answers here today?
19    A.  I don't believe --
20        MR. FORD:  Objection.  Vague.  Go ahead.
21    A.  I don't believe so, no.
22    Q.  And it also says that you intend to testify
23 about the way in which Zillow utilizes public records;
24 is that correct?
25    A.  Yes.

15 (Pages 54 - 57)

Page 58

1    Q.  And what will your testimony on that subject
2 consist of?
3         MR. FORD:  Objection.  Again, Rick, you're
4 asking her to speculate about what questions she may
5 be asked and what answers she might give to
6 hypothetical questions.  It's work- product.  Vague.
7 Calls for speculation.  If you can answer the
8 question, go ahead.
9    A.  Without knowing the exact question, it will be
10 very hard for me to respond.
11    Q.  Okay.  Where so where it says, "The way in
12 which Zillow utilizes public records," does that mean
13 you will be testifying with regards to how the data that
14 is obtained through open records requests from states,
15 including Kentucky, is put into the living database of
16 homes?
17    A.  I would be able to testify how the records are
18 Acquired, and how they're processed, and loaded into the
19 living database, yes.
20    Q.  Okay.  And then you would be testifying with
21 regard to how that data in the living database of homes
22 then comes to be viewable through the Zillow.com
23 website?
24    A.  No.
25    Q.  If we were -- and so if those questions were

Page 59

1 asked, you would not be able to answer them because you
2 don't technically know the answer to that type of
3 question; is that correct?
4    A.  It depends, again, what kind of question --
5 what that question is specifically, yes.
6         MR. BERTELSON:  Okay.  Darren, I'm going to try
7 not -- can we go off the record?
8         MR. FORD:  Sure.
9          (OFF THE RECORD)
10 BY MR. BERTELSON:
11    Q.  All right.  Let me look through here real
12 quick.  All right.  Ms. Noto, are you familiar with the
13 Zillow Premiere Agent Program?
14    A.  I am not, no.
15    Q.  Okay.  All right.  Then going back to exhibit,
16 I guess, Exhibit number 3, for -- since that was the one
17 we started with, prior to writing this April 25, 2019,
18 letter -- well, let me ask this question:  In the
19 organization that you work with, do you have a manager
20 that is above you?
21    A.  Yes.
22    Q.  Who is that person and what is their job
23 title?
24    A.  Currently it is Veronica Ojeda, and I would
25 have to look up her title.  I know she's a director.

Page 60

1    Q.  How do you spell her last name?
2    A.  Sure.  It's O-J-E-D, as in David, A.
3    Q.  All right.  You said she's a director?
4    A.  Yeah.  I would have to look up what her title
5 is.
6    Q.  Okay.  Director of -- do you have like -- are
7 you in a branch or a division of some sort of -- within
8 the company?
9    A.  I'm sorry.  Repeat your question, please.
10    Q.  Do you work within, like, a branch or a
11 division of Zillow Group?
12    A.  Yeah.  I work for a department called County
13 Direct.
14    Q.  County Direct.  Okay.  And so County Direct,
15 the County Direct department, does that sit within
16 another branch or department?
17    A.  Yes.
18    Q.  What is the higher up branch or department
19 then?
20    A.  We're under data and analytics.
21    Q.  And is that a department?  A branch?  A
22 division?
23    A.  I don't know.
24    Q.  Okay.  Does data and analytics then sit within
25 another branch or division or department of Zillow

Page 61

1 Group?
2    A.  I don't know.
3    Q.  With regard to Ms. Ojeda does Ms. Ojeda have a
4 supervisor directly above her?
5    A.  Yes.
6    Q.  Who would that be person be?
7    A.  I believe his name is Stan, and his last name
8 is Humphries.
9    Q.  Do you know what his job title is?
10    A.  I would have to look it up.
11    Q.  Okay.  And do you know does Stan Humphries
12 have a manager or supervisor above -- above him?
13    A.  I would assume so, but I don't know who that
14 would be off the top of my head.  Again, I would have to
15 look it up.
16         MR. BERTELSON:  Okay.  All right.  Let's go off
17 the record for about a five minutes, and I may be
18 done with my direct --
19         MR. FORD:  Okay.
20         MR. BERTELSON:  -- questions to Ms. Noto.
21         THE WITNESS:  Okay.
22          (OFF THE RECORD)
23 BY MR. BERTELSON:
24    Q.  Ms. Noto, I've got a few more questions for
25 you.  Can you tell me your general understanding of the

16 (Pages 58 - 61)

Page 62

1 civil complaint that was filed in this matter?  What
2 Zillow, Inc., is claiming with regard to what the
3 defendant -- what it accuses the defendants of having
4 done?
5        MR. FORD:  Objection.  Vague.  Calls for a
6   legal conclusion.  Go ahead.
7     A.  Could you repeat your question?
8     Q.  Can you tell me your general understanding of
9 the civil complaint that was filed in this matter and
10 what it is that Zillow, Inc., is claiming that the
11 defendants have done?
12        MR. FORD:  Objection.  Compound.  Calls for a
13   legal conclusion.  Go ahead.
14     A.  To the best of my knowledge, I believe that
15 the records that we have requested and how we are using
16 them would fall under a non-commercial purpose.
17     Q.  And why do you believe that?
18        MR. FORD:  Objection.  Calls for a legal
19   conclusion.  Go ahead.  And also I'm going to
20   instruct you not to answer to the extent that it
21   would require you to divulge legal advice and
22   counsel that you received in the course of this
23   litigation.  If you can answer independent of
24   conversations that you have had with lawyers, you
25   can answer.

Page 63

1     A.  No, I can't answer.
2     Q.  So you, as the corporate representative, can't
3 explain --
4        MR. FORD:  Well, Rick, she's not the corporate
5   representative.  She's here in an individual
6   capacity, so you can't -- you can't mischaracterize
7   her role here.
8        MR. BERTELSON:  Okay.  So is there somebody
9   today who's going to be able to describe the issues
10   in the complaint for me?
11        MR. FORD:  The topic designated in the notice
12   is -- Mr. Mabe will be designated to testify to
13   that.
14        MR. BERTELSON:  Okay.  That's fine.
15 BY MR. BERTELSON:
16     Q.  Okay.  So help me -- help me understand here,
17 Ms. Noto, since April 2019 -- and you say -- you said in
18 response to my question that you'd sent an identical
19 letter 13 or 14 counties in Kentucky requesting this
20 list of records or data; is that correct?
21     A.  That's correct.
22     Q.  And have you sent another letter to these 13
23 or 14 PVAs or any other PVAs in the Commonwealth of
24 Kentucky since that time?
25     A.  No.

Page 64

1     Q.  Okay.  And so how is it that the living
2 database of home has been populated with data since
3 April of 2019, if none of the PVAs in Kentucky have
4 provided this data to Zillow?
5        MR. FORD:  Objection.  Vague.  Lack of
6   foundation.  Go ahead, if you can answer.
7     A.  The information has been acquired through
8 third-party data providers.
9     Q.  What third-party data providers has it
10 acquired that information from?
11        MR. FORD:  Rick, this is getting into trade
12   secrets information and has no relevance to this
13   case in terms of how Zillow does its sourcing.  It
14   just doesn't have any relevance.  So I can -- we can
15   shut the deposition down; I can go get a protective
16   order.  I'm not going to instruct her not to the
17   answer the question, but I'm not going to let you go
18   into things that have absolutely no relevance
19   whatsoever in this case that deal with Zillow's
20   business.  So we can go off the record and the
21   discuss it.  We can stop right now and get a
22   protective order and reconvene later.  Up to you.
23 BY MR. BERTELSON:
24     Q.  Okay.  But the answer to the basic question,
25 though, is that they have obtained data regarding -- the

Page 65

1 same data that they requested from the PVAs from some
2 other third-party source between April 2019 and the
3 current time; is that correct, Ms. Noto?
4     A.  That's correct, yes.
5     Q.  Okay.  So if you have obtained that data from
6 some third-party source, why do you need it from the
7 PVAs from Kentucky then?
8        MR. FORD:  Objection.  Go ahead.
9     A.  Well, I work for a division called County
10 Direct.  It would be better to get the records directly
11 from the source.
12     Q.  By "better," what do you mean?
13     A.  Well, I would assume more accurate, if it is
14 coming from the actual government office that's creating
15 the records.
16     Q.  Do you have reason to suspect that the data
17 acquired from the third-party vendors that you
18 referenced is inaccurate then?
19     A.  No.
20     Q.  Okay.  And if it's the same -- so if it's the
21 same data as that data requested from the Kentucky
22 County PVAs, is it correct then that Zillow, Inc., does
23 not actually need that information directly from the
24 counties now?
25        MR. FORD:  Objection.  Lack of foundation.

