Page 1

1                  UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF KENTUCKY

3                       CENTRAL DIVISION

4                          FRANKFORT

5            CIVIL ACTION NO. 3:19-cv-00049-GFVT

6              JUDGE GREGORY F. VAN TATENHOVE

7

8                        ZILLOW, INC.,

9                          Plaintiff

10

11                            V.

12

13      HON. THOMAS B. MILLER, IN HIS OFFICIAL CAPACITY AS

14     COMMISSIONER OF THE KENTUCKY DEPARTMENT OF REVENUE,

15                          ET AL.,

16                         Defendants

17

18

19

20

21

22

23   DEPONENT:  MICHAEL TACKETT, 30(B)(6)

24   DATE:      MARCH 11, 2021

25   REPORTER:  LINDSEY N. JOHNSON

Page 2

1          APPEARANCES

2

3   ON BEHALF OF THE PLAINTIFF, ZILLOW, INC.:

4   Darren W. Ford

5   Graydon Head & Ritchey, LLP

6   2400 Chamber Center Drive

7   Suite 300

8   Fort Mitchell, Kentucky 41017

9   Telephone No.: (859) 578-7263

10   E-mail: Dford@graydon.law

11   (Appeared via videoconference)

12

13   ON BEHALF OF THE DEFENDANTS, HON. THOMAS B. MILLER, IN

14   HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE KENTUCKY

15   DEPARTMENT OF REVENU, ET. AL.:

16   Richard W. Bertelson, III

17   Nicole Sergent

18   Office of Legal Services for Revenue

19   P.O. Box 423

20   Frankfort, Kentucky 40602

21   Telephone No.: (502) 564-9572

22   E-mail: Richard.bertelson@ky.gov

23      Nicole.sergent@ky.gov

24   (Appeared via videoconference)

25

Page 3

1                INDEX

2                        Page

3   PROCEEDINGS                     5

4   DIRECT EXAMINATION BY MR. FORD          6

5   CROSS EXAMINATION BY MR. BERTELSON         34

6   REDIRECT EXAMINATION BY MR. FORD        41

7

8

9              EXHIBITS

10   Exhibit                      Page

11   Exhibit 2 - Notice of Deposition of the Office of      9

12      Commissioner of the Kentucky Department

13      of Revenue

14   Exhibit 3 - Complaint for Declaratory and Injunctive   17

15      Relief

16   Exhibit 6 - Defendants' Responses to Plaintiff's      20

17      First Set of Interrogatories

18   Exhibit 11 - Fee Schedule Parcel Cost Analysis dated   15

19      November 19, 2018

20

21

22

23

24

25

Page 4

1          STIPULATIONS

2

3   The 30(b)(6) deposition of MICHAEL TACKETT was taken at

4   the office of Kentuckiana Court Reporters, located at

5   730 West Main Street, Suite 101, Louisville, Kentucky

6   40202, via videoconference in which all participants

7   attended remotely, on Thursday, the 11th day of March

8   2021, at 9:47 a.m.; said 30(b)(6) deposition was taken

9   pursuant to the Federal Rules of Civil Procedure.  The

10   oath in this matter was sworn remotely pursuant to FRCP

11   30.

12

13   It is agreed that Lindsey N. Johnson, being a Notary

14   Public and Court Reporter for the State of Kentucky, may

15   swear the witness and that the reading and signing of

16   the completed transcript by the witness is not waived.

17

18

19

20

21

22

23

24

25

Page 5

1          PROCEEDINGS

2

3      COURT REPORTER:  We are now on the record.

4   Will all parties present please state your

5   appearance, how you are attending, and the location

6   you are attending from?

7      MR. FORD:  This is Darren Ford.  I'm attending

8   from Fort Mitchell, Kentucky, via Zoom for

9   plaintiff, Zillow, Inc.

10      MR. BERTELSON:  And this is the Rick Bertelson.

11   I'm attending on behalf of all the defendants,

12   including the Department of Revenue.  We are all

13   currently -- the witnesses and I are currently at

14   the State Office Building in Frankfort, Kentucky --

15   501 High Street, Frankfort, Kentucky.

16      MS. SERGENT:  And this is Nicole Sergent.  I'm

17   attending also on behalf of defendants, and I am

18   appearing via Zoom from Lexington, Kentucky.

19      THE WITNESS:  And I'm Mike Tackett.  I'm in the

20   501 High Street State Office Building.

21      COURT REPORTER:  Thank you.  Mr. Tackett, will

22   you please hold your driver's license up to the

23   camera and wait until it is focused?

24      THE WITNESS:  Let me get it right side up.

25      COURT REPORTER:  Do all parties present agree

2 (Pages 2 - 5)

Page 6

1  that the witness is, in fact, Michael Tackett?
2      MR. FORD:  Yes.
3      MR. BERTELSON:  Yes.
4      COURT REPORTER:  Thank you.  Mr. Tackett, will
5  you please raise your right hand?  Do you swear or
6  affirm that the testimony you are about to give will
7  be the truth, the whole truth, and nothing but the
8  truth?
9      THE WITNESS:  I do.
10      COURT REPORTER:  Thank you.  Mr. Ford?
11          DIRECT EXAMINATION
12  BY MR. FORD:
13      Q.  Good morning, Mr. Tackett.  Thank you so much
14  for your patience this morning.  I know we've had some
15  delays here from a technical side.  I do appreciate you
16  bearing with us as we figured all that out.  But it does
17  seem like we're doing good so far.  My name is Darren
18  Ford.  I'm an attorney for Zillow, Inc. in a lawsuit
19  filed by it against various defendants including the
20  Commissioner of Department of Revenue in the Eastern
21  District of Kentucky.  If you could please go ahead and
22  introduce yourself?
23      A.  I'm Mike Tackett.  I am the director over the
24  mineral taxation and GIS service division.
25      Q.  Thank you, Mr. Tackett.  And what is your

Page 7

1  business address?
2      A.  It's 501 High Street, Frankfort, Kentucky.
3      Q.  Mr. Tackett, have you been deposed before?
4      A.  I have not.
5      Q.  Okay.  So just a few basic ground rules.  You
6  understand that you are here to give answers to
7  questions that I ask under oath; correct?
8      A.  Yes.
9      Q.  And you understand the nature and consequences
10  of that oath?
11      A.  Yes.  I do.
12      Q.  Okay.  So the way this will work is I will ask
13  some questions, you will give answers to those
14  questions.  It's important for Ms. Johnson's benefit
15  that we try not to speak over one another and that we
16  give clear, audible answers to my questions.  That way,
17  she can make a clear record.  What I mean by that is
18  things like head nods, and "uh-huhs," and that sort of
19  thing which, you know, we would use in normal
20  conversation make it more difficult for her to
21  transcribe your answers to my questions.  So try to make
22  sure that you give audible answers to my questions
23  today, okay, Mr. Tackett?
24      A.  Yes, sir.
25      Q.  Another thing that's important to make sure

Page 8

1  that we have a clear record this morning is if you have
2  any confusion during the course of the deposition about
3  what I'm asking, if I use a term or something about my
4  question doesn't make sense, please ask for
5  clarification.  I don't want you to answer any questions
6  that you don't understand.  Sometimes you get into some
7  PVA terminology and things like that, so if there's
8  anything like that, that comes up, please don't hesitate
9  to ask me for clarification, okay?
10      A.  Okay.
11      Q.  But if you go ahead and answer, I'm going to
12  assume that you did understand the question, okay?
13      A.  Okay.
14      Q.  Another thing is that you're not a hostage
15  today, so if you want to take a break at any point in
16  time, you're free to do so.  My only request is that if
17  there's a question pending that we go ahead and answer
18  that question first, but as soon as that's done, you are
19  free to take a break.  As I said, any time you need
20  that, just let me know, okay?
21      A.  Okay.
22      Q.  Another thing you may see here during the
23  course of the deposition is Mr. Bertelson, your attorney
24  here, he may interject objections to my question, and
25  that's one of the reasons it's important to give a

Page 9

1  little bit of a pause, a little break in-between my
2  question and the answer.  But if he objects, just wait
3  until he's finished making his objection, and unless he
4  instructs you not to answer the question -- which I
5  don't think has happened thus far, so unlikely to happen
6  -- but unless he instructs you not to answer the
7  question, once he's done making his objection, you are
8  free to go ahead answer, okay?
9      A.  Okay.
10      Q.  And, Mr. Tackett, are you any medications
11  today that might affect your ability to testify
12  truthfully?
13      A.  No, sir.
14      Q.  Any medications that might affect your ability
15  to recall events or information?
16      A.  No.
17      Q.  All right.  If you could, I don't -- hopefully
18  you've got some paper exhibits there with you,
19  Mr. Tackett?
20      A.  I do.
21      Q.  If you could pull the document that's the
22  marked as Exhibit 2.  The exhibit stickers are down
23  there in the bottom right-hand corner.
24          (EXHIBIT 2 MARKED FOR IDENTIFICATION)
25      A.  Okay.  I've got it.  Yeah, I've got it.

3 (Pages 6 - 9)

Page 10

1    Q.   You have it in front of you?
2    A.   Yes.
3    Q.   Okay.  So this document has the title, "Notice
4  of Deposition of the Office of Commissioner of the
5  Kentucky Department of Revenue."  Do you see that at the
6  top?
7    A.   Yes.
8    Q.   And, Mr. Tackett, do you understand that you
9  are here today to testify as a representative of the
10  commissioner of the
11  Kentucky Department of Revenue?
12    A.   Yes.
13    Q.   Okay.  And you said your -- your title earlier
14  in the deposition.  Just for my benefit, if you could
15  give me your full title again in terms of what your
16  position is with the
17  Department of Revenue?
18    A.   I am the director of mineral taxation and GIS
19  services.
20    Q.   Director of mineral taxation and GIS services?
21    A.   Yes.
22    Q.   All right.  And in terms of -- if you could
23  turn to the next page of Exhibit 2, you see where it
24  says the numbered list of topics 1 through 6?  Do you
25  see that?

Page 11

1    A.   Yes.  I do.
2    Q.   And I understand you're here to testify on
3  some of these topics, and I just -- so I don't waste
4  your time asking you questions that you have not
5  prepared to answer today, I just wanted to go through
6  these here quickly and make sure that I get the right
7  ones that you feel like you are able to testify to,
8  okay?
9    A.   Okay.
10    Q.   So the first question relates to the "scope of
11  the commissioner's authority to supervisor property
12  valuation administrators."  Is that a topic on which you
13  are prepared to testify today?
14    A.   Yes.
15    Q.   Okay.  And one other thing too: Just as I go
16  through these, I will use the acronym PVA throughout
17  this deposition.
18         You understand that that's a common acronym
19  that you use for property valuation administrators?
20    A.   I'm sorry?
21    Q.   I said, I'll be using the acronym PVA
22  throughout this deposition.  When I use that term, I'll
23  be using that to mean property valuation administrator,
24  okay?
25    A.   Okay.