17 (Pages 62 - 65)

Page 66

1    Argumentative. Calls for speculation. Go
2  ahead.
3    A. Could you repeat your question?
4    Q. My question is: Since Zillow, Inc., has, in
5  fact, acquired the same data that it requested from the
6  Kentucky County PVAs from a third-party source, that in
7  order to run its living database of homes, that Zillow,
8  Inc., does not need the data it requested from the PVAs
9  on April 25, 2019; is that correct?
10    MR. FORD: Objection. Lack of foundation.
11  Confusing. Compound. Calls for speculation. Go
12  ahead.
13    A. To the best of my knowledge, Zillow would want
14  to acquire the records directly from the source.
15    Q. You say, "Zillow would want to," but the
16  question was: Does it need to in order to populate the
17  data that is in the living database of homes for
18  properties in Kentucky?
19    MR. FORD: Objection. Argumentative. Asked
20  and answered. Lack of foundation. Calls for
21  speculation. Go ahead, if you can answer.
22    MR. BERTELSON: Well, it certainly wasn't
23  answered.
24    MR. FORD: Rick, this question is absurd.
25  You're asking her whether or not Zillow needs to get

Page 67

1  information that it doesn't have and it can't
2  verify. How is she supposed to know the information
3  is the same? She doesn't have it. She doesn't have
4  it --
5    MR. BERTELSON: -- that she told --
6    MR. FORD: -- from that source. You're asking
7  a -- you're asking a question, that she's answered
8  which says, "this is what Zillow would like," and
9  you're saying," How would want something you don't
10  have?" That's an absurd question.
11    MR. BERTELSON: Well, it sounds like to me
12  they've got the data that they already requested
13  from the PVAs from a third-party source that they
14  don't actually need it. So my -- I guess the real
15  question is then: Why are we here in this lawsuit
16  for?
17    MR. FORD: Rick, ask a question that isn't
18  argumentative and silly. Let's move on.
19  BY MR. BERTELSON:
20    Q. So my question was: If Zillow has obtained
21  the same data that it requested from my clients, the
22  defendants in this case, from a third-party source, does
23  Zillow need the same information directly from the PVAs
24  in order to make its living database of homes work?
25    MR. FORD: Objection. Vague. Confusing.

Page 68

1    Argumentative. Go ahead
2    A. I would go back to my answer is: It's always
3  better to acquire the records directly from the source.
4  That would be why I'm asking for the records from the
5  PVA.
6    Q. Okay. So with regard to the communications
7  that we went through between you and the PVAs that are
8  the defendants in this case, and that was, I believe,
9  exhibits numbers 3 through 14. Did any of those PVAs,
10  the Clark County Kentucky PVA, the Franklin County PVA,
11  the Henry County PVA, Owen County PVA, or Shelby County
12  PVA, or the Trimble County PVA, say that Zillow
13  Incorporated or Zillow Group, Incorporated say they
14  could not have the records that they requested?
15    MR. FORD: Objection. Calls for a legal
16  conclusion. Go ahead.
17    A. I don't believe so. I believe that some of
18  them had supplied me with an agreement and a cost.
19    Q. Okay. But none of the PVAs said, "No, you
20  can't have these documents"; right? Or "these records"?
21    A. To the best of my recollection, no.
22    Q. They simply -- they conditioned the release of
23  the records to you on the payment of the commercial
24  purpose fees; is that correct?
25    A. I believe so, yes.

Page 69

1    MR. BERTELSON: Okay. All right. Then I think
2  my questions for you are concluded.
3    MR. FORD: Nothing from me.
4    (DEPOSITION CONCLUDED AT 12:41 P.M.)

18 (Pages 66 - 69)

Veritext Legal Solutions
www.veritext.com                                    888-391-3376

Page 70

1    CERTIFICATE OF REPORTER
2    COMMONWEALTH OF KENTUCKY AT LARGE
3
4    I do hereby certify that the witness in the foregoing
5    transcript was taken on the date, and at the time and
6    place set out on the Title page here of by me after
7    first being duly sworn to testify the truth, the whole
8    truth, and nothing but the truth; and that the said
9    matter was recorded stenographically and mechanically by
10   me and then reduced to typwritten form under my
11   direction, and constitutes a true record of the
12   transcript as taken, all to the best of my skill and
13   ability.  I certify that I am not a relative or employee
14   of either counsel, and that I am in no way interested
15   financially, directly or indirectly, in this action.
16
17
18
19
20
21
22   LINDSEY JOHNSON,
23   COURT REPORTER/NOTARY
24   COMMISSION EXPIRES:  05/29/2022
25   SUBMITTED ON:  05/24/2021

Page 71

1            Veritext Legal Solutions
             1100 Superior Ave
2            Suite 1820
             Cleveland, Ohio 44114
3            Phone: 216-523-1313
4
     May 24, 2021
5
     To: MR. FORD
6
     Case Name: Zillow, Inc. v. Hon. Thomas B. Miller, Et Al.
7
     Veritext Reference Number: 4553754
8
     Witness:  Susan Noto    Deposition Date:  5/5/2021
9
10   Dear Sir/Madam:
11
     Enclosed please find a deposition transcript.  Please have the witness
12
     review the transcript and note any changes or corrections on the
13
     included errata sheet, indicating the page, line number, change, and
14
     the reason for the change.  Have the witness' signature notarized and
15
     forward the completed page(s) back to us at the Production address
16   shown
17   above, or email to production-midwest@veritext.com.
18
     If the errata is not returned within thirty days of your receipt of
19
     this letter, the reading and signing will be deemed waived.
20
21   Sincerely,
22   Production Department
23
24
25   NO NOTARY REQUIRED IN CA

Page 72

1            DEPOSITION REVIEW
             CERTIFICATION OF WITNESS
2
     ASSIGNMENT REFERENCE NO: 4553754
3    CASE NAME: Zillow, Inc. v. Hon. Thomas B. Miller, Et Al.
     DATE OF DEPOSITION: 5/5/2021
4    WITNESS' NAME: Susan Noto
5    In accordance with the Rules of Civil
     Procedure, I have read the entire transcript of
6    my testimony or it has been read to me.
7    I have made no changes to the testimony
     as transcribed by the court reporter.
8
     _____
9    Date            Susan Noto
10   Sworn to and subscribed before me, a
     Notary Public in and for the State and County,
11   the referenced witness did personally appear
     and acknowledge that:
12
     They have read the transcript;
13   They signed the foregoing Sworn
         Statement; and
14   Their execution of this Statement is of
         their free act and deed.
15
     I have affixed my name and official seal
16
     this _____ day of_____, 20____.
17
     _____
18   Notary Public
19
     _____
20   Commission Expiration Date
21
22
23
24
25

Page 73

1            DEPOSITION REVIEW
             CERTIFICATION OF WITNESS
2
     ASSIGNMENT REFERENCE NO: 4553754
3    CASE NAME: Zillow, Inc. v. Hon. Thomas B. Miller, Et Al.
     DATE OF DEPOSITION: 5/5/2021
4    WITNESS' NAME: Susan Noto
5    In accordance with the Rules of Civil
     Procedure, I have read the entire transcript of
6    my testimony or it has been read to me.
7    I have listed my changes on the attached
     Errata Sheet, listing page and line numbers as
8    well as the reason(s) for the change(s).
9    I request that these changes be entered
     as part of the record of my testimony.
10
     I have executed the Errata Sheet, as well
11   as this Certificate, and request and authorize
     that both be appended to the transcript of my
12   testimony and be incorporated therein.
13   _____
     Date            Susan Noto
14
     Sworn to and subscribed before me, a
15   Notary Public in and for the State and County,
     the referenced witness did personally appear
16   and acknowledge that:
17   They have read the transcript;
     They have listed all of their corrections
18      in the appended Errata Sheet;
     They signed the foregoing Sworn
19      Statement; and
     Their execution of this Statement is of
20      their free act and deed.
21   I have affixed my name and official seal
22   this _____ day of_____, 20____.
23   _____
     Notary Public
24
     _____
25   Commission Expiration Date

19 (Pages 70 - 73)

Page 74

1           ERRATA SHEET
            VERITEXT LEGAL SOLUTIONS MIDWEST
2              ASSIGNMENT NO: 4553754
3   PAGE/LINE(S) /      CHANGE      /REASON
4   _____
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19
    _____        _____
20  Date          Susan Noto
21  SUBSCRIBED AND SWORN TO BEFORE ME THIS _____
22  DAY OF _____, 20_____ .
23      _____
        Notary Public
24
        _____
25      Commission Expiration Date

Veritext Legal Solutions

## CERTIFICATE OF REPORTER

## COMMONWEALTH OF KENTUCKY AT LARGE

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Title page hereof, by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded by me and then reduced to typewritten form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skill and ability. I certify that I am not a relative or employee of either counsel and that I am in no way interested financially, directly or indirectly, in this action.

LINDSEY JOHNSON

COURT REPORTER / NOTARY

MY COMMISSION EXPIRES:  05/29/2022

SUBMITTED ON: 05/24/2021

**[& - absurd]**                                                                                           Page 1

| & | 2 | 25th 37:25 | 502-564-9572 3:9 |
|---|---|---|---|

**&**

**&** 2:4

**0**

**00049** 1:5
**05/24/2021** 70:25
**05/29/2022** 70:24

**1**

**1** 4:8 14:4,7 15:10
  33:20 35:20,24
  38:6,10 42:11,25
  44:24 45:8,21
  53:12
**10** 5:3 21:22 37:17
  37:19 53:19
**100** 48:12 49:15
**101** 6:5
**11** 5:5 40:13,16
  53:19,24 54:1
**1100** 71:1
**11:04** 6:8
**12** 5:7 41:14,16
**120** 48:13,18 49:4
**12:41** 69:4
**13** 5:9 43:5,8
  44:16,20 46:18
  63:19,22
**133.047** 30:6
**14** 4:8,10 5:11
  44:4,7 46:18
  63:19,23 68:9
**15** 5:13 51:25 52:3
  52:8,9,18,24 53:6
  53:9 54:15 56:1
**16** 5:16 52:5,7,14
  52:20
**18,901.05** 38:24
**1820** 71:2
**1994** 16:4