Page 12

1    Q.   Another acronym I'll use --
2         MR. BERTELSON:  Not to -- I'm trying not to
3  interrupt you.  I don't want to get folks confused
4  here.  I think Mr. Tackett wanted to revise his
5  response to your first question there.
6  BY MR. FORD:
7    Q.   Oh, to whether you were prepared to testify on
8  this topic?
9    A.   Yes.
10    Q.   Oh, okay.  Is this one of the topics that
11  you're prepared to testify on today?
12    A.   No.
13    Q.   Okay.  That's -- I was actually surprised by
14  that answer, based on -- based on -- based on what
15  Mr. Bertelson told me earlier.  But anyway, we'll -- so
16  okay, not Topic number 1.  Going back to my acronym --
17  more important question -- so PVA will mean property
18  valuation administrators.  I may also use DOR, which
19  means Department of Revenue, okay?
20    A.   Okay.
21    Q.   All right.  So 1 is not a topic that you are -
22  - that you prepared to testify on today.  How about
23  topic 2, policies or guidance that the commissioner has
24  adopted or disseminated to assist PVAs?  Is that a topic
25  on which you're -- on which you prepared to testify

Page 13

1  today?
2    A.   No.
3    Q.   Okay.  Next one --
4         MR. BERTELSON:  And, Darren, also not to -- not
5  to interrupt your flow also, but there is a portion
6  of question or topic number 1 that Mike should be
7  able to testify about since he is, you know, the
8  director of the unmined minerals and GIS services.
9         MR. FORD:  Oh, yes.  Okay.
10         THE WITNESS:  And that's the reason I said
11  that.  That's what I thought.
12  BY MR. FORD:
13    Q.   Okay.  No.  That's fair.  That's a fair
14  clarification.  I mean, this is -- I'm not trying to
15  trick you here.  I just don't want to waste your time,
16  so I'm just trying to make sure, but yeah.  So it does
17  ask for the job responsibilities of what you do.  I
18  would have asked you that anyway, but I understand, at
19  least as to that portion, you do have information that
20  you can provide today, correct?
21    A.   Yes.
22    Q.   Okay.  Number 3 has to do the Department of
23  Revenue's answer to some interrogatories in this one,
24  and specifically number 8.  Did you review Interrogatory
25  number 8?  Is that a topic in which you are prepared to

Veritext Legal Solutions

Page 14

1 testify today, Mr. Tackett?
2    A.  Yes.
3    Q.  Okay.  Same thing with respect to number 9.
4       Interrogatory number 9 has to do with costs
5 associated with the creation, purchase, and other
6 acquisition of data.  Is that a topic on which you
7 prepared to testify today, Mr. Tackett?
8    A.  Yes.
9    Q.  Okay.  And then number 10 has to do with the
10 governmental interest advanced by the commercial purpose
11 fee statutes.  Is that a topic that you've prepared to
12 testify today, Mr. Tackett?
13    A.  No.
14    Q.  Okay.  And the last one has to do with
15 affirmative defenses asserted by the commissioner of the
16 Department of Revenue.  Is that a topic on which you
17 prepared to testify today, Mr. Tackett?
18    A.  No.
19    Q.  Okay.  So really, we're talking about a
20 portion of topic 1, and topics 3 and 4 are the topics on
21 which I'm going to ask you about, okay, Mr. Tackett?
22    A.  Okay.
23    Q.  Can you just generally give me an overview of
24 what you did to prepare for your deposition today to
25 testify on, really, topics 3 and 4?

Page 15

1    A.  I reviewed over the documents that were
2 exhibits. One was 11.  That was the main one I looked
3 over.
4    Q.  Okay.  So you looked at exhibits that were
5 sent to your counsel, and exhibit that was marked as
6 Exhibit 11; is that -- is that accurate?
7    A.  Yes.
8    Q.  Okay.  Anything else?  Did you talk to any
9 PVAs or anything like that in preparation for your
10 deposition today?
11    A.  I did not.
12    Q.  Any other employees at the Department of
13 Revenue? And I don't want any attorneys like
14 Mr. Bertelson, but have you spoken to any other
15 employees at the Department of Revenue about your
16 testimony today on these topics?
17    A.  I have not.
18    Q.  Okay.  All right.  Mr. Tackett, how long have
19 you been with the Department of Revenue?
20    A.  For about 24 years.
21    Q.  And how long specifically have you been in the
22 position of director of mineral taxation and GIS?
23    A.  Seven months.
24    Q.  And where were you prior to -- what position
25 did you have prior to that?

Page 16

1    A.  I was the GIS branch manager, which is inside
2 of this division.
3    Q.  Okay.  So essentially, it was a step up.  You
4 were underneath the director, and now you are the
5 director.  Is that fair to say?
6    A.  Correct.
7    Q.  Okay.  What are the general responsibilities
8 of the director of mineral taxation and GIS services?
9    A.  I oversee the -- the administrating of
10 severance taxes and unmined mineral property tax, and I
11 also help the PVAs with
12 GIS, whether it's creating the parcels, selling their
13 data.
14    Q.  So let's focus then on the second part of
15 that, because I don't think PVAs probably have much to
16 do with mineral taxation other than possibly dealing
17 with land that may have minerals on it, being within its
18 jurisdiction.  Is that fair to say?
19    A.  Correct.
20    Q.  Okay.  So as to the GIS portion of this, I
21 think you said you helped them with GIS and then also in
22 selling their records; is that accurate?
23    A.  The GIS part of it, yes.
24    Q.  Okay.  And GIS is an acronym.  What does that
25 stand for?

Page 17

1    A.  Geographical information system.
2    Q.  All right.  And in terms of how you help them
3 with that, just generally, what -- what is that you do?
4    A.  We do technical support.  Anytime they have a
5 problem editing their GIS parcel data, we will remote
6 into their system and we will help them resolve the
7 issues.
8    Q.  All right.  And, Mr. Tackett, if you could
9 pull out for me Exhibit 3 --
10    A.  Okay.
11    Q.  -- which is a copy of the complaint in this
12 action.  Yep.  That's the right one.  And you see it has
13 a case caption.  On the first page, Zillow, Inc., versus
14 various defendants including former commissioner of the
15 Kentucky Department of Revenue, Daniel Bork.  And turn
16 to the third page of this document, and it says,
17 "Complaint for declaratory injunctive relief."  Do you
18 see that?
19       (EXHIBIT 3 MARKED FOR IDENTIFICATION)
20    A.  I'm on page 3.
21    Q.  And you see it's there at the top.  It says,
22 "Complaint for Declaratory and Injunctive Relief"?
23    A.  I'm sorry, what was that again?
24    Q.  The title of the document is, "Complaint For
25 Declaratory and Injunctive Relief."  Do you see that?

5 (Pages 14 - 17)

Page 18

1    A.  I see it, yes.
2    Q.  Okay.  Have you had a chance to the review
3 this complaint at any point in the past?
4    A.  Yes.
5    Q.  Okay.  And did you prepare -- did you review
6 this in connection with your deposition today, or was
7 this just something that you looked at some time
8 previously, sometime after it was filed?
9    A.  I reviewed it for today.
10   Q.  Okay.  If you could turn with me -- if you
11 note, Mr. Tackett, up in the top right-hand corner,
12 there's some numbers that say, "page ID."  Do you see
13 that?
14   A.  I do.
15   Q.  All right.  If you could turn with me to page
16 ID -- let's just say page ID 42.
17   A.  Okay.  I am there.
18   Q.  All right.  And that is a document that has
19 Zillow Group letterhead at the top, and a date of
20 April 25, 2019, addressed to Brad McDowell, PVA for
21 Shelby County.  Do you see that?
22   A.  I do.
23   Q.  Okay.  And then in the middle of that
24 document, there's a list of categories of information.
25 Do you see that?

Page 19

1    A.  I do, yes.
2    Q.  Is any of that information what -- something
3 that you would consider to be GIS information?
4    A.  I would consider this to be the tax roll.  And
5 we actually attach the tax roll to the GIS data on
6 certain sales, so this would not be GIS data.
7    Q.  Okay.  And so this is not -- so this type of
8 data you would consider to be -- I've heard the term
9 "tax roll file database" used.  Would you use the
10 similar terminology?
11   A.  That would be correct.
12   Q.  Okay.  And so the tax roll file database, in
13 your understanding of the scope of your
14 responsibilities, is something different than the GIS
15 data, correct?
16   A.  Correct.
17   Q.  Okay.  Do you have any role vis-a-vis helping
18 PVAs or supervising PVAs with respect to their creation
19 of or sale of property tax roll file information?
20   A.  I have done it once or twice in the past, but
21 I do not normally do that.
22   Q.  Okay.  And so the data that the PVAs collect
23 that would be considered part of the tax roll file
24 database, that's not something that's within the scope
25 of your responsibilities as director of mineral taxation

Page 20

1 and GIS services; correct?
2    A.  Correct.
3    Q.  Okay.  All right.  If you could pull out for
4 me, Mr. Tackett, Exhibit 6.  Yeah, that's the correct
5 one.  Okay.  And that -- this document has a heading at
6 the top there under the caption that says, "Defendant's
7 Responses to Plaintiff's First Set of Interrogatories."
8 Do you see that?
9       (EXHIBIT 6 MARKED FOR IDENTIFICATION)
10   A.  I do.
11   Q.  All right.  And did you review this document
12 in preparation for your deposition this morning on
13 behalf of --
14   A.  Yes.
15   Q.  -- the commissioner?  Yes?  Did you have any
16 involvement in providing information to the commissioner
17 of Department of Revenue for purposes of answering this
18 -- these; do you know?
19   A.  Can you restate the question?  I'm sorry.
20   Q.  Yes.  Were you involved in any way in
21 providing information that was used in answering the
22 interrogatories to Mr. Miller, commissioner of
23 Department of Revenue?
24   A.  No.
25   Q.  Okay.  Before I turn to this topic, I just

Page 21

1 want to make sure I flushed out your responsibilities as
2 to your current position is director of mineral taxation
3 and GIS services: Do you have any sort of supervisory
4 oversight in your personal capacity with respect to the
5 operations of the PVAs beyond assisting them with the
6 sale of their GIS data?
7    A.  I do not.
8    Q.  All right.  If you could turn with me in
9 Exhibit 6 to page 29 of that document.
10   A.  Okay.
11   Q.  And you see there, there's an Interrogatory
12 number 8.
13      It says, "State whether your office has ever
14 conducted an analysis or study to determine what the
15 cost to a PVA is of media and mechanical processing and
16 staff required to produce electronic copies of the PVA
17 records requested by the Zillow request."  Do you see
18 that?
19   A.  I do.
20   Q.  Okay.  And we looked at the scope of the
21 information that Zillow had requested, and you would
22 agree with me that that information constitutes the
23 property tax roll file database and that it does not
24 encompass GIS data; correct?
25   A.  Correct.

6 (Pages 18 - 21)

Page 22

1  Q.  Okay.  The answer given to this question is,
2  "No analysis or study was undertaken with regard to
3  Zillow's specific open records request of
4  April 25, 2019."  Then it goes on to say, "However, in
5  the past, the department has worked with the Kentucky
6  PVA Association to identify the specific costs for the
7  media, mechanical processing, and staff required to
8  produce electronic copies of the records that would have
9  been responsive to Zillow's April 25, 2019, request."
10 Do you see that answer?
11     A.  I do.
12     Q.  Okay.  And this is one of the topics on which
13 you prepared to testify this morning, correct --
14     A.  Yes.
15     Q.  -- this answer to Interrogatory number 8,
16 right?
17     A.  Yes.
18     Q.  What information did you review in connection
19 for your deposition this morning that related to the
20 Department of
21 Revenue's working with the Kentucky PVA Association to
22 identify the specific costs for media, mechanical
23 processing, and staff acquired?  You mentioned Exhibit
24 11.  Is that the only document that you reviewed?
25     A.  Yes.

Page 23

1     Q.  Okay.
2     A.  Other than -- yes.
3     Q.  All right.  Let's pull that out, if you would.
4        MR. FORD:  We'll mark that as Exhibit 11.
5          (EXHIBIT 11 MARKED FOR IDENTIFICATION)
6     Q.  Let me know when you have that in front of
7  you, Mr. Tackett.
8     A.  Yeah.  I've got it.
9     Q.  And this is a document that has a Bates
10 number, and that's the little number we -- down at the
11 bottom hand -- right-hand corner there that has a prefix
12 of DEF, several leading zeros, and 57.  Do you see that?
13     A.  I do.
14     Q.  Okay.  And this document has the title, "Fee
15 Schedule Parcel Cost Analysis," dated November 19, 2018.
16 Do you see that?
17     A.  I do.
18     Q.  Okay.  And this document then sort of has a
19 list of the dollar amounts that range from annual
20 average salary including benefits of one employee all
21 the way down to the - - the last category there is "Tax
22 Roll Software," says a million bucks, right; you see
23 that?
24     A.  Yes.
25     Q.  Okay.  And so this essentially -- well, let me

Page 24

1  ask you this: Is this a document that you personally
2  were involved in preparing on or sometime before
3  November 19, 2018?
4     A.  Yes.
5     Q.  Okay.  And were you involved in this analysis
6  with respect to each category or just the categories
7  relating to GIS?
8     A.  The only thing I did was gather the
9  information under the area where it says, "Annual
10 Statewide Cost For Parcel."
11     Q.  Okay.  So was that though -- I mean, did you
12 gather information for all the categories or just the
13 categories that specifically make reference to GIS, like
14 the GIS training categories?
15     A.  No.  I did the computers down to tax roll.
16     Q.  Okay.  And just so I make sure I understand
17 this document: The annual statewide cost per parcel --
18 for instance, for computers -- I assume that that's not
19 just computers that are utilized for GIS data, that's
20 computers utilized by PVAs for any sort of purpose,
21 correct?
22     A.  Actually, that is every PVA computer that has
23 ARC GIS on it.  We have to keep a list of computers that
24 the state has because of an ELA we have with ESRI.  And
25 ELA is the enterprise licensing agreement.