**2**

**2** 4:9 14:18,21
  15:9 27:19,22
  31:14 32:21 33:24
  35:18 36:5
**20** 72:16 73:22
  74:22
**2004** 16:8
**2005** 16:10
**2012** 16:14,14
**2014** 16:15 17:11
**2016** 53:12 54:1
**2018** 30:7
**2019** 27:14,19,22
  30:23 32:16,21
  33:24 34:10 35:14
  35:18,20,24 36:5
  36:13 37:1,25
  38:4,6,10,17 39:18
  40:8,22 41:2
  42:11,25 43:14
  44:12,19,24 45:8
  45:21 46:8,9
  47:12 49:3 50:14
  50:17,20 51:1,20
  51:22 59:17 63:17
  64:3 65:2 66:9
**2021** 1:24 6:7 71:4
**206-854-8240** 2:20
**20th** 48:19,19
**216-523-1313** 71:3
**24** 4:12 71:4
**2400** 2:5
**25** 27:14 30:23
  32:16 34:10 35:14
  36:13 37:1 40:22
  41:2 43:14 44:12
  44:19 46:8,9
  47:12 50:14,17,20
  51:1,20 59:17
  66:9

**25th** 37:25
**26** 10:5
**2600** 9:13
**27** 4:14

**3**

**3** 4:11 24:11,14
  26:17 28:10 29:3
  30:1 31:2,7 33:18
  59:16 68:9
**30** 4:16 6:10 10:5
  15:1 20:19
**300** 2:6
**31** 4:18
**34** 4:20
**35** 4:22
**36** 4:24
**37** 5:4
**398-1824** 9:12
**3:19** 1:5

**4**

**4** 4:13 15:10 27:3
  27:6 56:1,2
**40** 5:6
**40202** 6:5
**40602** 3:8
**41** 5:8
**41017** 2:7
**423** 3:7
**43** 5:10
**44** 5:12
**44114** 71:2
**4553754** 71:7 72:2
  73:2 74:2
**4:09** 44:25 45:8

**5**

**5** 1:24 4:15 30:16
  30:19
**5/5/2021** 71:8 72:3
  73:3

**502-564-9572** 3:9
**51** 5:15
**5100** 2:18
**52** 5:18
**5th** 6:7

**6**

**6** 4:9,17 15:1
  20:19 31:20,22
**61870** 30:5

**7**

**7** 4:3,19 34:2,5
  38:4,17 39:18
  40:8
**701** 2:17
**730** 6:4
**7:11** 39:18
**7:53** 42:11

**8**

**8** 4:21 35:3,6
**859-578-7263** 2:8

**9**

**9** 4:4,23 36:15,17
  53:6
**90** 48:12
**911** 25:25
**949** 9:12
**98104** 2:19

**a**

**a.m.** 6:8 39:18
  42:11
**ability** 11:20 12:3
  12:12 13:1 49:23
  70:13
**able** 15:12 20:11
  57:10 58:17 59:1
  63:9
**absolutely** 64:18
**absurd** 66:24
  67:10

[access - based]

**access** 55:8
**account** 25:23
**accurate** 11:21
  49:20 52:24,25
  65:13
**accurately** 12:4
**accuses** 62:3
**acknowledge**
  72:11 73:16
**acquire** 23:20
  26:22 66:14 68:3
**acquired** 58:18
  64:7,10 65:17
  66:5
**acquiring** 17:20
  17:21 18:9 25:16
**acquisition** 17:16
  17:17,18,23,24
  18:5 23:7 48:24
  54:4
**acquisitions** 48:23
  49:17
**acreage** 26:2
**act** 72:14 73:20
**action** 1:5 56:14
  56:19 57:14 70:15
**actual** 65:14
**address** 9:9,12
  25:24,25,25 31:6
  33:6 34:13 37:3
  40:24 41:25 43:16
  71:15
**administrative**
  11:9
**administrator**
  24:20 25:12
**administrators**
  12:9,20,22
**advice** 47:18 50:3
  50:11 62:21

**affect** 11:20
**affirm** 8:23
**affixed** 72:15
  73:21
**agent** 59:13
**ago** 15:25
**agree** 8:15 12:22
  13:9
**agreed** 6:12
**agreement** 8:16
  68:18
**agreements** 18:14
**ahead** 13:22 19:6
  19:11,16,21,24
  20:1,1,8 21:25
  23:24 25:9 28:22
  29:9,16 30:13
  39:9,22 40:11
  43:3 46:2 49:22
  52:7 53:3 54:9
  57:8,20 58:8 62:6
  62:13,19 64:6
  65:8 66:2,12,21
  68:1,16
**al** 1:14 10:1 71:6
  72:3 73:3
**alcohol** 12:2
**amount** 26:6
**analysis** 16:21
**analytics** 60:20,24
**answer** 10:9 12:4
  12:12 13:12,14,17
  15:11,12,13,15,16
  19:23 20:1,11,20
  21:13,16,18,20,23
  25:6,9 28:21 29:7
  29:8 32:24 47:17
  48:4 49:9 50:1,10
  54:22 56:21 57:1
  57:10 58:7 59:1,2
  62:20,23,25 63:1

64:6,17,24 66:21
  68:2
**answered** 66:20
  66:23 67:7
**answering** 13:7
**answers** 52:23
  54:25 57:18 58:5
**anticipates** 56:12
**anybody** 8:14
**appear** 14:16
  72:11 73:15
**appearance** 7:4
**appearances** 2:1
  3:1
**appeared** 2:10,23
  3:12
**appearing** 7:8,9
  7:10,13,16,19
**appears** 52:19
**appended** 73:11
  73:18
**april** 16:14 27:14
  30:23 32:16 34:10
  35:14 36:13 37:1
  37:25 40:22 41:2
  43:14 44:12,19
  46:8,9 47:12 49:3
  50:14,17,20 51:1
  51:20 59:17 63:17
  64:3 65:2 66:9
**area** 9:11
**areas** 15:13,13
**argumentative**
  49:21 66:1,19
  67:18 68:1
**aside** 37:2
**asked** 21:8 36:2
  38:14 43:20 45:5
  57:10 58:5 59:1
  66:19

**asking** 12:9 13:5
  21:3 28:17 38:15
  57:2,4 58:4 66:25
  67:6,7 68:4
**assessed** 26:3
**assessment** 30:8
**assessor** 55:17
**assessors** 51:21,21
**assignment** 72:2
  73:2 74:2
**assume** 17:6 51:23
  61:13 65:13
**assuming** 23:3
**attach** 44:15,19
**attached** 73:7
**attended** 6:6
**attending** 7:4,5,20
**attorney** 7:7 39:20
  42:13 45:17 54:14
**attorneys** 25:8
**authorization**
  38:23
**authorize** 73:11
**available** 11:3,4
  23:11 25:15 26:10
**ave** 71:1
**avenue** 2:17
**aware** 13:20
**axiomlaw.net** 2:22

**b**

**b** 1:12 4:9 15:1
  20:19 71:6 72:3
  73:3
**back** 18:7 50:24
  52:8 54:12 55:25
  59:15 68:2 71:15
**background** 8:8
  15:22
**bad** 19:3
**based** 7:20 28:3
  53:4

**basic** 64:24
**basically** 12:24
**basis** 57:1
**bazianos** 2:15 7:24
7:24 8:18 54:20
**beautiful** 19:3
**behalf** 2:2 3:3 7:8
7:19,25 10:10
30:6 34:19 35:1
**believe** 18:19
20:15 22:4 33:18
38:14,15 40:1,5,12
43:4 45:10 46:3
46:16 47:7 48:14
49:15 51:7 54:5
54:18 55:24 57:19
57:21 61:7 62:14
62:17 68:8,17,17
68:25
**believed** 36:2
**bertelson** 3:4 4:4
7:6,6 8:19 9:3,4,6
10:20,22 14:5,19
19:12 20:10 21:3
21:15 22:1 24:12
27:4 28:25 29:1
30:17 31:21 33:7
33:10,13,16 34:3
35:4 36:16 37:18
40:14 41:15 43:6
44:5 47:20 48:6
49:10 50:6,13
51:10,13,16,18
52:1,6 57:2 59:6
59:10 61:16,20,23
63:8,14,15 64:23
66:22 67:5,11,19
69:1
**best** 12:12 13:1
23:14 49:23 62:14
66:13 68:21 70:12

**better** 13:4 65:10
65:12 68:3
**beyond** 25:8
**bit** 11:13
**black** 16:25 17:2
**book** 26:7
**born** 18:22
**box** 3:7
**branch** 60:7,10,16
60:18,21,25
**break** 13:6,7,9
**breakdown** 26:3,4
**build** 17:25
**building** 7:10 26:4
26:5
**business** 9:9 15:24
64:20

**c**

**ca** 71:25
**california** 9:15,19
18:23
**call** 39:7 56:3
**called** 14:7 16:25
60:12 65:9
**calls** 39:21 46:2
58:7 62:5,12,18
66:1,11,20 68:15
**camera** 8:7
**capacity** 1:12 63:6
**care** 38:21
**case** 10:2 11:6,6
12:7,10,11 53:10
55:2,8 64:13,19
67:22 68:8 71:6
72:3 73:3
**cases** 53:20 54:12
54:13 55:1,1,2,5,6
55:11,18,19,22
**caution** 25:5
**center** 2:5