Page 25

1     Q.  Okay.  So then is it fair to say that if
2  there's a computer that didn't have GIS-related software
3  on it or wasn't used for that sort of work, that that
4  wouldn't have been included in this?
5     A.  Correct.  It would not have been included.
6     Q.  All right.  So if a PVA was using a desktop
7  computer -- well, strike that.
8        Do you know if PVAs have computers, laptops,
9  or desktops that they use that are not used in
10 connection with any sort of GIS-related activities?
11     A.  I'm not sure about that.  Most of the
12 computers in the PVA office have GIS in them.  Pretty
13 much the only one that would not would probably be the
14 server.
15     Q.  Okay.  So in terms of the scope of this
16 document: It is GIS-focused, not
17 property-tax-roll-database-focused, but there may be
18 overlap just because PVAs do both.  Is that fair to say?
19     A.  There would be data on all of it because the
20 computers are used out in the field like tablets,
21 laptops, and then they're used in the office to enter
22 the data.  So all of the computers would be probably
23 used in collecting the GIS data and the tax roll as
24 well.
25     Q.  Okay.  That's an assumption on your part

7 (Pages 22 - 25)

Page 26

1 though. You didn't -- you were focused solely on
2 GIS-related equipment, though, correct?
3    A.   Yes.
4    Q.   Okay.  And is that the same case for all of
5 the amounts under annual statewide costs?  In other
6 words, you were focused on costs to create GIS data, not
7 if it didn't include GIS also including property tax
8 roll database equipment or cost as well, correct?
9    A.   Well, actually, the tax roll software, that is
10 a million dollars.  That is just for their tax roll
11 software.
12    Q.   Okay.
13    A.   And the aerial photography, we are using
14 obliques and orthos.  What obliques are is so the PVAs
15 can gather information on the structure from their
16 office desk.  Because of the pandemic, we have actually
17 increased that capacity, so we can actually do more
18 assessing from the office.
19    Q.   Okay.
20    A.   So orthos would be included in the gathering
21 the tax roll information as well.
22    Q.   Okay.  So the tax roll software that it is
23 included here for a million bucks annual statewide cost,
24 does that tax roll software though have a use for the
25 GIS tax roll as well, or is it solely tax roll

Page 27

1 information?
2    A.   It's solely tax roll.
3    Q.   Okay.  So there's no GIS utility to that
4 particular category, right?
5    A.   No.
6    Q.   Okay.  So in terms of what -- at the bottom of
7 this document, it has a parcel cost per parcel.  Do you
8 see that?
9    A.   I do.
10    Q.   And then total annual cost per parcel.  Do you
11 see that?
12    A.   Yes.  I do.
13    Q.   And so that is -- that $7.57, do you consider
14 that to be the total annual cost per parcel for
15 collecting all information that PVAs collect and input,
16 GIS, and tax roll database, or is that number inclusive
17 of some of that, but is 100 percent GIS, and maybe some
18 portion of tax roll database, but not necessarily all?
19    A.   That's a formula that was -- there was a
20 formula used that I'm not aware of.  It was a formula I
21 think that the IAAO may have given someone, but I'm not
22 aware of that number.
23    Q.   Okay.
24    A.   I was just asked to gather the numbers for the
25 annual statewide cost per parcel.

Page 28

1    Q.   Okay.  But that cost per parcel, that is an
2 overall cost per parcel for the PVAs operating cost.
3 It's not just a GIS cost per parcel.  Is that fair to
4 say?
5    A.   Can you ask me that again?
6    Q.   Yeah.  So I'm trying -- I'm trying to
7 understand what -- in your view -- and actually, let me
8 back up here, because you might not know: So your
9 involvement in this document was collecting the costs
10 for the annual statewide cost per parcel, right?
11    A.   Yes.
12    Q.   And you did not have any involvement in the
13 personnel cost per parcel or the mileage cost, correct?
14    A.   Correct.
15    Q.   And so in terms of what personnel costs and
16 how they sort of figured that, you don't have any
17 information about that, correct?
18    A.   I do not.
19    Q.   Okay.  So it's just the annual statewide cost
20 per parcel.  So in terms of the total annual cost per
21 parcel, can you tell me if that number includes all
22 activities of the PVA office, or you don't know?
23    A.   I don't know.
24    Q.   Okay.  And certainly, if I ask you whether or
25 not -- or what percentage of the $7.57 here was cost per

Page 29

1 parcel with respect to tax roll -- property tax roll
2 database information, you wouldn't be able to give me
3 that number; is that correct?
4    A.   I would not.
5    Q.   Turn back with me for a moment to Exhibit 3
6 again, Mr. Tackett, and if you could turn to the
7 document that has page ID 34.
8    A.   Okay.
9    Q.   And this document has, at the top there, the
10 PVA open records commercial fee guidelines.  Do you see
11 that?
12    A.   I do.
13    Q.   And the left-hand side has some numbers, and
14 the second row there is 08/12.  Do you see that?
15    A.   I do.
16    Q.   You understand that to be a version date for
17 this, for these fee guidelines of August of 2012?
18    A.   I do.
19    Q.   And do you understand that this is the current
20 version in use by PVAs as prescribed by the Department
21 of Revenue?
22    A.   Yes.
23    Q.   Okay.  Do you know how the information in
24 Exhibit 11 is or was used in connection with the
25 commercial fee guidelines?

Page 30

1    A.  I do not.
2    Q.  Okay.  And it's fair to say that these were
3 created in August of 2012, and this analysis was in
4 2018, that the 2018 analysis really couldn't have been
5 used to create the fee guidelines.  Is that fair to say?
6    A.  Yes.
7    Q.  Okay.  And so do you know what the purpose of
8 the cost analysis was for?  What was the reason that was
9 undertaken?
10    A.  I was asked to gather it.  I didn't ask what
11 the purpose was.
12    Q.  Okay.  So you don't know whether or not this
13 analysis was for the purpose of determining what the
14 cost to a PVA is of media, mechanical processing, and
15 staff required to produce a property tax roll database;
16 is that correct?
17    A.  Yes.
18    Q.  You don't know, correct?
19    A.  Correct, yes.
20    Q.  All right.  And with respect to the open
21 records commercial fee guidelines, based on your tenure
22 with the -- have you been the Department of Revenue the
23 entire 24 years, or have you been with other
24 departments?
25    A.  No.  I've been with -- I guess I've been with

Page 31

1 Revenue for probably 22, 23.
2    Q.  Okay.  But you were the revenue in 2012,
3 correct?
4    A.  Yes.  I was, yes.
5    Q.  Okay.  Did you have any involvement in putting
6 together the open records commercial fee guidelines?
7 Were you involved in that process?
8    A.  No.  I did not.
9    Q.  All right.  Going back to Exhibit 6, and
10 looking at Interrogatory 9 on page 29, it asks, "State
11 whether your office ever conducted an analysis or study
12 to determine what the cost to a PVA is of the creation,
13 purchase, or other acquisition of the PVA records
14 requested by the Zillow request," and then there's an
15 answer below that.  Do you see that?
16    A.  I'm sorry, can you say that again?
17    Q.  Sure.  Do you see the Interrogatory 9 on page
18 29?
19    A.  Yes.  I do.
20    Q.  It begins, "State whether," and ends with,
21 "Zillow request."  Do you see that question?
22    A.  I do.
23    Q.  All right.  And then you see the response
24 below?
25    A.  Yes.

Page 32

1    Q.  Yeah.  And is it fair to say that in terms of
2 whether or not the commissioner of Department of Revenue
3 has ever conducted a part -- or an analysis of the cost
4 to a PVA for the creation, purchase, or other
5 acquisition of the PVA records requested by the Zillow
6 request, you don't know the answer to that question?  Is
7 that fair to say?
8    A.  Yes.
9    Q.  And other than the study that we looked at in
10 Exhibit 11 that says, "fee schedule parcel cost
11 analysis," is there any other study that you're aware of
12 that's been conducted in the last ten years or 12 years
13 designed to analyze what the creation, purchase, or
14 other acquisition of the PVA records requested by the
15 Zillow request would be?
16    A.  No.
17       MR. FORD:  Okay.  All right.  Mr. Tackett, why
18 don't you give me five minutes here.  I'm just going
19 to organize my thoughts here, and I may be completed
20 with you and move on to Mr. Crawford, okay?
21       MR. BERTELSON:  Okay.
22       COURT REPORTER:  Off the record.
23        (OFF THE RECORD)
24       COURT REPORTER:  Back on the record.
25 BY MR. FORD:

Page 33

1    Q.  All right.  Mr. Tackett, we're back on the
2 record after a short break.  You understand you're still
3 under oath?
4    A.  Yes, sir.
5    Q.  I just have a couple -- couple more questions
6 for you, and then I think we'll wrap up with you.  In
7 your capacity as director of mineral taxation and GIS
8 services, are there any occasions in which you give a
9 directive to a PVA with respect to how to perform their
10 duties with respect to GIS information?
11    A.  Can you repeat the question again?
12    Q.  Sure.  You understand that the DOR has
13 supervisory authority over PVAs in the state of
14 Kentucky, correct?
15    A.  Yes.
16    Q.  And do you -- in your capacity as director of
17 mineral taxation and GIS services, do you ever have
18 occasion to issue a directive to a PVA to perform some
19 task with respect to GIS services that you want them to
20 perform?
21    A.  I do training sessions.  I don't really, like,
22 demand anything of the PVAs.  I do help.  They call me,
23 and I help them in that way.
24    Q.  Okay.
25    A.  And I do training.

9 (Pages 30 - 33)

Page 34

1    Q.  So there's not any sort of hierarchical
2  structure that you would identify in which you are sort
3  of instructing PVAs how to the deal with the GIS
4  information or anything like that?
5    A.  Like I said, I will help them prepare any
6  sales.  I will help them if they are having any problems
7  with GIS data, but I -- it's a delicate situation.  I
8  have to the work with the PVAs, and I have to stay on
9  their good side and help them in whatever capacity that
10  I can.
11    Q.  Okay.  All right.  Mr. Tackett, I also give
12  the witness an opportunity to correct or amend any
13  testimony that they provided during the course of the
14  deposition.  I know that you've done that already with
15  respect to the scope of the topics in which you're
16  testifying.  Is there anything that you would like to
17  amend or correct in your testimony this morning?
18    A.  No.
19      MR. FORD:  Okay.  All right.  I will pass you
20  to Mr. Bertelson, if he has any questions, subject
21  to re-cross if necessary.
22          CROSS EXAMINATION
23  BY MR. BERTELSON:
24    Q.  Yeah.  Thanks, Mike, for being here this
25  morning.  We appreciate your time.  We know you're a

Page 35

1  busy guy and you have 120 clients that you have that you
2  help on a daily basis.  So I have a couple of clarifying
3  questions here.  Mike, we spoke off the record.  You, in
4  fact, did help provide information for the interrogatory
5  responses; is that correct?
6    A.  Yes.
7    Q.  Okay.  So I think you just misunderstood
8  Mr. Ford's question a little bit?
9    A.  Yes.  I did.  I thought you were talking about
10  helping prepare parcel sales for this.
11    Q.  Right.  But you did -- you and I did discuss,
12  and you helped me respond to the interrogatory requests
13  to Commissioner Miller; is that correct?
14    A.  Yes.
15    Q.  All right.  And at one point in Mr. Ford's
16  questions, he -- you and he were having a discussion
17  about the -- the use of computers by PVAs in the field
18  and in their offices.  Do you recall that line of
19  questioning?
20    A.  I do.
21    Q.  Okay.  And at one point, Mr. Ford said it was
22  an assumption on your part -- "you" being Mike Tackett -
23  - that the PVAs used their computers that they use in
24  the field for GIS purposes also for tax roll preparation
25  purposes in the office, or -- can you clarify what your

Page 36

1  response is on that?
2    A.  The 965 machines that are mentioned in here,
3  they're all used for tax roll and data collection, which
4  would be the GIS, GPS, so all of them kind of have a
5  multi-purpose use, so --
6    Q.  And do you have any personal knowledge of how
7  they use their computers in the field and in the office?
8    A.  Yes.
9    Q.  Okay.  Can you pull out Exhibit Number 11
10  again, please?
11    A.  Okay.
12    Q.  What's -- let's just do some quick math.  Do
13  you have your phone with you for -- for calculator
14  purposes?
15    A.  It's over there (indicating).  All right.
16    Q.  Everybody's got a calculator on their phone.
17  I assume your phone has a calculator; is that correct?
18    A.  Yes.
19    Q.  All right.  I'm going to get my calculator out
20  as well.  So those numbers on Exhibit number 11, when
21  you look at it, the numbers up at the top, the $5.25 and
22  the $7 -- or the 75-cent number up there for personnel
23  cost and for mileage cost, those then become part of the
24  -- do those then become part of the $7.57 figure down at
25  the bottom?