**central** 1:3 16:5
**certainly** 66:22
**certificate** 70:1
73:11
**certification** 72:1
73:1
**certify** 70:4,13
**chain** 27:14 35:13
45:9
**chamber** 2:5
**chance** 15:5
**change** 71:13,14
73:8 74:3
**changes** 16:12
71:12 72:7 73:7,9
**characteristic**
26:8
**characterization**
13:21
**charge** 38:19,20
**charged** 38:25
**check** 39:1
**chicago** 8:1
**choose** 48:1 49:24
**chose** 46:7
**citation** 53:10
**city** 25:24
**civil** 1:5 6:9 10:6
14:25 22:11,15
40:8 42:25 45:24
47:3 62:1,9 72:5
73:5
**claiming** 62:2,10
**clarify** 26:16
28:16 55:15
**clark** 4:11,14
24:20,21,24,25
25:3,12 26:18
27:11,17 31:2,11
31:18 34:15,20
37:6 47:4,22 48:1

68:10
**class** 26:1
**clear** 32:24 33:4
**cleveland** 71:2
**client** 20:25 54:7
**clients** 67:21
**code** 9:11,14 26:1
**come** 18:10 19:4
**comes** 58:22
**coming** 33:5 65:14
**commercial** 28:2,3
33:22 34:1 35:21
36:1,3,7 38:8,13
38:16 45:4,6
62:16 68:23
**commission** 70:24
72:19 73:25 74:25
**commissioner**
1:13 9:25
**commonwealth**
49:13,20 63:23
70:2
**communicate** 25:3
25:11
**communicated**
57:3
**communication**
38:3 40:7 42:8,24
44:24 45:22 56:22
**communications**
25:7 27:11 28:19
29:6,9 32:20 36:9
36:12 39:4,12
45:11 47:18 48:5
49:8 50:11 68:6
**companies** 12:14
12:16 53:12
**company** 15:11
16:7,25 17:2,3,4
19:19 60:8

[comparing - defendant]

**comparing** 23:12
**compile** 54:19
**compiled** 54:18
**complaint** 22:12
22:15,16,22 40:8
43:1 45:24 47:3
47:22 62:1,9
63:10
**completed** 6:15
71:15
**complex** 20:23
**compound** 62:12
66:11
**comprehend**
11:20
**concluded** 69:2,4
**concludes** 27:19
**conclusion** 62:6,13
62:19 68:16
**conditioned** 68:22
**confirm** 20:25
**confused** 33:13,15
**confusing** 19:22
33:3 66:11 67:25
**connection** 50:4
**considered** 28:1
36:2,7
**consist** 58:2
**constitutes** 70:11
**consultant** 16:18
**contact** 54:7 55:10
55:14
**contain** 49:12
**contains** 53:19
**continued** 3:1 5:1
16:8
**contract** 18:11
39:1
**conversation** 39:8
42:20

**conversations**
62:24
**copied** 32:11
**copies** 30:7 43:20
**copy** 41:23 42:1
44:19
**corporate** 10:10
18:19 19:8 20:14
20:19 21:8,20
63:2,4
**corporation** 20:5
23:4
**correct** 10:11
14:16 17:11 19:24
22:13,17,18 28:11
30:24,25 31:3
32:17,21 40:4
42:4,6 44:17,25
45:9 46:5,6 47:24
48:21 53:16,22
54:2,11 57:15,24
59:3 63:20,21
65:3,4,22 66:9
68:24
**corrections** 71:12
73:17
**correspondence**
4:13,17,21 5:3,7
5:11
**cost** 68:18
**costly** 23:21
**counsel** 10:23
13:11,13,16 14:2
18:19 28:20 29:6
29:9 47:19 48:5
49:9 50:3,12
56:22 57:4 62:22
70:14
**counties** 18:11
26:9 34:20 48:7
48:13 49:1,4,13,16

49:19 50:25 63:19
65:24
**country** 17:21
18:2
**county** 4:11,14,16
4:18,20,22,24 5:4
5:6,8,10,12 18:1
23:12 24:20,21,24
24:25 25:3,12,14
26:18 27:11,17
30:21 31:2,11,11
31:17,18 32:3,16
34:8,14,15,21,21
35:11 36:24 37:6
37:6,6,10,23 40:20
43:12 44:10 46:7
47:4,5,5,5,5,6,22
47:23,23,24,24
48:1,17 49:25
50:8,15,18,21
53:25 60:12,14,14
60:15 65:9,22
66:6 68:10,10,11
68:11,11,12 72:10
73:15
**couple** 11:15
**course** 62:22
**court** 1:1 6:4,13
7:2 8:2,5,14,21
9:2 11:9 13:19
53:10 55:22 70:23
72:7
**creating** 65:14
**current** 17:16 23:6
30:7 65:3
**currently** 9:16
12:1 18:21 59:24
**cv** 1:5

| | **d** |
|---|---|
**d** 60:2
**darren** 2:3 7:12
20:10 54:20 59:6
**data** 15:19,20 16:5
16:21 17:24 18:10
23:7,11,14,16,20
25:17 31:10,16
34:18 41:4,6
43:20,21 48:25
49:4,18 58:13,21
60:20,24 63:20
64:2,4,8,9,25 65:1
65:5,16,21,21 66:5
66:8,17 67:12,21
**database** 16:6
23:16,20 26:25
49:11 58:15,19,21
64:2 66:7,17
67:24
**date** 1:24 26:6
30:23 31:1 36:25
40:21 43:13 49:20
51:8 53:13 70:5
71:8 72:3,9,19
73:3,13,25 74:20
74:25
**dated** 34:10
**dates** 53:21
**david** 60:2
**day** 6:7 39:3 72:16
73:22 74:22
**days** 71:18
**deal** 64:19
**dear** 71:10
**decision** 55:21
**deed** 26:7,7 72:14
73:20
**deemed** 71:19
**defendant** 62:3

**defendants** 1:15 3:3 5:14,17 7:8 12:10 47:11,14 48:20 52:13 53:9 56:2,14,19 57:14 62:3,11 67:22 68:8
**defense** 8:19
**demeanor** 12:3
**denied** 55:8,22
**department** 1:13 7:7,19 10:1 60:12 60:15,16,18,21,25 71:22
**departments** 17:6
**depending** 55:8
**depends** 59:4
**deponent** 1:23 7:25
**deposed** 10:5 11:6 33:17
**deposition** 4:8,10 6:3,8 9:24 11:11 12:24 14:8,16 15:1,8 64:15 69:4 71:8,11 72:1,3 73:1,3
**deputy** 32:4
**describe** 34:24 37:14 41:10 44:1 63:9
**description** 17:22 26:2
**designated** 10:9 63:11,12
**determined** 45:5
**dford** 2:9
**diagnosed** 11:19
**different** 17:6,7 26:9,10 57:17

**difficulty** 11:24
**diploma** 15:23
**direct** 4:4 9:5 24:6 60:13,14,14,15 61:18 65:10
**directed** 13:19
**direction** 70:11
**directly** 61:4 65:10,23 66:14 67:23 68:3 70:15
**director** 59:25 60:3,6
**disagree** 48:16
**disclose** 28:19 45:16,17 50:24
**disclosure** 42:13 53:14
**discovery** 39:11 42:13,14 45:15,18 51:7
**discuss** 64:21
**discussed** 43:22 46:21
**discussing** 22:11
**disputing** 21:24
**district** 1:1,2
**division** 1:3 17:5,9 53:11 60:7,11,22 60:25 65:9
**divulge** 48:5 49:8 50:2 62:21
**docket** 53:21
**document** 14:13 15:3,9 24:16,18 27:8 30:20 31:23 31:25 32:2 34:5,7 35:8,10 36:20,22 37:20,22 40:16,18 41:5,10,17,20 43:10 44:7,9 51:6 52:15,17

**documents** 53:14 68:20
**doing** 12:15,20
**drive** 2:5 9:13
**driver's** 8:6
**drug** 12:2
**duly** 70:7
**duties** 17:23 18:6 24:4

**e**

**e** 2:9,21,22 3:10,11 4:13,17,21 5:3,7 5:11 27:10,13,16 27:20,22,24 32:2 32:14,15,19,20 33:5,6,20 35:10,13 35:14,17,25 36:4 37:22 38:1,4,6,10 38:17 39:8,14,14 39:17,24 40:3 41:22,25,25 42:3,4 42:5,6,7,10,17,21 42:25 44:9,16,20 45:2,7,8,9,12,16 45:21 60:2
**earlier** 33:18 43:23
**eastern** 1:2 39:19
**educational** 15:21
**eight** 16:20 47:10
**either** 11:2,9 47:15 51:10 70:14
**email** 71:17
**employee** 21:4 70:13
**employer** 23:2
**employment** 16:1
**enclosed** 71:11
**ends** 32:20
**enforce** 13:18

**engineering** 24:1
**entered** 73:9
**entire** 72:5 73:5
**errata** 71:13,18 73:7,10,18 74:1
**esq** 2:3,14,15 3:4,5
**et** 1:14 10:1 71:6 72:3 73:3
**everybody** 8:15
**evidence** 13:18
**exact** 48:9 58:9
**examination** 4:4 9:5
**excuse** 41:1 44:6
**executed** 73:10
**execution** 72:14 73:19
**exhibit** 4:7 5:2 14:4,7,7,18,21 24:11,14 26:17 27:3,6 28:10 29:3 30:1,16,19,19 31:2 31:7,20,22 34:2,4 35:3,5 36:15,17 37:17,19 40:13,15 41:14,16 43:5,7 44:4,6,15,20 51:25 52:2,5,7,8,9,14,18 52:20,23 53:5 55:25 59:15,16
**exhibits** 4:6 5:1 10:25 68:9
**exists** 42:12
**expect** 56:3
**expected** 56:5
**expert** 18:8
**expiration** 72:19 73:25 74:25
**expires** 70:24
**explain** 63:3