Page 37

1    A.  Yes.
2    Q.  And then so the $7.57 number you mentioned,
3  the personnel cost, the mileage cost, and then this
4  parcel cost per parcel, the $1.57; is that right?
5    A.  Yes.
6    Q.  All right.  And the $1.57 comes from dividing
7  the total state cost by the total state parcels cost; is
8  that correct?
9    A.  Yes.
10    Q.  So if we were to isolate off the costs that
11  were related to the tax roll in these numbers, what --
12  what -- what numbers would go into creating the tax roll
13  part of that, and isolated apart what would just be
14  considered GIS?
15      MR. FORD:  Objection.  Lack of foundation.
16  Go ahead.
17      MR. BERTELSON:  Go ahead.
18    A.  Oh, can you repeat the question again?  Sorry.
19    Q.  Of these numbers here the under the annual
20  statewide cost per parcel, the numbers that go with the
21  computers, $201,200, you know, equipment, printers, of
22  these numbers, which of these are strictly, if we're
23  going to isolate them off, related to GIS?
24    A.  All of them.
25    Q.  Okay.  What about the tax roll software?

10 (Pages 34 - 37)

Page 38

1    A.  Well, the tax roll software, you have to have
2  a link between the GIS and the tax roll software.
3    Q.  Okay.  So if we were just going to say the
4  only cost that are specific to the tax roll -- the tax
5  roll data is the tax software, then could you take that
6  million dollars and divide it by the total state parcels
7  and come up with a number that would then be added to
8  the personnel cost and mileage cost that would be a
9  little bit different number down there at the bottom?
10   A.  Yes.
11      MR. FORD:  Objection.  Lack of foundation.
12      Go ahead.
13   Q.  Can you do that for us, please?
14   A.  You want me to do the math?
15   Q.  Please.
16   A.  Okay.
17   Q.  And just talk it out what you are doing while
18 you are doing it.
19   A.  So you want me to do my part down here, not
20 the --
21   Q.  Yes.
22   A.  Okay.  All right.  So it would be $201,200.
23 200 --
24   Q.  201?
25   A.  $201,200 for the computers.

Page 39

1    Q.  What about the tax roll software?
2    A.  The tax roll software would be $1 million.
3    Q.  Okay.  So would it be both the computers and
4  the tax roll software related to doing just the tax
5  roll?
6    A.  Yes.
7       MR. FORD:  Objection.
8       Go ahead, sorry.
9    Q.  So you had that $201,200, the million dollars
10 for the tax roll software, what number do you get?
11   A.  200 -- $1.2 million.
12   Q.  Okay.  And then if you divide that number by
13 the total state parcels, what number do you get?
14   A.  I'm sorry, I'm fat fingering some stuff here.
15 Okay.  I get 53 -- 64.
16   Q.  Okay.  I get the same, but that was from
17 dividing $1,201,200 by $2,232,531 total state parcels,
18 correct?
19   A.  Yes.
20   Q.  Okay.  So I also got 0.53804404.  Is that what
21 you got?
22   A.  Yes.
23   Q.  Okay.  So roughly 54 cents; is that correct?
24   A.  Yes.
25   Q.  So if you added 54 cents -- you can do this

Page 40

1  math now -- if you add 54 cents to the 75 cents per
2  mile, plus the personnel cost per parcel, $5.25, what
3  number do you get?
4    A.  I get $7.07 or -- $7.08, rounding up.
5    Q.  What's -- well, let's do it again.  $5.25
6  cents --
7    A.  All right.  $5.25.
8    Q.  -- plus 75 cents --
9    A.  75.
10   Q.  -- plus the 54 cents that we calculated --
11   A.  Okay.
12   Q.  -- is...?
13   A.  6.54.
14   Q.  Okay.  $6.54?
15   A.  Yes.  I'm sorry, I had the 54 cents on there
16 from the previous thing with my calculator.
17   Q.  So if we were -- if we were redoing this
18 analysis and we were looking solely at the computer
19 costs and the tax roll software cost for doing the tax
20 roll, plus the personnel cost and the mileage cost, that
21 number would be $6.54 at the bottom?
22      MR. FORD:  Objection.  Lack of foundation.
23   A.  Correct.
24   Q.  Go ahead.
25   A.  Correct.

Page 41

1       MR. BERTELSON:  All right.  Then that is all
2  the questions I have for you.
3       THE WITNESS:  Okay.
4       MR. FORD:  Mr. Tackett, I'm going to have some
5  follow-up questions to Mr. Bertelson's questions on
6  Exhibit 11.
7          REDIRECT EXAMINATION
8  BY MR. FORD:
9    Q.  So first thing I'm very confused about is
10 Mr. Bertelson, as you understood, was asking you about
11 the cost for just preparing tax roll database
12 information.
13      Was that your understanding of his questions?
14   A.  Can you repeat that again?
15   Q.  You're understanding the questions that you
16 were asked of Mr. Bertelson is he was trying to isolate
17 the costs of preparing tax roll database information
18 exclusive of GIS.  Do you understand his questions to be
19 directed at that subject?
20   A.  Yes.
21   Q.  Okay.  And I believe that you included in your
22 calculations the computers that are listed under the
23 annual statewide cost for parcel in Exhibit 11.  Do you
24 see -- do you recall doing that?
25   A.  Yes.  200 --

11 (Pages 38 - 41)

Page 42

1    Q.   Those compu -- right -- those computers are
2  not used just for tax roll database information,
3  correct?
4    A.   That -- they are used for GIS and the tax
5  roll.
6    Q.   So they're not specific to tax roll database
7  information, correct?
8    A.   They're not spe -- I mean, okay.  Ask me that
9  again.
10    Q.   They're not just used for collecting tax roll
11  database information, correct?
12    A.   I would say their direct use is -- the GIS is
13  actually the directive of what the PVAs do.  Their main
14  purpose is collecting the tax roll data.
15    Q.   I understand, but you would consider GIS data
16  to be separate from tax roll database data, correct?
17    A.   Well, it is -- it's separate, but they work
18  together.
19        We have to have the mapping to go along with
20  it.
21    Q.   I understand, but in terms of the computers I
22  identified here of 201,200, those computers are used for
23  GIS data and tax roll database information; correct?
24    A.   Yes.
25    Q.   Okay.  And so do you know what percentage of

Page 43

1  the $201,200 should be allocated to use for GIS data
2  versus use for tax roll property database information?
3    A.   Well, the tax roll is going to be on all 965,
4  and GIS will also be on 965.
5    Q.   Okay.  But they use the computers for GIS data
6  and for general tax roll database information
7  collection, correct?
8    A.   Yes.
9    Q.   What percentage of the computer use is for GIS
10  data versus tax roll database information?
11    A.   Both of them are -- they're going to be used.
12  Every machine is used for both purposes.
13    Q.   I understand, but can you break down the
14  percentages in which those computers are used?
15    A.   I cannot.
16    Q.   Okay.  So why would -- that number then of
17  201,200, why would that number only be applicable to a
18  cost per parcel for tax roll database information?
19    A.   You want to ask me that question again?
20    Q.   Yeah.  You added $1 million, which is the tax
21  roll software number --
22    A.   Yes.
23    Q.   -- to the computer -- to the computer number,
24  right?
25    A.   Yes.  That is the yearly maintenance of what

Page 44

1  it costs for the PVAs to get their tax rolls.
2    Q.   Okay.  The 201,200 is just tax roll database
3  information or also GIS data as well?
4    A.   It's for both.
5    Q.   Okay.  The tax roll software though, that's
6  only used for tax roll database information.  Is that --
7  I think you said that?
8    A.   Yes.
9    Q.   Okay.  So that's different from the computers
10  which are used for both, correct?
11    A.   Yes.
12    Q.   Okay.  And that also if we went down this list
13  of equipment, equipment is used for both, presumably,
14  correct?
15    A.   Yes.
16    Q.   Right.  Internet, for instance, used for both,
17  right?
18    A.   Correct.
19    Q.   Okay.  And then if we go up to the personnel
20  cost per parcel that you also added, you had no
21  involvement whatsoever in calculating those numbers;
22  right?
23    A.   I did not.
24    Q.   Okay.  So you have no idea which employees at
25  the PVA offices were included in those numbers; is that

Page 45

1  correct?
2    A.   Correct.
3    Q.   And you would likewise have no idea what the
4  cost for -- or the personnel cost per parcel for GIS
5  data versus property tax roll database information, you
6  have no idea what that number is, correct?
7    A.   I'm sorry, repeat that question.
8    Q.   So in terms of how you would allocate
9  personnel time to GIS data versus property tax roll
10  database information, you would have no way of knowing
11  what those percentages would be, correct?
12    A.   Correct.
13    Q.   Okay.  And so the number that you gave to
14  Mr. Bertelson where you added those numbers together and
15  then you did some division where you divided the
16  computer plus the tax roll software cost by the number
17  of parcels, that number doesn't reflect what the cost
18  per parcel is for tax roll property database
19  information, does it?
20    A.   I would say it does.
21    Q.   For just property tax roll database?
22    A.   Repeat the question again.  Let me try to
23  understand what you're asking.
24    Q.   Okay.  So the personnel cost per parcel at the
25  top of this page --

12 (Pages 42 - 45)

Page 46

1    A.  Okay.
2    Q.  -- you have no idea what -- how that number
3  was calculated, correct?
4    A.  Correct.  I was not part of that.
5    Q.  And you -- so you have no idea what employees
6  at the office of PVAs that were looked at do vis-a-vis
7  GIS data or general property tax roll database
8  information, correct?
9    A.  Correct.
10   Q.  And you don't know if that -- if the time was
11 broken down in terms of how much time is spent GIS data
12 versus collecting number of bedrooms and that sort of
13 thing, right?
14   A.  Correct.
15   Q.  Okay.  And so if you were to utilize that
16 number, you're utilizing a number that you have no idea
17 how much of it pertains to GIS data or how much of it
18 pertains to property tax roll database, correct?
19   A.  Correct.
20   Q.  And so if you were trying to isolate the cost
21 per parcel for property tax roll database, not GIS,
22 using those numbers would impact that -- that number.
23 It wouldn't just be property tax roll database.  It
24 would be -- potentially include GIS, and you have no way
25 of knowing one way or the other, correct?

Page 47

1      MR. BERTELSON:  I'm going to object to the form
2  of the question.  It's very confusing.
3      MR. FORD:  Yes.
4  BY MR. FORD:
5    Q.  Okay.  Well, you did some multiplication and
6  addition with Mr. Bertelson to purport to come up with a
7  total annual cost per parcel for property tax roll
8  database information.  Is that what you understood you
9  were trying to do with Mr. Bertelson?
10   A.  Yes.
11   Q.  Okay.  And you included in that total number
12 that you gave Mr. Bertelson of $6-and-something -- I
13 don't remember exactly what it was, but $6-and-something
14 -- do you recall that testimony?
15   A.  Yes.
16   Q.  Okay.  You included in that $6 number
17 personnel cost per parcel, correct?
18   A.  Yes.
19   Q.  But that personnel cost per parcel would also
20 include personnel cost that went into GIS data, not
21 solely property tax roll database information, correct?
22   A.  Yes.
23   Q.  And so that $6 number that you came up with,
24 that includes personnel time that may have been spent on
25 GIS data, not just property tax roll database

Page 48

1  information, correct?
2    A.  Yes.  But they are -- they're pretty close to
3  the same thing.
4    Q.  Do you know for a fact that there's not
5  separate amount of time by employees spent on the GIS
6  data versus property tax roll database?
7    A.  I do not.
8    Q.  Okay.  So you really don't know what those
9  numbers are and how they break down; correct,
10 Mr. Tackett?
11   A.  (No verbal response.)
12      COURT REPORTER: I'm sorry, Mr. Tackett, I
13 didn't hear the answer to that question.
14   A.  Yes.
15      COURT REPORTER:  Thank you.
16      MR. FORD:  That's it for me.  I appreciate your
17 time, Mr. Tackett.
18      THE WITNESS:  All right.  Thanks.
19      MR. BERTELSON:  All right.  Nothing further
20 from me.
21      COURT REPORTER:  Off the record.
22      (DEPOSITION CONCLUDED AT 10:47 A.M.)
23
24
25