[explained - hearing]

| | | | |
|---|---|---|---|
| **explained**  13:23 | **finding**  23:15,20 | **foundation**  19:20 | 66:1,11,21 68:1,2 |
| **extent**  25:6,8 | **fine**  63:14 | 20:7 21:19 40:10 | 68:16 |
| 28:17,18,21 29:5,7 | **finish**  13:7 | 43:2 46:1 64:6 | **goes**  18:12 56:24 |
| 29:11 49:7 50:2 | **first**  5:14,17 11:15 | 65:25 66:10,20 | **going**  11:15 12:6 |
| 50:10 52:25 56:21 | 16:2 17:24 25:18 | **four**  15:12 | 12:25 20:11,19 |
| 62:20 | 26:12 30:1,2 | **frankfort**  1:4 3:8 | 21:12 25:5 47:16 |
| | 34:23 41:5,10 | 7:10 | 48:3 50:23 56:20 |
| **f** | 43:21 44:12 52:13 | **franklin**  4:15,18 | 56:25 59:6,15 |
| **fact**  8:16 52:24 | 54:13 70:7 | 30:21 31:5,6,10,17 | 62:19 63:9 64:16 |
| 66:5 | **fits**  19:15 | 32:3,15 34:14,21 | 64:17 |
| **fall**  62:16 | **five**  61:17 | 37:6 47:4,23 | **good**  9:7,8 11:5 |
| **familiar**  10:1 | **fix**  8:11 | 49:25 68:10 | 33:12 |
| 11:11 19:4,8 | **focused**  8:7 | **frcp**  6:10 | **gotcha**  54:21 |
| 22:10 27:8 28:7,8 | **ford**  2:3 7:12,12 | **free**  20:1 51:6 | 55:10 |
| 30:19 31:23 34:5 | 8:17 10:16,19,23 | 72:14 73:20 | **government**  65:14 |
| 35:8 36:19 37:20 | 13:21 19:6,11,16 | **front**  24:14 41:17 | **graydon**  2:4 |
| 40:16 44:7 52:14 | 19:20,24 20:7,12 | **ft**  7:14 | **graydon.com**  2:9 |
| 59:12 | 21:7,17 23:22,24 | **full**  16:2 53:10 | **great**  56:24 |
| **far**  10:24 21:5 | 25:5 28:16 29:5 | **further**  39:2,4,8 | **grew**  18:23 |
| 22:25 | 29:15 30:11,13 | 42:8 45:11,22 | **group**  12:14,16 |
| **fed.r.civ.p.30**  4:9 | 32:23 33:9,12,14 | **fuzzy**  8:14 | 17:10,14 19:5,9,14 |
| **federal**  6:9 10:5 | 39:9,21 40:10 | | 19:18 20:5,24 |
| 14:25 | 43:2 45:23 46:1 | **g** | 21:4 22:4,7 23:1,5 |
| **fee**  28:2,3 33:21,25 | 47:16 48:3 49:7 | **gathering**  22:20 | 24:1 26:14 30:6 |
| 38:20 | 49:21 50:1,9,16,19 | **general**  61:25 62:8 | 34:19 53:12,25 |
| **feel**  39:3 | 50:22,25 51:3,12 | **getting**  64:11 | 60:11 61:1 68:13 |
| **feeling**  11:16 | 53:1 54:9 56:20 | **gfvt**  1:5 | **guess**  9:14 21:4 |
| **fees**  38:24 68:24 | 57:7,20 58:3 59:8 | **give**  8:24 9:9 17:22 | 48:9,11 59:16 |
| **fidelity**  16:11 | 61:19 62:5,12,18 | 21:21 45:17 58:5 | 67:14 |
| **field**  23:9 | 63:4,11 64:5,11 | **go**  7:15,18 10:16 | **guessing**  23:3 |
| **fields**  25:22 | 65:8,25 66:10,19 | 13:22 19:6,11,16 | **guidelines**  28:4 |
| **fifth**  2:17 | 66:24 67:6,17,25 | 19:21,24,25 20:1,8 | **guys**  19:22 |
| **filed**  22:12 40:9 | 68:15 69:3 71:5 | 20:25 21:24 23:24 | |
| 43:1 45:24 47:4 | **foregoing**  70:4 | 25:9,15 28:22 | **h** |
| 47:22 53:11,20,21 | 72:13 73:18 | 29:9,16,21 30:13 | **hand**  8:23 |
| 54:1,3 62:1,9 | **form**  70:10 | 39:9,22 40:11 | **hard**  41:23 42:1 |
| **files**  30:8 | **format**  11:9 | 43:3 46:2 49:21 | 58:10 |
| **filing**  22:21 | **fort**  2:7 | 50:24 52:7 53:3 | **head**  2:4 46:14 |
| **financial**  16:11 | **forward**  71:15 | 54:9 56:17 57:8 | 61:14 |
| **financially**  70:15 | **found**  39:19 | 57:20 58:8 59:7 | **hear**  13:3 |
| **find**  25:14 39:14 | | 61:16 62:6,13,19 | **hearing**  11:24 |
| 71:11 | | 64:6,15,17,20 65:8 | |

held   17:13
help   17:25 63:16
  63:16
helped   54:19
helps   8:10 21:2
henry   4:19,22
  34:8 35:11 37:5
  47:5,23 50:7
  68:11
hierarchy   19:9,13
  21:20
high   15:23
higher   60:18
hired   17:25
history   16:2
hold   8:6,9
home   7:17,23 64:2
homes   23:17,21
  27:1 49:12 58:16
  58:21 66:7,17
  67:24
hometown   18:20
hon   1:12 71:6 72:3
  73:3
honestly   41:24
hopefully   13:1
humphries   61:8
  61:11
hypothetical   58:6

i

identical   31:7
  34:13 37:4 40:24
  43:16 46:22 63:18
identification   14:4
  14:18 24:11 27:3
  30:16 31:20 34:2
  35:3 36:15 37:17
  40:13 41:14 43:5
  44:4 51:25 52:5
identify   26:1
  53:10 56:3

iii   3:4
illinois   8:1
illness   11:19
inaccurate   65:18
inc.'s   5:16
included   71:13
including   26:4,5
  53:10 58:15
incorporated   9:24
  12:7,8,13 19:5,10
  19:14,15,18 20:6
  21:5 24:1 30:7
  53:25 68:13,13
  73:12
independent   29:8
  62:23
independently
  25:9 28:17
index   4:1
indicate   26:12,18
  31:14
indicating   71:13
indirectly   70:15
individual   63:5
influence   12:1
info   38:22 39:2
information   22:21
  23:12 25:15,16,18
  26:6,8,10,19,22
  37:8 38:21,21,25
  39:12 49:12 51:5
  51:24 55:23 57:3
  57:16 64:7,10,12
  65:23 67:1,2,23
instruct   13:16
  21:12,16 28:21
  29:7 47:16 48:3
  49:9 50:1,9 56:20
  57:1 62:20 64:16
instructing   21:18

instruction   29:5
  50:16,19,22
instructs   13:13
intend   12:15,21
  56:17 57:6,22
intended   28:1
  34:24 35:21 36:1
  36:3,6 37:14 38:7
  38:12 41:11 44:1
  45:3,6
intending   26:14
  26:19
interact   24:3
interactions   24:24
interested   70:14
interference   8:8
internally   38:22
interrogatories
  5:15,18 52:13,23
  54:22
interrogatory
  53:8 54:15 56:2
involve   23:7,9,15
  23:19
involved   22:19,20
irvine   9:13
issues   63:9

j

j   60:2
january   16:4,10
  53:12
jason   27:16,20
  35:11
jill   32:10 33:1,2,7
  44:10
job   15:24 17:13,23
  18:6,18 23:6,15,19
  24:4 48:23,24,25
  49:18 59:22 61:9
john   23:25

johnson   1:25 6:12
  32:7,13,21 33:2,11
  33:17,21 70:22

k

k   21:22
kellie   32:5,15
kentuckiana   6:4
kentucky   1:2,13
  2:7 3:8 6:5,13 7:7
  7:10,14,20 9:25
  12:9 18:24 19:1
  24:22,25 28:6,15
  29:11 30:5,22
  32:4 34:9 36:24
  37:11,23 40:20
  41:1 43:12 46:5
  46:10 47:6 48:8
  48:20 49:4,14,20
  50:5 51:22 58:15
  63:19,24 64:3
  65:7,21 66:6,18
  68:10 70:2
kind   59:4
knew   14:15
knight   16:25 17:2
know   10:4,8 13:1
  17:8 18:9 19:13
  20:9,22 21:5,13,22
  22:6,9,25 23:11,25
  28:5 29:10 32:5,6
  32:24 46:13 48:7
  48:9 52:9 57:9
  59:2,25 60:23
  61:2,9,11,13 67:2
knowing   29:21
  58:9
knowledge   29:12
  62:14 66:13
known   16:13
knows   21:12,23

**krs133.0147**  29:24
**krs133.047**  30:10
**krs61.8742a**  29:3
**krs61.874a**  28:5
**krs61.874a.**  28:2
  36:8
**ky.gov**  3:10,11