Page 49

1      CERTIFICATE OF REPORTER
2      COMMONWEALTH OF KENTUCKY AT LARGE
3
4  I do hereby certify that the witness in the foregoing
5  transcript was taken on the date, and at the time and
6  place set out on the Title page hereof, by me after
7  first being duly sworn to testify the truth, the whole
8  truth, and nothing but the truth; and that the said
9  matter was recorded by me and then reduced to
10 typewritten form under my direction, and constitutes a
11 true record of the transcript as taken, all to the best
12 of my skill and ability. I certify that I am not a
13 relative or employee of either counsel and that I am in
14 no way interested financially, directly or indirectly,
15 in this action.
16
17
18
19
20
21
22 LINDSEY JOHNSON,
23 COURT REPORTER/NOTARY
24 MY COMMISSION EXPIRES: 05/24/2023
25 SUBMITTED ON: 03/29/2021

13 (Pages 46 - 49)

## Page 50

1         Veritext Legal Solutions
            1100 Superior Ave
2            Suite 1820
          Cleveland, Ohio 44114
3        Phone: 216-523-1313
4

March 29, 2021
5

To: Mr. Bertelson
6

Case Name: Zillow, Inc. v. Hon. Thomas B. Miller, Et Al.
7

Veritext Reference Number: 4458309
8

Witness:  Michael Tackett , 30(B)(6)    Deposition Date:
9   3/11/2021
10

Dear Sir/Madam:
11

12  Enclosed please find a deposition transcript.  Please have the witness
13  review the transcript and note any changes or corrections on the
14  included errata sheet, indicating the page, line number, change, and
15  the reason for the change.  Have the witness' signature notarized and
16  forward the completed page(s) back to us at the Production address shown
17
above, or email to production-midwest@veritext.com.
18
19  If the errata is not returned within thirty days of your receipt of
20  this letter, the reading and signing will be deemed waived.
21
Sincerely,
22
Production Department
23
24
25  NO NOTARY REQUIRED IN CA

## Page 51

1     DEPOSITION REVIEW
     CERTIFICATION OF WITNESS
2

   ASSIGNMENT REFERENCE NO: 4458309
3   CASE NAME: Zillow, Inc. v. Hon. Thomas B. Miller, Et Al.
   DATE OF DEPOSITION: 3/11/2021
4   WITNESS' NAME: Michael Tackett , 30(B)(6)
5   In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6   my testimony or it has been read to me.
7   I have made no changes to the testimony
   as transcribed by the court reporter.
8
_____
9   Date     Michael Tackett , 30(B)(6)
10   Sworn to and subscribed before me, a
   Notary Public in and for the State and County,
11  the referenced witness did personally appear
   and acknowledge that:
12
   They have read the transcript;
13   They signed the foregoing Sworn
     Statement; and
14   Their execution of this Statement is of
     their free act and deed.
15
   I have affixed my name and official seal
16
   this _____ day of_____, 20____.
17
18   _____
   Notary Public
19
   _____
   Commission Expiration Date
20
21
22
23
24
25

## Page 52

1    DEPOSITION REVIEW
    CERTIFICATION OF WITNESS
2

   ASSIGNMENT REFERENCE NO: 4458309
3   CASE NAME: Zillow, Inc. v. Hon. Thomas B. Miller, Et Al.
   DATE OF DEPOSITION: 3/11/2021
4   WITNESS' NAME: Michael Tackett , 30(B)(6)
5   In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6   my testimony or it has been read to me.
7   I have listed my changes on the attached
   Errata Sheet, listing page and line numbers as
8   well as the reason(s) for the change(s).
9   I request that these changes be entered
   as part of the record of my testimony.
10
   I have executed the Errata Sheet, as well
11  as this Certificate, and request and authorize
   that both be appended to the transcript of my
12  testimony and be incorporated therein.
13  _____
   Date     Michael Tackett , 30(B)(6)
14
   Sworn to and subscribed before me, a
15  Notary Public in and for the State and County,
   the referenced witness did personally appear
16  and acknowledge that:
17   They have read the transcript;
   They have listed all of their corrections
18   in the appended Errata Sheet;
   They signed the foregoing Sworn
19     Statement; and
   Their execution of this Statement is of
20     their free act and deed.
21   I have affixed my name and official seal
22  this _____ day of_____, 20____.
23  _____
   Notary Public
24
   _____
25   Commission Expiration Date

## Page 53

1    ERRATA SHEET
   VERITEXT LEGAL SOLUTIONS MIDWEST
2   ASSIGNMENT NO: 4458309
3   PAGE/LINE(S) /    CHANGE    /REASON
4   _____
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
   _____   _____
20  Date     Michael Tackett , 30(B)(6)
21  SUBSCRIBED AND SWORN TO BEFORE ME THIS _____
22  DAY OF _____, 20_____ .
23  _____
   Notary Public
24
   _____
25   Commission Expiration Date

14 (Pages 50 - 53)

## CERTIFICATE OF REPORTER

## COMMONWEALTH OF KENTUCKY AT LARGE

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Title page hereof, by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded by me and then reduced to typewritten form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skill and ability. I certify that I am not a relative or employee of either counsel and that I am in no way interested financially, directly or indirectly, in this action.

LINDSEY JOHNSON

COURT REPORTER / NOTARY

MY COMMISSION EXPIRES:  05/29/2022

SUBMITTED ON: 03/29/2021

**[& - adopted]**

| & |
|---|
| **&**   2:5 |

| 0 |
|---|
| **0.53804404.**   39:20 |
| **00049**   1:5 |
| **03/29/2021**   49:25 |
| **05/24/2023**   49:24 |
| **08/12**   29:14 |

| 1 |
|---|
| **1**   10:24 12:16,21 13:6 14:20 39:2 43:20 |
| **1,201,200**   39:17 |
| **1.2**   39:11 |
| **1.57**   37:4,6 |
| **10**   14:9 |
| **100**   27:17 |
| **101**   4:5 |
| **10:47**   48:22 |
| **11**   1:24 3:18 15:2 15:6 22:24 23:4,5 29:24 32:10 36:9 36:20 41:6,23 |
| **1100**   50:1 |
| **11th**   4:7 |
| **12**   32:12 |
| **120**   35:1 |
| **15**   3:18 |
| **17**   3:14 |
| **1820**   50:2 |
| **19**   3:19 23:15 24:3 |

| 2 |
|---|
| **2**   3:11 9:22,24 10:23 12:23 |
| **2,232,531**   39:17 |
| **20**   3:16 51:16 52:22 53:22 |
| **200**   38:23 39:11 41:25 |

| 201   38:24 |
|---|
| **201,200**   37:21 38:22,25 39:9 42:22 43:1,17 44:2 |
| **2012**   29:17 30:3 31:2 |
| **2018**   3:19 23:15 24:3 30:4,4 |
| **2019**   18:20 22:4,9 |
| **2021**   1:24 4:8 50:4 |
| **216-523-1313**   50:3 |
| **22**   31:1 |
| **23**   31:1 |
| **24**   15:20 30:23 |
| **2400**   2:6 |
| **25**   18:20 22:4,9 |
| **29**   21:9 31:10,18 50:4 |

| 3 |
|---|
| **3**   3:14 13:22 14:20 14:25 17:9,19,20 29:5 |
| **3/11/2021**   50:9 51:3 52:3 |
| **30**   1:23 4:3,8,11 50:8 51:4,9 52:4 52:13 53:20 |
| **300**   2:7 |
| **34**   3:5 29:7 |
| **3:19**   1:5 |

| 4 |
|---|
| **4**   14:20,25 |
| **40202**   4:6 |
| **40602**   2:20 |
| **41**   3:6 |
| **41017**   2:8 |
| **42**   18:16 |
| **423**   2:19 |

| 44114   50:2 |
|---|
| **4458309**   50:7 51:2 52:2 53:2 |

| 5 |
|---|
| **5**   3:3 |
| **5.25**   36:21 40:2,5 |
| **5.25.**   40:7 |
| **501**   5:15,20 7:2 |
| **502**   2:21 |
| **53**   39:15 |
| **54**   39:23,25 40:1 40:10,15 |
| **564-9572**   2:21 |
| **57**   23:12 |
| **578-7263**   2:9 |

| 6 |
|---|
| **6**   1:23 3:4,16 4:3,8 10:24 20:4,9 21:9 31:9 47:12,13,16 47:23 50:8 51:4,9 52:4,13 53:20 |
| **6.54**   40:14,21 |
| **6.54.**   40:13 |
| **64**   39:15 |

| 7 |
|---|
| **7**   36:22 |
| **7.07**   40:4 |
| **7.08**   40:4 |
| **7.57**   27:13 28:25 36:24 37:2 |
| **730**   4:5 |
| **75**   36:22 40:1,8,9 |

| 8 |
|---|
| **8**   13:24,25 21:12 22:15 |
| **859**   2:9 |

| 9 |
|---|
| **9**   3:11 14:3,4 31:10,17 |
| **965**   36:2 43:3,4 |
| **9:47**   4:8 |

| a |
|---|
| **a.m.**   4:8 48:22 |
| **ability**   9:11,14 49:12 |
| **able**   11:7 13:7 29:2 |
| **accurate**   15:6 16:22 |
| **acknowledge**   51:11 52:16 |
| **acquired**   22:23 |
| **acquisition**   14:6 31:13 32:5,14 |
| **acronym**   11:16,18 11:21 12:1,16 16:24 |
| **act**   51:14 52:20 |
| **action**   1:5 17:12 49:15 |
| **activities**   25:10 28:22 |
| **add**   40:1 |
| **added**   38:7 39:25 43:20 44:20 45:14 |
| **addition**   47:6 |
| **address**   7:1 50:16 |
| **addressed**   18:20 |
| **administrating**   16:9 |
| **administrator**   11:23 |
| **administrators**   11:12,19 12:18 |
| **adopted**   12:24 |

**advanced** 14:10
**aerial** 26:21
**affect** 9:11,14
**affirm** 6:6
**affirmative** 14:15
**affixed** 51:15
52:21
**agree** 5:25 21:22
**agreed** 4:13
**agreement** 24:25
**ahead** 6:21 8:11
8:17 9:8 37:16,17
38:12 39:8 40:24
**al** 1:15 2:15 50:6
51:3 52:3
**allocate** 45:8
**allocated** 43:1
**amend** 34:12,17
**amount** 48:5
**amounts** 23:19
26:5
**analysis** 3:18
21:14 22:2 23:15
24:5 30:3,4,8,13
31:11 32:3,11
40:18
**analyze** 32:13
**annual** 23:19 24:9
24:17 26:5,23
27:10,14,25 28:10
28:19,20 37:19
41:23 47:7
**answer** 8:5,11,17
9:2,4,6,8 11:5
12:14 13:23 22:1
22:10,15 31:15
32:6 48:13
**answering** 20:17
20:21
**answers** 7:6,13,16
7:21,22

**anytime** 17:4
**anyway** 12:15
13:18
**apart** 37:13
**appear** 51:11
52:15
**appearance** 5:5
**appearances** 2:1
**appeared** 2:11,24
**appearing** 5:18
**appended** 52:11
52:18
**applicable** 43:17
**appreciate** 6:15
34:25 48:16
**april** 18:20 22:4,9
**arc** 24:23
**area** 24:9
**asked** 13:18 27:24
30:10 41:16
**asking** 8:3 11:4
41:10 45:23
**asks** 31:10
**asserted** 14:15
**assessing** 26:18
**assignment** 51:2
52:2 53:2
**assist** 12:24
**assisting** 21:5
**associated** 14:5
**association** 22:6
22:21
**assume** 8:12 24:18
36:17
**assumption** 25:25
35:22
**attach** 19:5
**attached** 52:7
**attended** 4:7
**attending** 5:5,6,7
5:11,17

**attorney** 6:18 8:23
**attorneys** 15:13
**audible** 7:16,22
**august** 29:17 30:3
**authority** 11:11
33:13
**authorize** 52:11
**ave** 50:1
**average** 23:20
**aware** 27:20,22
32:11

**b**

**b** 1:13,23 2:13 4:3
4:8 50:6,8 51:3,4
51:9 52:3,4,13
53:20
**back** 12:16 28:8
29:5 31:9 32:24
33:1 50:16
**based** 12:14,14,14
30:21
**basic** 7:5
**basis** 35:2
**bates** 23:9
**bearing** 6:16
**bedrooms** 46:12
**begins** 31:20
**behalf** 2:3,13 5:11
5:17 20:13
**believe** 41:21
**benefit** 7:14 10:14
**benefits** 23:20
**bertelson** 2:16 3:5
5:10,10 6:3 8:23
12:2,15 13:4
15:14 32:21 34:20
34:23 37:17 41:1
41:10,16 45:14
47:1,6,9,12 48:19
50:5