**l**

**lack**  19:20 20:7
  40:10 43:2 46:1
  64:5 65:25 66:10
  66:20
**land**  26:4,5
**lang**  32:5,15
**large**  70:2
**las**  7:17
**law**  13:22
**lawsuit**  48:21
  67:15
**lawsuits**  53:11
  54:2,6,8
**lawyer**  21:11
**lawyers**  62:24
**layouts**  23:11
**left**  16:12,13
**legal**  3:6 11:6,8
  18:10 21:10 26:2
  28:20 47:18 49:8
  50:3,11 62:6,13,18
  62:21 68:15 71:1
  74:1
**lender**  16:13,24
**letter**  4:11,15,19
  4:23 5:5,9 24:19
  24:23 25:2,4,13
  28:10,12,13 29:2
  29:14 30:2,21
  31:1,6,14 34:8,13
  34:14 36:23,25
  37:3,9,13 40:19,21
  40:24 41:22 43:11

**43**:13,16,17,25
  44:15,20 46:8,9,20
  47:12,21 48:2
  49:25 50:7,14,17
  50:20 51:2,20,20
  59:18 63:19,22
  71:19
**letters**  37:4 40:25
  46:22
**lexington**  7:20
**lexisnexis**  16:6,7
**license**  8:6
**limitation**  13:18
  13:20
**lindsey**  1:25 6:12
  70:22
**line**  32:25 71:13
  73:7 74:3
**list**  20:13 25:17
  37:8 41:4,5 54:13
  63:20
**listed**  54:3,12
  55:18 56:6 73:7
  73:17
**listing**  25:22 26:8
  73:7
**litigation**  22:11
  62:23
**little**  11:13 33:3
**live**  18:21
**lived**  18:24
**living**  23:16 26:25
  49:11 58:15,19,21
  64:1 66:7,17
  67:24
**llp**  2:4
**loaded**  58:18
**located**  6:4
**location**  7:4
**look**  11:3,4 14:7
  14:20 27:5 29:24

**30**:1,18 31:22
  34:4 36:17 37:19
  40:15 41:16 43:7
  44:6 46:13 50:24
  53:5 59:11,25
  60:4 61:10,15
**looked**  29:22
  32:10 34:15 37:5
  40:25 42:12 43:18
  45:15 46:23
**looking**  9:14 10:25
**looks**  42:6
**lot**  26:3
**loud**  25:21
**louisiana**  55:11,22
**louisville**  6:5

**m**

**ma'am**  8:22
**mabe**  23:25 63:12
**madam**  71:10
**mahoney**  43:12
  44:1,10,13,23,25
  45:8,16,21
**maiden**  33:11
**mail**  2:9,21,22
  3:10,11 4:13,17,21
  5:3,7,11 27:10,13
  27:16,20,22,24
  32:15,19,20 33:5,6
  33:20 35:13,14,17
  35:25 36:4 38:1,4
  38:6,10,17 39:14
  39:17 41:22,23,25
  42:3,4,5,6,7,10,21
  42:25 44:16,20
  45:2,8,9,12,21
**mailed**  41:25
**mailing**  25:24,25
**mails**  32:2,14
  35:10 37:22 39:8
  39:14,24 40:3

**42**:17 44:9 45:7
  45:16
**main**  6:4 32:4 54:7
**majority**  49:16
**making**  19:25
**management**  17:3
**manager**  16:21
  17:16,24 24:7,9
  59:19 61:12
**managing**  18:3
**manner**  23:21
**march**  16:8 33:18
**marked**  14:4,7,18
  14:21 24:11 27:3
  27:6 28:10 29:2
  30:16 31:1,20
  34:2 35:3 36:15
  37:17 40:13 41:14
  43:5 44:4 51:25
  52:5
**market**  26:5
**married**  33:11
**matter**  6:10 7:9
  9:24 11:8 18:8
  22:12 33:18 43:1
  45:25 47:3,11
  55:5 56:4,4,16
  57:5 62:1,9 70:9
**matters**  15:10
**maynard**  32:11
  33:2,10
**mcdowell**  40:20
  41:11,22 42:3,4,5
  42:8,11,17,20,24
**mcdowell's**  40:23
**mead**  16:5
**mean**  15:18 17:19
  18:15 19:22 21:11
  26:25 28:7 54:18
  56:10 58:12 65:12

**meaning** 29:19
**means** 19:23 29:4
  55:15
**mechanically** 70:9
**medication** 12:2
**mental** 11:19
**met** 24:2
**michigan** 54:1
  55:2
**mickelson** 9:13
**middle** 33:8
**midwest** 71:17
  74:1
**miller** 1:12 9:25
  71:6 72:3 73:3
**mind** 10:19
**minutes** 61:17
**mischaracterize**
  63:6
**mischaracterizes**
  29:15 53:1
**mitchell** 2:7 7:14
**months** 16:20
**morning** 9:7,8
**mortgage** 17:3,3,8
**move** 67:18
**moved** 17:16

**n**

**n** 1:25 6:12
**name** 7:6 8:3
  16:12 31:5 33:8
  33:11 34:12 37:3
  40:23 43:15 47:14
  53:10 56:6,9,10
  60:1 61:7,7 71:6
  72:3,4,15 73:3,4
  73:21
**named** 47:11
**names** 25:24 50:25
**national** 16:11

**necessarily** 21:5
**need** 13:5 20:16,17
  20:23 65:6,23
  66:8,16 67:14,23
**needs** 18:11 66:25
**neely** 27:16,20,23
**nevada** 7:17
**never** 46:5
**nicky** 51:13
**nicole** 3:5 7:18
**nicole.sergent**
  3:11
**non** 62:16
**nope** 8:10
**notarized** 71:14
**notary** 6:12 70:23
  71:25 72:10,18
  73:15,23 74:23
**note** 51:13 71:12
**notice** 4:8,9 14:8
  14:25 63:11
**noto** 1:23 4:11,13
  4:15,17,19,21,23
  5:3,5,7,9,11 6:3
  7:15 8:4,5,5,16
  9:7 14:9 22:2 28:1
  56:12 59:12 61:20
  61:24 63:17 65:3
  71:8 72:4,9 73:4
  73:13 74:20
**number** 9:10,11
  14:21 24:14 25:23
  25:23 26:17 27:6
  28:10 30:1,19
  31:7,22 34:5 35:6
  36:17 37:19 40:16
  41:16 43:8 44:7
  44:16,20 48:10,19
  52:3,7,8,9,14,20
  52:24 53:5,6,9,19
  54:15 55:25 56:2

  59:16 71:7,13
**numbered** 15:10
**numbers** 53:21
  68:9 73:7

**o**

**o** 60:2
**oath** 6:9
**object** 32:23 56:20
**objecting** 21:19
**objection** 8:17,18
  8:19 13:21 19:6
  19:11,16,20,25
  20:7 23:22 28:16
  29:15 30:11 39:9
  39:21 40:10 43:2
  45:23 46:1 47:16
  49:7,21 50:1,9
  53:1 54:9 57:7,20
  58:3 62:5,12,18
  64:5 65:8,25
  66:10,19 67:25
  68:15
**objections** 5:13
  52:12
**objects** 13:11
**observing** 7:23
**obtain** 38:25 53:14
**obtained** 58:14
  64:25 65:5 67:20
**obviously** 56:24
**october** 54:1
**offer** 20:17
**office** 3:6 6:3 7:9
  7:14 9:12 45:5
  65:14
**offices** 18:1 29:22
**official** 1:12 55:3
  72:15 73:21
**offline** 20:25
**oh** 8:7,11

**ohio** 71:2
**ojeda** 59:24 61:3,3
**okay** 8:13,20 9:21
  9:23 10:13 11:5,8
  11:14,18 12:6,19
  14:1,6,13,22 15:8
  15:18,21 16:1,9,16
  16:21 17:2,10,13
  17:18,22,22 18:4
  18:20,24 20:4
  22:5,10,15,19,24
  23:6,9,15 24:3,6,9
  24:13,16,21,23
  25:2,17,21 26:11
  26:24 27:5,10,13
  28:5,9,13 29:13,24
  30:18,18,23 31:22
  32:2,7,12,14 33:9
  34:4,7,18 35:5,7
  35:10 36:12,18,25
  37:2,8,13 38:6
  39:4,11,17 40:3,6
  40:15,21,23 41:4,9
  41:19,22 42:7,16
  42:19,23 43:7,15
  44:6,23 45:7,14,20
  46:4,25 47:3,10,14
  48:13,17 49:24,24
  51:10,12,17 52:2,4
  52:11,14,17,19,22
  53:5,8 54:6,11,25
  55:13,25 56:16
  57:2,12 58:11,20
  59:6,15 60:6,14,24
  61:11,16,19,21
  63:8,14,16 64:1,24
  65:5,20 68:6,19
  69:1
**once** 38:25
**ones** 46:23

**online**   23:13
**open**   14:24 28:3
29:10 31:24 32:8
35:5 52:2,7 53:15
55:3,4,17 58:14
**order**   29:3,23
42:12 57:10 64:16
64:22 66:7,16
67:24
**organization**
19:14 59:19
**organizational**
19:4
**organized**   19:9
**original**   28:12
**owen**   4:23 5:4
36:23 37:9,23
47:5,23 50:15
68:11
**owner**   25:23

**p**

**p.m.**   44:25 45:8
69:4
**page**   4:2,7 5:2
15:9 25:18 26:7
26:11,12,17 30:2
31:14 33:1 34:23
37:13 41:5,9 42:2
43:21,25 53:6,8,24
56:1,1 70:6 71:13
71:15 73:7 74:3
**pages**   53:19
**pandemic**   9:18
**paper**   8:9
**paragraph**   26:12
34:23 41:10
**parcel**   25:23
**parcels**   49:12,19
**parent**   19:18
20:16,17 21:10
23:4