**bertelson's** 41:5
**best** 49:11
**beyond** 21:5
**bit** 9:1 35:8 38:9
**bork** 17:15
**bottom** 9:23 23:11
27:6 36:25 38:9
40:21
**box** 2:19
**brad** 18:20
**branch** 16:1
**break** 8:15,19 9:1
33:2 43:13 48:9
**broken** 46:11
**bucks** 23:22 26:23
**building** 5:14,20
**business** 7:1
**busy** 35:1

**c**

**ca** 50:25
**calculated** 40:10
46:3
**calculating** 44:21
**calculations** 41:22
**calculator** 36:13
36:16,17,19 40:16
**call** 33:22
**camera** 5:23
**capacity** 1:13 2:14
21:4 26:17 33:7
33:16 34:9
**caption** 17:13 20:6
**case** 17:13 26:4
50:6 51:3 52:3
**categories** 18:24
24:6,12,13,14
**category** 23:21
24:6 27:4
**cent** 36:22
**center** 2:6

**central** 1:3
**cents** 39:23,25
  40:1,1,6,8,10,15
**certain** 19:6
**certainly** 28:24
**certificate** 49:1
  52:11
**certification** 51:1
  52:1
**certify** 49:4,12
**chamber** 2:6
**chance** 18:2
**change** 50:14,15
  52:8 53:3
**changes** 50:13
  51:7 52:7,9
**civil** 1:5 4:9 51:5
  52:5
**clarification** 8:5,9
  13:14
**clarify** 35:25
**clarifying** 35:2
**clear** 7:16,17 8:1
**cleveland** 50:2
**clients** 35:1
**close** 48:2
**collect** 19:22 27:15
**collecting** 25:23
  27:15 28:9 42:10
  42:14 46:12
**collection** 36:3
  43:7
**come** 38:7 47:6
**comes** 8:8 37:6
**commercial** 14:10
  29:10,25 30:21
  31:6
**commission** 49:24
  51:19 52:25 53:25
**commissioner**
  1:14 2:14 3:12

6:20 10:4,10
  12:23 14:15 17:14
  20:15,16,22 32:2
  35:13
**commissioner's**
  11:11
**common** 11:18
**commonwealth**
  49:2
**complaint** 3:14
  17:11,17,22,24
  18:3
**completed** 4:16
  32:19 50:16
**compu** 42:1
**computer** 24:22
  25:2,7 40:18 43:9
  43:23,23 45:16
**computers** 24:15
  24:18,19,20,23
  25:8,12,20,22
  35:17,23 36:7
  37:21 38:25 39:3
  41:22 42:1,21,22
  43:5,14 44:9
**concluded** 48:22
**conducted** 21:14
  31:11 32:3,12
**confused** 12:3
  41:9
**confusing** 47:2
**confusion** 8:2
**connection** 18:6
  22:18 25:10 29:24
**consequences** 7:9
**consider** 19:3,4,8
  27:13 42:15
**considered** 19:23
  37:14
**constitutes** 21:22
  49:10

**conversation** 7:20
**copies** 21:16 22:8
**copy** 17:11
**corner** 9:23 18:11
  23:11
**correct** 7:7 13:20
  16:6,19 19:11,15
  19:16 20:1,2,4
  21:24,25 22:13
  24:21 25:5 26:2,8
  28:13,14,17 29:3
  30:16,18,19 31:3
  33:14 34:12,17
  35:5,13 36:17
  37:8 39:18,23
  40:23,25 42:3,7,11
  42:16,23 43:7
  44:10,14,18 45:1,2
  45:6,11,12 46:3,4
  46:8,9,14,18,19,25
  47:17,21 48:1,9
**corrections** 50:13
  52:17
**cost** 3:18 21:15
  23:15 24:10,17
  26:8,23 27:7,10,14
  27:25 28:1,2,2,3
  28:10,13,13,19,20
  28:25 30:8,14
  31:12 32:3,10
  36:23,23 37:3,3,4
  37:7,7,20 38:4,8,8
  40:2,19,20,20
  41:11,23 43:18
  44:20 45:4,4,16,17
  45:24 46:20 47:7
  47:17,19,20
**costs** 14:4 22:6,22
  26:5,6 28:9,15
  37:10 40:19 41:17
  44:1

**counsel** 15:5 49:13
**county** 18:21
  51:10 52:15
**couple** 33:5,5 35:2
**course** 8:2,23
  34:13
**court** 1:1 4:4,14
  5:3,21,25 6:4,10
  32:22,24 48:12,15
  48:21 49:23 51:7
**crawford** 32:20
**create** 26:6 30:5
**created** 30:3
**creating** 16:12
  37:12
**creation** 14:5
  19:18 31:12 32:4
  32:13
**cross** 3:5 34:21,22
**current** 21:2 29:19
**currently** 5:13,13
**cv** 1:5

**d**

**daily** 35:2
**daniel** 17:15
**darren** 2:4 5:7
  6:17 13:4
**data** 14:6 16:13
  17:5 19:5,6,8,15
  19:22 21:6,24
  24:19 25:19,22,23
  26:6 34:7 36:3
  38:5 42:14,15,16
  42:23 43:1,5,10
  44:3 45:5,9 46:7
  46:11,17 47:20,25
  48:6
**database** 19:9,12
  19:24 21:23 25:17
  26:8 27:16,18
  29:2 30:15 41:11

**[database - fair]**

41:17 42:2,6,11,16
42:23 43:2,6,10,18
44:2,6 45:5,10,18
45:21 46:7,18,21
46:23 47:8,21,25
48:6
**date**  1:24 18:19
29:16 49:5 50:8
51:3,9,19 52:3,13
52:25 53:20,25
**dated**  3:18 23:15
**day**  4:7 51:16
52:22 53:22
**days**  50:19
**deal**  34:3
**dealing**  16:16
**dear**  50:10
**declaratory**  3:14
17:17,22,25
**deed**  51:14 52:20
**deemed**  50:20
**def**  23:12
**defendant's**  20:6
**defendants**  1:16
2:13 3:16 5:11,17
6:19 17:14
**defenses**  14:15
**delays**  6:15
**delicate**  34:7
**demand**  33:22
**department**  1:14
2:15 3:12 5:12
6:20 10:5,11,17
12:19 13:22 14:16
15:12,15,19 17:15
20:17,23 22:5,20
29:20 30:22 32:2
50:22
**departments**
30:24

**deponent**  1:23
**deposed**  7:3
**deposition**  3:11
4:3,8 8:2,23 10:4
10:14 11:17,22
14:24 15:10 18:6
20:12 22:19 34:14
48:22 50:8,12
51:1,3 52:1,3
**designed**  32:13
**desk**  26:16
**desktop**  25:6
**desktops**  25:9
**determine**  21:14
31:12
**determining**  30:13
**dford**  2:10
**different**  19:14
38:9 44:9
**difficult**  7:20
**direct**  3:4 6:11
42:12
**directed**  41:19
**direction**  49:10
**directive**  33:9,18
42:13
**directly**  49:14
**director**  6:23
10:18,20 13:8
15:22 16:4,5,8
19:25 21:2 33:7
33:16
**discuss**  35:11
**discussion**  35:16
**disseminated**
12:24
**district**  1:1,2 6:21
**divide**  38:6 39:12
**divided**  45:15
**dividing**  37:6
39:17

**division**  1:3 6:24
16:2 45:15
**document**  9:21
10:3 17:16,24
18:18,24 20:5,11
21:9 22:24 23:9
23:14,18 24:1,17
25:16 27:7 28:9
29:7,9
**documents**  15:1
**doing**  6:17 38:17
38:18 39:4 40:19
41:24
**dollar**  23:19
**dollars**  26:10 38:6
39:9
**dor**  12:18 33:12
**drive**  2:6
**driver's**  5:22
**duly**  49:7
**duties**  33:10

**e**

**e**  2:10,22
**earlier**  10:13
12:15
**eastern**  1:2 6:20
**editing**  17:5
**either**  49:13
**ela**  24:24,25
**electronic**  21:16
22:8
**email**  50:17
**employee**  23:20
49:13
**employees**  15:12
15:15 44:24 46:5
48:5
**enclosed**  50:12
**encompass**  21:24
**ends**  31:20

**enter**  25:21
**entered**  52:9
**enterprise**  24:25
**entire**  30:23 51:5
52:5
**equipment**  26:2,8
37:21 44:13,13
**errata**  50:14,19
52:7,10,18 53:1
**esri**  24:24
**essentially**  16:3
23:25
**et**  1:15 2:15 50:6
51:3 52:3
**events**  9:15
**everybody's**  36:16
**exactly**  47:13
**examination**  3:4,5
3:6 6:11 34:22
41:7
**exclusive**  41:18
**executed**  52:10
**execution**  51:14
52:19
**exhibit**  3:10,11,14
3:16,18 9:22,22,24
10:23 15:5,6 17:9
17:19 20:4,9 21:9
22:23 23:4,5 29:5
29:24 31:9 32:10
36:9,20 41:6,23
**exhibits**  3:9 9:18
15:2,4
**expiration**  51:19
52:25 53:25
**expires**  49:24

**f**

**f**  1:6
**fact**  6:1 35:4 48:4
**fair**  13:13,13 16:5
16:18 25:1,18

**[fair - includes]**

28:3 30:2,5 32:1,7
**far**  6:17 9:5
**fat**  39:14
**federal**  4:9
**fee**  3:18 14:11
    23:14 29:10,17,25
    30:5,21 31:6
    32:10
**feel**  11:7
**field**  25:20 35:17
    35:24 36:7
**figure**  36:24
**figured**  6:16 28:16
**file**  19:9,12,19,23
    21:23
**filed**  6:19 18:8
**financially**  49:14
**find**  50:12
**fingering**  39:14
**finished**  9:3
**first**  3:17 8:18
    11:10 12:5 17:13
    20:7 41:9 49:7
**five**  32:18
**flow**  13:5
**flushed**  21:1
**focus**  16:14
**focused**  5:23 25:16
    25:17 26:1,6
**folks**  12:3
**follow**  41:5
**ford**  2:4 3:4,6 5:7
    5:7 6:2,10,12,18
    12:6 13:9,12 23:4
    32:17,25 34:19
    35:21 37:15 38:11
    39:7 40:22 41:4,8
    47:3,4 48:16
**ford's**  35:8,15
**foregoing**  49:4
    51:13 52:18

**form**  47:1 49:10
**former**  17:14
**formula**  27:19,20
    27:20
**fort**  2:8 5:8
**forward**  50:16
**foundation**  37:15
    38:11 40:22
**frankfort**  1:4 2:20
    5:14,15 7:2
**frcp**  4:10
**free**  8:16,19 9:8
    51:14 52:20
**front**  10:1 23:6
**full**  10:15
**further**  48:19

**g**

**gather**  24:8,12
    26:15 27:24 30:10
**gathering**  26:20
**general**  16:7 43:6
    46:7
**generally**  14:23
    17:3
**geographical**  17:1
**gfvt**  1:5
**gis**  6:24 10:18,20
    13:8 15:22 16:1,8
    16:12,20,21,23,24
    17:5 19:3,5,6,14
    20:1 21:3,6,24
    24:7,13,14,19,23
    25:2,10,12,16,23
    26:2,6,7,25 27:3
    27:16,17 28:3
    33:7,10,17,19 34:3
    34:7 35:24 36:4
    37:14,23 38:2
    41:18 42:4,12,15
    42:23 43:1,4,5,9
    44:3 45:4,9 46:7

46:11,17,21,24
    47:20,25 48:5
**give**  6:6 7:6,13,16
    7:22 8:25 10:15
    14:23 29:2 32:18
    33:8 34:11
**given**  22:1 27:21
**go**  6:21 8:11,17
    9:8 11:5,15 37:12
    37:16,17,20 38:12
    39:8 40:24 42:19
    44:19
**goes**  22:4
**going**  8:11 12:16
    14:21 31:9 32:18
    36:19 37:23 38:3
    41:4 43:3,11 47:1
**good**  6:13,17 34:9
**governmental**
    14:10
**gps**  36:4
**graydon**  2:5
**graydon.law**  2:10
**gregory**  1:6
**ground**  7:5
**group**  18:19
**guess**  30:25
**guidance**  12:23
**guidelines**  29:10
    29:17,25 30:5,21
    31:6
**guy**  35:1