**parish**   55:17
**part**   10:9 23:15,19
73:9
**participants**   6:6
**particular**   12:8
**parties**   7:3
**party**   22:16,25
64:8,9 65:2,6,17
66:6 67:13,22
**patrice**   2:15,22
7:24 54:20
**payment**   68:23
**people**   18:1,3 55:7
**percent**   49:15
**person**   32:6,7,10
33:17 52:22 55:16
56:3 59:22 61:6
**person's**   56:5
**personally**   72:11
73:15
**phone**   9:11 39:7
45:12 71:3
**physical**   11:19
**piece**   8:9
**place**   70:6
**plaintiff**   1:8 2:2
7:23 22:16,24
**plaintiffs**   7:12
**please**   7:3 8:6,22
9:9 12:12 13:3
25:21 27:25 51:14
60:9 71:11,11
**po**   3:7
**point**   36:10 39:5
**populate**   66:16
**populated**   64:2
**position**   18:18
**positions**   17:13
**possible**   23:21
52:25

**possibly**   23:13
**preliminary**   11:16
**premiere**   59:13
**prepared**   20:21
**prescription**   12:2
**present**   7:3 16:3
53:13
**president**   23:25
**pretty**   21:21 51:4
**previously**   34:15
43:18
**price**   26:6,7 38:16
**printed**   11:2
**prior**   24:23 33:10
36:13 37:4 42:5
59:17
**privilege**   13:17
**problem**   21:1
**procedure**   6:9
10:6 14:25 72:5
73:5
**proceedings**   4:3
7:1
**processed**   58:18
**processing**   16:13
16:24
**produced**   51:9
**product**   56:23,24
58:6
**production**   71:15
71:17,22
**program**   59:13
**pronounce**   8:3
**properties**   66:18
**property**   12:9,19
12:21 16:16,22
25:12,25 26:1,2,3
26:7 49:12,19
51:21
**protect**   13:17

**protective**   64:15
64:22
**provide**   11:21
46:19,25 47:15
54:13
**provided**   10:24,24
54:19,25 64:4
**providers**   64:8,9
**public**   6:13 12:10
15:20 17:5,20
18:1,8 26:22 50:4
56:13,15,18 57:13
57:23 58:12 72:10
72:18 73:15,23
74:23
**pull**   14:23 24:13
**purpose**   21:13
28:2 33:22 34:1
35:22 36:1,3,7
38:8,13,16 45:4,6
62:16 68:24
**purposes**   15:8
**pursuant**   6:8,10
10:5 28:2 30:2
36:7 53:15
**put**   8:21 23:16
26:23,24,25 58:15
**pva**   4:12,14,16,18
4:20,22,24 5:4,6,8
5:10,12 24:19,24
24:25 25:3 26:18
27:11,17 30:22
31:2,5,6,11,12,17
31:18 32:3,4,6,16
34:9,12,14,15
35:11 36:24 37:10
37:23 40:20 43:12
44:10 47:22,23,23
47:24,24 48:1,17
49:25 50:8,15,18
50:21 56:14,19

68:5,10,10,11,11
68:12,12
**pva's** 28:3
**pvas** 12:20 37:6,11
39:13,13,15 41:1,6
43:17,22 45:14
46:7,9,12,15,17,18
46:19,20,22,25
47:4,8,10 48:18,18
48:19 51:1 57:14
63:23,23 64:3
65:1,7,22 66:6,8
67:13,23 68:7,9,19

**q**

**question** 12:12
13:2,4,8,11,13
18:9 19:7,23
20:11 21:16,22
25:6,10 26:16
28:23 35:23 38:9
44:18 47:17 48:4
53:18 56:21 57:11
58:8,9 59:3,4,5,18
60:9 62:7 63:18
64:17,24 66:3,4,16
66:24 67:7,10,15
67:17,20
**questions** 10:9
11:16,20,22 12:4,7
12:25 14:1 15:11
15:12,14,15,17
20:20,23 21:4,20
39:3 57:9 58:4,6
58:25 61:20,24
69:2
**quick** 59:12
**quoted** 33:21
38:16,24

**r**

**rachel** 2:14 7:22
18:13,15,15,17,18
**rachelwi** 2:21
**raise** 8:22
**raised** 18:22
**read** 8:14,18 15:5
25:18,21 27:24
28:7 29:13,19
38:19 72:5,6,12
73:5,6,17
**reading** 6:14
71:19
**real** 49:12,19
59:11 67:14
**really** 15:16
**realtors** 16:16,22
**reason** 13:6 31:15
48:16 65:16 71:14
73:8 74:3
**rebecca** 32:7,13,20
33:2,17,21
**rebecca's** 33:5,8
**recall** 25:1 29:25
30:12,14 36:11,14
39:6,7,10 41:24
42:9,22 45:13
51:23
**receipt** 71:18
**receive** 39:1
**received** 40:2
47:19 50:3,11
62:22
**recognize** 24:16
**recollection** 68:21
**reconvene** 64:22
**record** 7:2 8:15
10:16,21 15:20
19:25 26:22 32:24
33:4,15 56:13,18
57:13 59:7,9

61:17,22 64:20
70:11 73:9
**recorded** 70:9
**records** 12:10 17:5
17:20 18:1,8
23:10 26:15 28:3
29:11,21 31:10,16
34:25 37:15 38:8
38:12 41:4,6,7,12
43:21 44:2 45:3
46:25 47:15 48:25
49:3 50:4,24
53:15 55:3,4,9,17
56:15 57:23 58:12
58:14,17 62:15
63:20 65:10,15
66:14 68:3,4,14,20
68:23
**reduced** 70:10
**refer** 12:13,19
52:2,8 55:25
**reference** 71:7
72:2 73:2
**referenced** 65:18
72:11 73:15
**referred** 28:9
**regard** 15:11,12
39:24 45:14 51:19
54:6 58:21 61:3
62:2 68:6
**regarding** 29:10
56:13,18 57:13
64:25
**regards** 42:17
58:13
**related** 22:6 23:1
39:12
**relationship** 21:24
**relationships**
21:10

**relative** 70:13
**release** 68:22
**releasing** 23:12
**relevance** 64:12
64:14,18
**remotely** 6:7,10
7:25 9:16,17
**repeat** 13:3 25:10
28:23 35:23 38:9
44:18 60:9 62:7
66:3
**rephrase** 56:23
**report** 24:7
**reporter** 1:25 6:13
7:2 8:2,5,14,21
9:2 70:1,23 72:7
**reporters** 6:4
**represent** 55:2
**representative**
10:10 63:2,5
**representing** 7:22
33:1
**request** 28:12
29:23 30:7 33:22
41:23 42:14 45:18
50:4,23 51:3,4,6
51:14 55:3,4,7,23
73:9,11
**requested** 31:18
34:20 39:2 43:22
47:1 51:8 62:15
65:1,21 66:5,8
67:12,21 68:14
**requesting** 29:21
31:9,9,11,17 34:18
34:25 37:9,10
38:20 41:7 63:19
**requests** 39:11
45:15 51:24 56:13
56:18 57:13 58:14

**[require - source]**

**require** 28:19 29:6
47:17 48:4 49:8
50:2,10 62:21
**required** 13:12
71:25
**requires** 56:22
**resource** 16:17,22
**respond** 12:15,21
13:1 58:10
**response** 33:24
38:17 42:14 45:17
53:18 54:14,14
56:1 63:18
**responses** 5:13,16
11:21 52:12
**restate** 13:3
**returned** 71:18
**reveal** 47:18 50:10
56:22
**revealing** 25:7
**revenue** 1:13 3:6
7:7,19 10:1
**review** 18:13 29:3
30:10 53:4 54:22
71:12 72:1 73:1
**reviewed** 18:12
28:14,18 29:17,19
29:20
**reviewing** 23:10
**revised** 30:5
**richard** 3:4
**richard.bertelson**
3:10
**rick** 7:6 10:19
20:13 51:3 56:23
58:3 63:4 64:11
66:24 67:17
**right** 8:23 9:23
11:5 12:6 14:6,15
14:20,24,24 15:21
22:2 23:6,19

24:13 27:5 30:18
33:19 34:4 36:17
36:19 40:15 41:16
41:17 42:5 43:7
44:23 45:2 46:4
47:6,8,21 51:19
53:24 54:21 59:11
59:12,15 60:3
61:16 64:21 68:20
69:1
**ritchey** 2:4
**robertson** 36:24
37:14,23 38:4,7,11
39:5,18,25,25 40:4
40:7
**robertson's** 37:3
**role** 17:16 18:3,4
63:7
**rules** 6:9 10:5,5
72:5 73:5
**run** 11:14 66:7

**s**

**s** 71:15 73:8,8 74:3
**safe** 40:6 42:23
45:20
**sales** 26:6,6
**saratoga** 18:23
**saying** 21:19 48:15
67:9
**says** 28:15 30:2
56:12 57:12,22
58:11 67:8
**school** 15:23
**scriber** 34:9,24
35:11,15,17,20,24
36:10
**scroll** 53:6
**seal** 72:15 73:21
**search** 39:13
**seattle** 2:19 7:23

**sec** 30:6
**second** 8:12 10:17
11:15 26:11,12,17
34:23 37:13 41:9
43:25
**secrets** 64:12
**section** 30:5
**see** 14:11,24 15:2
21:15 30:9 32:13
56:5
**seeking** 53:14
**seen** 14:13 15:3
31:25 41:19
**sell** 38:22
**send** 46:8,9,12,15
48:2 49:24 50:7
50:14,17,20 51:3,5
51:14,20
**sending** 24:23
**senior** 18:19
**sent** 24:19 28:13
29:2,13 30:21
31:2 33:4 34:14
36:4,23 37:5
39:11 40:19 41:1
41:6 42:1,20,25
43:11,17 44:16,21
46:18,20,22 47:12
47:21 51:1,23
55:3,7,9,16 63:18
63:22
**sentence** 30:2
**sergent** 3:5 7:18
7:18 51:15,17
**series** 15:9 27:10
32:2,14,19 35:10
37:22 44:9
**serves** 21:14
**services** 3:6 16:13
16:24 17:3