**h**

**hand**  6:5 9:23
    18:11 23:11,11
    29:13
**happen**  9:5
**happened**  9:5
**head**  2:5 7:18
**heading**  20:5

**hear**  48:13
**heard**  19:8
**help**  16:11 17:2,6
    33:22,23 34:5,6,9
    35:2,4
**helped**  16:21
    35:12
**helping**  19:17
    35:10
**hereof**  49:6
**hesitate**  8:8
**hierarchical**  34:1
**high**  5:15,20 7:2
**hold**  5:22
**hon**  1:13 2:13 50:6
    36:19 52:3
**hopefully**  9:17
**hostage**  8:14
**huhs**  7:18

**i**

**iaao**  27:21
**idea**  44:24 45:3,6
    46:2,5,16
**identification**  9:24
    17:19 20:9 23:5
**identified**  42:22
**identify**  22:6,22
    34:2
**iii**  2:16
**impact**  46:22
**important**  7:14,25
    8:25 12:17
**include**  26:7 46:24
    47:20
**included**  25:4,5
    26:20,23 41:21
    44:25 47:11,16
    50:14
**includes**  28:21
    47:24

including  5:12
  6:19 17:14 23:20
  26:7
inclusive  27:16
incorporated
  52:12
increased  26:17
index  3:1
indicating  36:15
  50:14
indirectly  49:14
information  9:15
  13:19 17:1 18:24
  19:2,3,19 20:16,21
  21:21,22 22:18
  24:9,12 26:15,21
  27:1,15 28:17
  29:2,23 33:10
  34:4 35:4 41:12
  41:17 42:2,7,11,23
  43:2,6,10,18 44:3
  44:6 45:5,10,19
  46:8 47:8,21 48:1
injunctive  3:14
  17:17,22,25
input  27:15
inside  16:1
instance  24:18
  44:16
instructing  34:3
instructs  9:4,6
interest  14:10
interested  49:14
interject  8:24
internet  44:16
interrogatories
  3:17 13:23 20:7
  20:22
interrogatory
  13:24 14:4 21:11
  22:15 31:10,17

35:4,12
interrupt  12:3
  13:5
introduce  6:22
involved  20:20
  24:2,5 31:7
involvement  20:16
  28:9,12 31:5
  44:21
isolate  37:10,23
  41:16 46:20
isolated  37:13
issue  33:18
issues  17:7

j
job  13:17
johnson  1:25 4:13
  49:22
johnson's  7:14
judge  1:6
jurisdiction  16:18

k
keep  24:23
kentuckiana  4:4
kentucky  1:2,14
  2:8,14,20 3:12 4:5
  4:14 5:8,14,15,18
  6:21 7:2 10:5,11
  17:15 22:5,21
  33:14 49:2
kind  36:4
know  6:14 7:19
  8:20 13:7 20:18
  23:6 25:8 28:8,22
  28:23 29:23 30:7
  30:12,18 32:6
  34:14,25 37:21
  42:25 46:10 48:4
  48:8

knowing  45:10
  46:25
knowledge  36:6
ky.gov  2:22,23

l
lack  37:15 38:11
  40:22
land  16:17
laptops  25:8,21
large  49:2
lawsuit  6:18
leading  23:12
left  29:13
legal  2:18 50:1
  53:1
letter  50:20
letterhead  18:19
lexington  5:18
license  5:22
licensing  24:25
likewise  45:3
lindsey  1:25 4:13
  49:22
line  35:18 50:14
  52:7 53:3
link  38:2
list  10:24 18:24
  23:19 24:23 44:12
listed  41:22 52:7
  52:17
listing  52:7
little  9:1,1 23:10
  35:8 38:9
llp  2:5
located  4:4
location  5:5
long  15:18,21
look  36:21
looked  15:2,4 18:7
  21:20 32:9 46:6

looking  31:10
  40:18
louisville  4:5

m
machine  43:12
machines  36:2
madam  50:10
mail  2:10,22
main  4:5 15:2
  42:13
maintenance
  43:25
making  9:3,7
manager  16:1
mapping  42:19
march  1:24 4:7
  50:4
mark  23:4
marked  9:22,24
  15:5 17:19 20:9
  23:5
math  36:12 38:14
  40:1
matter  4:10 49:9
mcdowell  18:20
mean  7:17 11:23
  12:17 13:14 24:11
  42:8
means  12:19
mechanical  21:15
  22:7,22 30:14
media  21:15 22:7
  22:22 30:14
medications  9:10
  9:14
mentioned  22:23
  36:2 37:2
michael  1:23 4:3
  6:1 50:8 51:4,9
  52:4,13 53:20

**middle** 18:23
**midwest** 50:17
  53:1
**mike** 5:19 6:23
  13:6 34:24 35:3
  35:22
**mile** 40:2
**mileage** 28:13
  36:23 37:3 38:8
  40:20
**miller** 1:13 2:13
  20:22 35:13 50:6
  51:3 52:3
**million** 23:22
  26:10,23 38:6
  39:2,9,11 43:20
**mineral** 6:24
  10:18,20 15:22
  16:8,10,16 19:25
  21:2 33:7,17
**minerals** 13:8
  16:17
**minutes** 32:18
**misunderstood**
  35:7
**mitchell** 2:8 5:8
**moment** 29:5
**months** 15:23
**morning** 6:13,14
  8:1 20:12 22:13
  22:19 34:17,25
**move** 32:20
**multi** 36:5
**multiplication**
  47:5

**n**

**n** 1:25 4:13
**name** 6:17 50:6
  51:3,4,15 52:3,4
  52:21

**nature** 7:9
**necessarily** 27:18
**necessary** 34:21
**need** 8:19
**nicole** 2:17 5:16
**nicole.sergent**
  2:23
**nods** 7:18
**normal** 7:19
**normally** 19:21
**notarized** 50:15
**notary** 4:13 49:23
  50:25 51:10,18
  52:15,23 53:23
**note** 18:11 50:13
**notice** 3:11 10:3
**november** 3:19
  23:15 24:3
**number** 12:16
  13:6,22,24,25 14:3
  14:4,9 21:12
  22:15 23:10,10
  27:16,22 28:21
  29:3 36:9,20,22
  37:2 38:7,9 39:10
  39:12,13 40:3,21
  43:16,17,21,23
  45:6,13,16,17 46:2
  46:12,16,16,22
  47:11,16,23 50:7
  50:14
**numbered** 10:24
**numbers** 18:12
  27:24 29:13 36:20
  36:21 37:11,12,19
  37:20,22 44:21,25
  45:14 46:22 48:9
  52:7

**o**

**oath** 4:10 7:7,10
  33:3
**object** 47:1
**objection** 9:3,7
  37:15 38:11 39:7
  40:22
**objections** 8:24
**objects** 9:2
**obliques** 26:14,14
**occasion** 33:18
**occasions** 33:8
**office** 2:18 3:11
  4:4 5:14,20 10:4
  21:13 25:12,21
  26:16,18 28:22
  31:11 35:25 36:7
  46:6
**offices** 35:18 44:25
**official** 1:13 2:14
  51:15 52:21
**oh** 12:7,10 13:9
  37:18
**ohio** 50:2
**okay** 7:5,12,23 8:9
  8:10,12,13,20,21
  9:8,9,25 10:3,13
  11:8,9,15,24,25
  12:10,13,16,19,20
  13:3,9,13,22 14:3
  14:9,14,19,21,22
  15:4,8,18 16:3,7
  16:20,24 17:10
  18:2,5,10,17,23
  19:7,12,17,22 20:3
  20:5,25 21:10,20
  22:1,12 23:1,14,18
  23:25 24:5,11,16
  25:1,15,25 26:4,12
  26:19,22 27:3,6,23
  28:1,19,24 29:8,23

30:2,7,12 31:2,5
32:17,20,21 33:24
34:11,19 35:7,21
36:9,11 37:25
38:3,16,22 39:3,12
39:15,16,20,23
40:11,14 41:3,21
42:8,25 43:5,16
44:2,5,9,12,19,24
45:13,24 46:1,15
47:5,11,16 48:8
**once** 9:7 19:20
**ones** 11:7
**open** 22:3 29:10
  30:20 31:6
**operating** 28:2
**operations** 21:5
**opportunity** 34:12
**organize** 32:19
**orthos** 26:14,20
**overall** 28:2
**overlap** 25:18
**oversee** 16:9
**oversight** 21:4
**overview** 14:23

**p**

**p.o.** 2:19
**page** 3:2,10 10:23
  17:13,16,20 18:12
  18:15,16 21:9
  29:7 31:10,17
  45:25 49:6 50:14
  50:16 52:7 53:3
**pandemic** 26:16
**paper** 9:18
**parcel** 3:18 17:5
  23:15 24:10,17
  27:7,7,10,14,25
  28:1,2,3,10,13,20
  28:21 29:1 32:10
  35:10 37:4,4,20

[parcel - reason]

40:2 41:23 43:18
44:20 45:4,18,24
46:21 47:7,17,19
**parcels** 16:12 37:7
38:6 39:13,17
45:17
**part** 16:14,23
19:23 25:25 32:3
35:22 36:23,24
37:13 38:19 46:4
52:9
**participants** 4:6
**particular** 27:4
**parties** 5:4,25
**pass** 34:19
**patience** 6:14
**pause** 9:1
**pending** 8:17
**percent** 27:17
**percentage** 28:25
42:25 43:9
**percentages** 43:14
45:11
**perform** 33:9,18
33:20
**personal** 21:4 36:6
**personally** 24:1
51:11 52:15
**personnel** 28:13
28:15 36:22 37:3
38:8 40:2,20
44:19 45:4,9,24
47:17,19,20,24
**pertains** 46:17,18
**phone** 36:13,16,17
50:3
**photography**
26:13
**place** 49:6
**plaintiff** 1:9 2:3
5:9

**plaintiff's** 3:16
20:7
**please** 5:4,22 6:5
6:21 8:4,8 36:10
38:13,15 50:12,12
**plus** 40:2,8,10,20
45:16
**point** 8:15 18:3
35:15,21
**policies** 12:23
**portion** 13:5,19
14:20 16:20 27:18
**position** 10:16
15:22,24 21:2
**possibly** 16:16
**potentially** 46:24
**prefix** 23:11
**preparation** 15:9
20:12 35:24
**prepare** 14:24
18:5 34:5 35:10
**prepared** 11:5,13
12:7,11,22,25
13:25 14:7,11,17
22:13
**preparing** 24:2
41:11,17
**prescribed** 29:20
**present** 5:4,25
**presumably** 44:13
**pretty** 25:12 48:2
**previous** 40:16
**previously** 18:8
**printers** 37:21
**prior** 15:24,25
**probably** 16:15
25:13,22 31:1
**problem** 17:5
**problems** 34:6
**procedure** 4:9
51:5 52:5

**proceedings** 3:3
5:1
**process** 31:7
**processing** 21:15
22:7,23 30:14
**produce** 21:16
22:8 30:15
**production** 50:16
50:17,22
**property** 11:11,19
11:23 12:17 16:10
19:19 21:23 25:17
26:7 29:1 30:15
43:2 45:5,9,18,21
46:7,18,21,23 47:7
47:21,25 48:6
**provide** 13:20
35:4
**provided** 34:13
**providing** 20:16
20:21
**public** 4:14 51:10
51:18 52:15,23
53:23
**pull** 9:21 17:9 20:3
23:3 36:9
**purchase** 14:5
31:13 32:4,13
**purport** 47:6
**purpose** 14:10
24:20 30:7,11,13
36:5 42:14
**purposes** 20:17
35:24,25 36:14
43:12
**pursuant** 4:9,10
**putting** 31:5
**pva** 8:7 11:16,21
12:17 18:20 21:15
21:16 22:6,21
24:22 25:6,12

28:22 29:10 30:14
31:12,13 32:4,5,14
33:9,18 44:25
**pvas** 12:24 15:9
16:11,15 19:18,18
19:22 21:5 24:20
25:8,18 26:14
27:15 28:2 29:20
33:13,22 34:3,8
35:17,23 42:13
44:1 46:6

**q**

**question** 8:4,12,17
8:18,24 9:2,4,7
11:10 12:5,17
13:6 20:19 22:1
31:21 32:6 33:11
35:8 37:18 43:19
45:7,22 47:2
48:13
**questioning** 35:19
**questions** 7:7,13
7:14,16,21,22 8:5
11:4 33:5 34:20
35:3,16 41:2,5,5
41:13,15,18
**quick** 36:12
**quickly** 11:6