**set** 5:14,17 23:14
52:13 70:6
**seven** 47:10
**sheet** 71:13 73:7
73:10,18 74:1
**shelby** 5:5,8 40:19
47:5 50:18 68:11
**short** 12:14 16:19
**showing** 23:13
**shown** 71:16
**shut** 64:15
**signature** 32:25
52:19 71:14
**signed** 38:25 72:13
73:18
**signing** 6:14 71:19
**silly** 67:18
**similar** 51:23
**simply** 12:14
21:18 68:22
**sincerely** 71:21
**single** 42:2
**sir** 71:10
**sit** 60:15,24
**six** 47:8 48:17,17
**size** 26:3
**skill** 70:12
**sold** 16:6
**solutions** 71:1
74:1
**somebody** 63:8
**sorry** 30:13 56:1
60:9
**sort** 56:25 60:7
**sought** 53:13
**sounds** 67:11
**source** 17:15,17,18
17:19,21 18:1
65:2,6,11 66:6,14
67:6,13,22 68:3

sourcing  15:16,18
  15:19 22:19 23:10
  64:13
specific  13:8
specifically  13:13
  59:5
speculate  58:4
speculation  39:21
  46:2 58:7 66:1,11
  66:21
spell  60:1
stan  61:7,11
start  27:13,14
  35:13,14
started  15:24 16:4
  16:14 17:15,24
  59:17
starting  16:2
starts  32:14
state  6:13 7:3,9
  19:3 25:24 48:20
  49:1,13 72:10
  73:15
state's  53:15
statement  72:13
  72:14 73:19,19
states  1:1 51:22
  53:20 55:4 56:2
  58:14
statuses  18:13
statute  28:7,15,18
  28:20 29:10 30:5
statutes  53:15
stenographically
  70:9
stipulate  20:14
stipulation  6:1
  20:17,23 21:2,21
stipulations  20:16
stop  13:6 64:21

strategic  23:7
strategist  17:17
  18:5 48:24 49:17
  54:4
strategy  56:25
street  6:5
structure  19:5
  20:14 21:9
styled  14:8,25
sub  20:5,17,24
  21:9
subject  12:11 18:8
  48:20 53:14 55:5
  56:4 58:1
submitted  70:25
subscribed  72:10
  73:14 74:21
substantially  31:7
  34:13 37:4 40:24
  43:16 46:22
substructure
  20:19
sue  25:5
suffering  11:18
suite  2:6,18 6:5
  71:2
super  28:8
superior  71:1
supervisor  61:4,12
supplied  68:18
supposed  11:12
  67:2
sure  9:11 16:4,4
  17:15,25 18:7
  21:13,21 32:23
  33:4 49:15,18
  51:4 59:8 60:2
susan  1:23 6:3
  7:15 8:2,16 14:8
  71:8 72:4,9 73:4
  73:13 74:20

suspect  65:16
swear  6:14 8:23
switched  18:2
sworn  6:10 70:7
  72:10,13 73:14,18
  74:21

## t

table  53:19
take  9:23 13:5,6,8
  14:6
taken  6:3,8 70:5
  70:12
talking  11:3
tax  26:5
team  17:25 18:7
  55:7
technically  59:2
teleconference
  7:11
telephone  2:8,20
  3:9 9:10 42:19
tell  16:1 20:20
  50:25 61:25 62:8
telling  21:23
tenth  48:18
terms  64:13
testified  11:8
testify  20:18 56:13
  57:5,6,13,17,22
  58:17 63:12 70:7
testifying  22:5,8
  58:13,20
testimony  8:24
  56:5,18 58:1 72:6
  72:7 73:6,9,12
thank  8:2,5,21 9:2
  9:4 28:4 51:16
thing  56:25
things  17:7 64:18
think  8:9,10 16:14
  17:7 20:14 21:1,3

21:7 41:24 46:17
  46:18 50:23 69:1
third  64:8,9 65:2,6
  65:17 66:6 67:13
  67:22
thirty  71:18
thomas  1:12 9:25
  71:6 72:3 73:3
thoughts  12:3
thursday  27:14
  32:16
time  8:11 13:2,5
  13:19 16:2,19
  39:19 40:8 44:18
  54:3 63:24 65:3
  70:5
title  59:23,25 60:4
  61:9 70:6
today  9:23 10:4,25
  11:16 12:4 14:2
  14:16 22:5 34:16
  43:18,23 46:21,23
  51:11 57:18 63:9
told  48:13 67:5
tomorrow  51:11
top  32:12,25 46:14
  61:14
topic  63:11
topics  20:12,13
total  47:8
track  18:13
trade  64:11
training  15:24
transcribed  72:7
transcript  6:15
  70:5,12 71:11,12
  72:5,12 73:5,11,17
traveled  19:1 46:5
trial  56:4,16,17,17
  56:24 57:5,17

**tried**  28:14
**trimble**  5:9,12
  43:12 44:10 47:6
  47:24 50:21 68:12
**true**  11:21 52:24
  52:24 70:11
**truth**  8:24,25,25
  70:7,8,8
**truthfully**  12:4
**try**  29:3 59:6
**trying**  23:14 25:3
  25:11
**turn**  39:20 42:12
**turned**  39:19 40:1
**two**  34:20
**type**  13:18 26:1
  31:10 59:2
**types**  25:17
**typwritten**  70:10

**u**

**uh**  8:7
**ultimately**  18:12
  23:18 26:23
**underneath**  20:5
**understand**  12:17
  12:22 13:2,4,9,10
  13:14,23 19:7
  28:6,14 29:4
  63:16
**understanding**
  33:7 61:25 62:8
**united**  1:1
**use**  26:1,14,19
  28:1 31:15 34:24
  35:21 36:1,3,7
  37:14 38:7,12,21
  41:11 44:1 45:3,6
**usually**  24:5
**utilizes**  56:15
  57:23 58:12

**v**

**v**  1:10 9:25 71:6
  72:3 73:3
**vague**  19:6,11,16
  54:9 57:7,20 58:6
  62:5 64:5 67:25
**valuation**  25:12
  51:21
**value**  12:9,20,21
**values**  26:4,5
**various**  25:22
  29:22
**vegas**  7:17
**vendors**  65:17
**verification**  5:18
  52:18 53:2
**verify**  67:2
**verifying**  52:22
**veritext**  71:1,7
  74:1
**veritext.com.**
  71:17
**veronica**  59:24
**versus**  9:25 53:25
**vice**  23:25
**videoconference**
  2:10,23 3:12 6:6
**viewable**  58:22

**w**

**w**  2:3 3:4
**wait**  8:7
**waived**  6:15 71:19
**want**  10:16 20:13
  20:21 32:23 33:4
  33:14 51:5 66:13
  66:15 67:9
**washington**  2:19
**way**  13:4 51:2
  56:14 57:23 58:11
  70:14

**wayne**  53:25
**ways**  23:20
**we've**  34:15 37:4
  40:25 43:17,22
**website**  58:23
**wednesday**  6:7
  44:24
**week**  55:21
**went**  12:8 16:11
  22:21 68:7
**west**  6:4 7:23
**whatsoever**  64:19
**white**  8:9
**wilka**  2:14 7:22,22
  10:15,18 18:15,17
**wilka's**  18:18
**window**  14:24
**witness**  6:14,15
  7:13,15 8:4,13,20
  9:1 10:14 20:10
  28:23 56:3 61:21
  70:4 71:8,11 72:1
  72:4,11 73:1,4,15
**witness'**  71:14
**wonderful**  39:3
**work**  7:15 9:13,18
  11:12 16:16 18:10
  19:19 21:6 22:2,4
  26:13 56:23,24
  58:6 59:19 60:10
  60:12 65:9 67:24
**worked**  16:11,19
  17:5,9 21:8
**working**  9:16 16:5
  16:5
**worse**  8:11
**writing**  22:21
  25:14 59:17
**written**  40:3
**wrote**  33:25

**y**

**yeah**  10:18 56:11
  60:4,12
**year**  16:6
**years**  15:25

**z**

**zillow**  1:7 2:16
  5:16 7:13,16 9:24
  10:10 12:7,8,13,13
  12:14,14,16,16
  16:15 17:10,14,14
  19:5,9,14,14,18
  20:4,5,24,24 21:4
  22:2,4,6,6,16,24
  22:25 23:1,4,4,14
  24:1 26:13,14,19
  30:6,7 31:15
  34:19,24 49:11
  53:9,11,12,13,25
  54:4 55:16 56:12
  56:15 57:23 58:12
  59:13 60:11,25
  62:2,10 64:4,13
  65:22 66:4,7,13,15
  66:25 67:8,20,23
  68:12,13 71:6
  72:3 73:3
**zillow's**  5:13 23:16
  23:20 35:21 36:1
  36:3 37:14 38:7
  38:11,12 41:11
  44:1 45:3,6 52:12
  56:13,18 57:13
  64:19
**zillow.com**  26:25
  58:22
**zillow.com.**  26:23
**zillowgroup.com**
  2:21

**zip**   9:14 25:24
**zoom**   7:11,14,16
  7:21,25 8:8

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.