**r**

**raise** 6:5
**range** 23:19
**read** 51:5,6,12
52:5,6,17
**reading** 4:15
50:20
**really** 14:19,25
30:4 33:21 48:8
**reason** 13:10 30:8
50:15 52:8 53:3

reasons  8:25
recall  9:15 35:18
  41:24 47:14
receipt  50:19
record  5:3 7:17
  8:1 32:22,23,24
  33:2 35:3 48:21
  49:11 52:9
recorded  49:9
records  16:22
  21:17 22:3,8
  29:10 30:21 31:6
  31:13 32:5,14
redirect  3:6 41:7
redoing  40:17
reduced  49:9
reference  24:13
  50:7 51:2 52:2
referenced  51:11
  52:15
reflect  45:17
regard  22:2
related  22:19 25:2
  25:10 26:2 37:11
  37:23 39:4
relates  11:10
relating  24:7
relative  49:13
relief  3:15 17:17
  17:22,25
remember  47:13
remote  17:5
remotely  4:7,10
repeat  33:11 37:18
  41:14 45:7,22
reporter  1:25 4:14
  5:3,21,25 6:4,10
  32:22,24 48:12,15
  48:21 49:1,23
  51:7

reporters  4:4
representative
  10:9
request  8:16 21:17
  22:3,9 31:14,21
  32:6,15 52:9,11
requested  21:17
  21:21 31:14 32:5
  32:14
requests  35:12
required  21:16
  22:7 30:15 50:25
resolve  17:6
respect  14:3 19:18
  21:4 24:6 29:1
  30:20 33:9,10,19
  34:15
respond  35:12
response  12:5
  31:23 36:1 48:11
responses  3:16
  20:7 35:5
responsibilities
  13:17 16:7 19:14
  19:25 21:1
responsive  22:9
restate  20:19
returned  50:19
revenu  2:15
revenue  1:14 2:18
  3:13 5:12 6:20
  10:5,11,17 12:19
  14:16 15:13,15,19
  17:15 20:17,23
  29:21 30:22 31:1
  31:2 32:2
revenue's  13:23
  22:21
review  13:24 18:2
  18:5 20:11 22:18
  50:13 51:1 52:1

reviewed  15:1
  18:9 22:24
revise  12:4
richard  2:16
richard.bertelson
  2:22
rick  5:10
right  5:24 6:5 9:17
  9:23 10:22 11:6
  12:21 15:18 17:2
  17:8,12 18:11,15
  18:18 20:3,11
  21:8 22:16 23:3
  23:11,22 25:6
  27:4 28:10 30:20
  31:9,23 32:17
  33:1 34:11,19
  35:11,15 36:15,19
  37:4,6 38:22 40:7
  41:1 42:1 43:24
  44:16,17,22 46:13
  48:18,19
ritchey  2:5
role  19:17
roll  19:4,5,9,12,19
  19:23 21:23 23:22
  24:15 25:17,23
  26:8,9,10,21,22,24
  26:25,25 27:2,16
  27:18 29:1,1
  30:15 35:24 36:3
  37:11,12,25 38:1,2
  38:4,5 39:1,2,4,5
  39:10 40:19,20
  41:11,17 42:2,5,6
  42:10,14,16,23
  43:2,3,6,10,18,21
  44:2,5,6 45:5,9,16
  45:18,21 46:7,18
  46:21,23 47:7,21
  47:25 48:6

rolls  44:1
roughly  39:23
rounding  40:4
row  29:14
rules  4:9 7:5 51:5
  52:5

---

**s**

s  50:16 52:8,8 53:3
salary  23:20
sale  19:19 21:6
sales  19:6 34:6
  35:10
says  10:24 17:16
  17:21 20:6 21:13
  23:22 24:9 32:10
schedule  3:18
  23:15 32:10
scope  11:10 19:13
  19:24 21:20 25:15
  34:15
seal  51:15 52:21
second  16:14
  29:14
see  8:22 10:5,23
  10:25 17:12,18,21
  17:25 18:1,12,21
  18:25 20:8 21:11
  21:17 22:10 23:12
  23:16,22 27:8,11
  29:10,14 31:15,17
  31:21,23 41:24
selling  16:12,22
sense  8:4
sent  15:5
separate  42:16,17
  48:5
sergent  2:17 5:16
  5:16
server  25:14
service  6:24

**services** 2:18 10:19,20 13:8 16:8 20:1 21:3 33:8,17,19
**sessions** 33:21
**set** 3:17 20:7 49:6
**seven** 15:23
**severance** 16:10
**sheet** 50:14 52:7 52:10,18 53:1
**shelby** 18:21
**short** 33:2
**shown** 50:16
**side** 5:24 6:15 29:13 34:9
**signature** 50:15
**signed** 51:13 52:18
**signing** 4:15 50:20
**similar** 19:10
**sincerely** 50:21
**sir** 7:24 9:13 33:4 50:10
**situation** 34:7
**skill** 49:12
**software** 23:22 25:2 26:9,11,22,24 37:25 38:1,2,5 39:1,2,4,10 40:19 43:21 44:5 45:16
**solely** 26:1,25 27:2 40:18 47:21
**solutions** 50:1 53:1
**soon** 8:18
**sorry** 11:20 17:23 20:19 31:16 37:18 39:8,14 40:15 45:7 48:12
**sort** 7:18 21:3 23:18 24:20 25:3 25:10 28:16 34:1

34:2 46:12
**spe** 42:8
**speak** 7:15
**specific** 22:3,6,22 38:4 42:6
**specifically** 13:24 15:21 24:13
**spent** 46:11 47:24 48:5
**spoke** 35:3
**spoken** 15:14
**staff** 21:16 22:7,23 30:15
**stand** 16:25
**state** 4:14 5:4,14 5:20 21:13 24:24 31:10,20 33:13 37:7,7 38:6 39:13 39:17 51:10 52:15
**statement** 51:13 51:14 52:19,19
**states** 1:1
**statewide** 24:10,17 26:5,23 27:25 28:10,19 37:20 41:23
**statutes** 14:11
**stay** 34:8
**step** 16:3
**stickers** 9:22
**stipulations** 4:1
**street** 4:5 5:15,20 7:2
**strictly** 37:22
**strike** 25:7
**structure** 26:15 34:2
**study** 21:14 22:2 31:11 32:9,11
**stuff** 39:14

**subject** 34:20 41:19
**submitted** 49:25
**subscribed** 51:10 52:14 53:21
**suite** 2:7 4:5 50:2
**superior** 50:1
**supervising** 19:18
**supervisor** 11:11
**supervisory** 21:3 33:13
**support** 17:4
**sure** 7:22,25 11:6 13:16 21:1 24:16 25:11 31:17 33:12
**surprised** 12:13
**swear** 4:15 6:5
**sworn** 4:10 49:7 51:10,13 52:14,18 53:21
**system** 17:1,6

**t**

**tablets** 25:20
**tackett** 1:23 4:3 5:19,21 6:1,4,13 6:23,25 7:3,23 9:10,19 10:8 12:4 14:1,7,12,17,21 15:18 17:8 18:11 20:4 23:7 29:6 32:17 33:1 34:11 35:22 41:4 48:10 48:12,17 50:8 51:4,9 52:4,13 53:20
**take** 8:15,19 38:5
**taken** 4:3,8 49:5 49:11
**talk** 15:8 38:17
**talking** 14:19 35:9

**task** 33:19
**tatenhove** 1:6
**tax** 16:10 19:4,5,9 19:12,19,23 21:23 23:21 24:15 25:17 25:23 26:7,9,10,21 26:22,24,25,25 27:2,16,18 29:1,1 30:15 35:24 36:3 37:11,12,25 38:1,2 38:4,4,5 39:1,2,4,4 39:10 40:19,19 41:11,17 42:2,4,6 42:10,14,16,23 43:2,3,6,10,18,20 44:1,2,5,6 45:5,9 45:16,18,21 46:7 46:18,21,23 47:7 47:21,25 48:6
**taxation** 6:24 10:18,20 15:22 16:8,16 19:25 21:2 33:7,17
**taxes** 16:10
**technical** 6:15 17:4
**telephone** 2:9,21
**tell** 28:21
**ten** 32:12
**tenure** 30:21
**term** 8:3 11:22 19:8
**terminology** 8:7 19:10
**terms** 10:15,22 17:2 25:15 27:6 28:15,20 32:1 42:21 45:8 46:11
**testify** 9:11 10:9 11:2,7,13 12:7,11 12:22,25 13:7

14:1,7,12,17,25
22:13 49:7
**testifying** 34:16
**testimony** 6:6
15:16 34:13,17
47:14 51:6,7 52:6
52:9,12
**thank** 5:21 6:4,10
6:13,25 48:15
**thanks** 34:24
48:18
**thing** 7:19,25 8:14
8:22 11:15 14:3
24:8 40:16 41:9
46:13 48:3
**things** 7:18 8:7
**think** 9:5 12:4
16:15,21 27:21
33:6 35:7 44:7
**third** 17:16
**thirty** 50:19
**thomas** 1:13 2:13
50:6 51:3 52:3
**thought** 13:11
35:9
**thoughts** 32:19
**thursday** 4:7
**time** 8:16,19 11:4
13:15 18:7 34:25
45:9 46:10,11
47:24 48:5,17
49:5
**title** 10:3,13,15
17:24 23:14 49:6
**today** 7:23 8:15
9:11 10:9 11:5,13
12:11,22 13:1,20
14:1,7,12,17,24
15:10,16 18:6,9
**told** 12:15

**top** 10:6 17:21
18:11,19 20:6
29:9 36:21 45:25
**topic** 11:12 12:8
12:16,21,23,24
13:6,25 14:6,11,16
14:20 20:25
**topics** 10:24 11:3
12:10 14:20,20,25
15:16 22:12 34:15
**total** 27:10,14
28:20 37:7,7 38:6
39:13,17 47:7,11
**training** 24:14
33:21,25
**transcribe** 7:21
**transcribed** 51:7
**transcript** 4:16
49:5,11 50:12,13
51:5,12 52:5,11,17
**trick** 13:15
**true** 49:11
**truth** 6:7,7,8 49:7
49:8,8
**truthfully** 9:12
**try** 7:15,21 45:22
**trying** 12:2 13:14
13:16 28:6,6
41:16 46:20 47:9
**turn** 10:23 17:15
18:10,15 20:25
21:8 29:5,6
**twice** 19:20
**type** 19:7
**typewritten** 49:10

**u**

**uh** 7:18
**underneath** 16:4
**understand** 7:6,9
8:6,12 10:8 11:2
11:18 13:18 24:16

28:7 29:16,19
33:2,12 41:18
42:15,21 43:13
45:23
**understanding**
19:13 41:13,15
**understood** 41:10
47:8
**undertaken** 22:2
30:9
**united** 1:1
**unmined** 13:8
16:10
**use** 7:19 8:3 11:16
11:19,22 12:1,18
19:9 25:9 26:24
29:20 35:17,23
36:5,7 42:12 43:1
43:2,5,9
**utility** 27:3
**utilize** 46:15
**utilized** 24:19,20
**utilizing** 46:16

**v**

**v** 1:11 50:6 51:3
52:3
**valuation** 11:12,19
11:23 12:18
**van** 1:6
**various** 6:19 17:14
**verbal** 48:11
**veritext** 50:1,7
53:1
**veritext.com.**
50:17
**version** 29:16,20
**versus** 17:13 43:2
43:10 45:5,9
46:12 48:6
**videoconference**
2:11,24 4:6

**view** 28:7
**vis** 19:17,17 46:6,6

**w**

**w** 2:4,16
**wait** 5:23 9:2
**waived** 4:16 50:20
**want** 8:5,15 12:3
13:15 15:13 21:1
33:19 38:14,19
43:19
**wanted** 11:5 12:4
**waste** 11:3 13:15
**way** 7:12,16 20:20
23:21 33:23 45:10
46:24,25 49:14
**we've** 6:14
**went** 44:12 47:20
**west** 4:5
**whatsoever** 44:21
**witness** 4:15,16
5:19,24 6:1,9
13:10 34:12 41:3
48:18 49:4 50:8
50:12 51:1,4,11
52:1,4,15
**witnesses** 5:13
**witness'** 50:15
**words** 26:6
**work** 7:12 25:3
34:8 42:17
**worked** 22:5
**working** 22:21
**wrap** 33:6

**y**

**yeah** 9:25 13:16
20:4 23:8 28:6
32:1 34:24 43:20
**yearly** 43:25
**years** 15:20 30:23
32:12,12

[yep - zoom]                                                        Page 12

| **yep**   17:12 |
| --- |
| **z** |

**zeros**   23:12
**zillow**   1:8 2:3 5:9
   6:18 17:13 18:19
   21:17,21 31:14,21
   32:5,15 50:6 51:3
   52:3
**zillow's**   22:3,9
**zoom**   5:8,18

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.