UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ZILLOW, INC. | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | Civil Action No. 3:19-cv-00049-GFVT |
| v. | ) | |
| | ) | |
| HON. THOMAS B. MILLER, | ) | |
| COMMISSIONER OF THE KENTUCKY | ) | |
| DEPARTMENT OF REVENUE, *et al.,* | ) | |
| | ) | |
| DEFENDANTS | ) | |

\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**General Objections**

1.      The Defendants object to the definitions and instructions attached to the interrogatories to the extent that they impose obligations that are inconsistent with or are not required by Fed. R. Civ. P. 26, Fed. R. Civ. P. 33, or federal law.

2.      The Defendants object to each of the interrogatories to the extent such interrogatories require the production of information, answers or documents that is/are (i) shielded from discovery by the attorney-client privilege, the work product doctrine, KRS 131.081(15), KRS 131.190(1), KRS 61.870 through KRS 61.884, the deliberative process privilege, the Privacy Act of 1974, and/or (ii) are irrelevant to application of the Kentucky Open Records Act enacted by the General Assembly to the specific facts of Plaintiff's case.

3.      The Defendants reserve the right to supplement these Responses, as discovery is ongoing.

**Interrogatories Propounded to All PVA Defendants**

**1.**      Identify each person who provided information for your answers to the Interrogatories.

6

**RESPONSE:**

    A.  Response of Blake Robertson, PVA, Owen County:

Myself and counsel.

    B.  Response of Brad McDowell, PVA, Shelby County:

Myself and counsel.

    C.  Response of Jason Neely, PVA, Clark County:

Myself and counsel.

    D.  Response of Jason Scriber, PVA, Henry County:

Myself and counsel.

    E.  Response of Jill Mahoney, PVA, Trimble County:

Myself and counsel.

    F.  Response of Kellie Lang, PVA, Franklin County

Myself; Deputy PVA, Jill Johnson; and counsel.

    **2.**    Identify each individual with personal knowledge of discoverable matters relating to the affirmative defenses asserted in your Answer to the Complaint.

**RESPONSE:**

    A.    Response of Blake Robertson, PVA, Owen County:

See Defendants' Rule 26 Initial Disclosures served on Plaintiff on July 30, 2020.

    B.    Response of Brad McDowell, PVA, Shelby County:

See Defendants' Rule 26 Initial Disclosures served on Plaintiff on July 30, 2020.

    C.    Response of Jason Neely, PVA, Clark County:

See Defendants' Rule 26 Initial Disclosures served on Plaintiff on July 30, 2020.

    D.    Response of Jason Scriber, PVA, Henry County:

See Defendants' Rule 26 Initial Disclosures served on Plaintiff on July 30, 2020.

    E.    Response of Jill Mahoney, PVA, Trimble County:

See Defendants' Rule 26 Initial Disclosures served on Plaintiff on July 30, 2020.

G.  Response of Kellie Lang, PVA, Franklin County:

See Defendants' Rule 26 Initial Disclosures served on Plaintiff on July 30, 2020.

**3.**     Identify each person you expect to call as an expert witness at trial within the meaning of Fed. R. Civ. P. 26; the subject matter on which the person is expected to testify; the substance of the facts and opinions to which the expert expected to testify; and a summary of the grounds for each opinion the expert intends to offer at trial.

**RESPONSE:**

A.     Response of Blake Robertson, PVA, Owen County:

I have not determined whether I will call an expert witness at trial.  However, if I determine that I will use an expert witness, this response will be promptly supplemented and all necessary disclosures will be made pursuant to Rule 26(a)(2) and (b)(4).

B.     Response of Brad McDowell, PVA, Shelby County:

I have not determined whether I will call an expert witness at trial.  However, if I determine that I will use an expert witness, this response will be promptly supplemented and all necessary disclosures will be made pursuant to Rule 26(a)(2) and (b)(4).

C.     Response of Jason Neely, PVA, Clark County:

I have not determined whether I will call an expert witness at trial.  However, if I determine that I will use an expert witness, this response will be promptly supplemented and all necessary disclosures will be made pursuant to Rule 26(a)(2) and (b)(4).

D.     Response of Jason Scriber, PVA, Henry County:

I have not determined whether I will call an expert witness at trial.  However, if I determine that I will use an expert witness, this response will be promptly supplemented and all necessary disclosures will be made pursuant to Rule 26(a)(2) and (b)(4).

E.     Response of Jill Mahoney, PVA, Trimble County:

I have not determined whether I will call an expert witness at trial.  However, if I determine that I will use an expert witness, this response will be promptly supplemented and all necessary disclosures will be made pursuant to Rule 26(a)(2) and (b)(4).

F.     Response of Kellie Lang, PVA, Franklin County:

I have not determined whether I will call an expert witness at trial.  However, if I determine that I will use an expert witness, this response will be promptly supplemented and all necessary disclosures will be made pursuant to Rule 26(a)(2) and (b)(4).

**4.**     Identify each person you expect to call as a lay witness at any trial in this matter and the subject-matter of the person's expected testimony.

**RESPONSE:**

     A.     Response of Blake Robertson, PVA, Owen County:

I have not yet determined which persons, if any, I intend to call to testify at the trial in this matter. It may be assumed that I may call myself to testify as a fact witness and/or as a rebuttal witness. If I determine that I will call any other witnesses, this response will be promptly supplemented.

     B.     Response of Brad McDowell, PVA, Shelby County:

I have not yet determined which persons, if any, I intend to call to testify at the trial in this matter. It may be assumed that I may call myself to testify as a fact witness and/or as a rebuttal witness. If I determine that I will call any other witnesses, this response will be promptly supplemented.

     C.     Response of Jason Neely, PVA, Clark County:

I have not yet determined which persons, if any, I intend to call to testify at the trial in this matter. It may be assumed that I may call myself to testify as a fact witness and/or as a rebuttal witness. If I determine that I will call any other witnesses, this response will be promptly supplemented.

     D.     Response of Jason Scriber, PVA, Henry County:

I have not yet determined which persons, if any, I intend to call to testify at the trial in this matter. It may be assumed that I may call myself to testify as a fact witness and/or as a rebuttal witness. If I determine that I will call any other witnesses, this response will be promptly supplemented.

     E.     Response of Jill Mahoney, PVA, Trimble County:

I have not yet determined which persons, if any, I intend to call to testify at the trial in this matter. It may be assumed that I may call myself to testify as a fact witness and/or as a rebuttal witness. If I determine that I will call any other witnesses, this response will be promptly supplemented.

     F.     Response of Kellie Lang, PVA, Franklin County:

I have not yet determined which persons, if any, I intend to call to testify at the trial in this matter. It may be assumed that I may call myself to testify as a fact witness and/or as a rebuttal witness. If I determine that I will call any other witnesses, this response will be promptly supplemented.

**5.**     Identify each document you expect to introduce as an exhibit at any deposition, hearing, or trial in this matter.

**RESPONSE:**

A.     Response of Blake Robertson, PVA, Owen County:

I have not yet determined which documents I may offer into evidence or submit to the Court for consideration in this matter, at any deposition scheduled herein, or at the trial of this matter. However, it can be assumed that every document filed by either myself or the Plaintiff with the Court and/or produced in the discovery phase of this litigation by any party may be used as evidence at both the depositions and at the trial of this matter. Further, all documents filed by the Plaintiff with myself and/or the other Defendants in this matter may be submitted to the Court, a deponent, or a witness at trial for consideration.

B.     Response of Brad McDowell, PVA, Shelby County:

I have not yet determined which documents I may offer into evidence or submit to the Court for consideration in this matter, at any deposition scheduled herein, or at the trial of this matter. However, it can be assumed that every document filed by either myself or the Plaintiff with the Court and/or produced in the discovery phase of this litigation by any party may be used as evidence at both the depositions and at the trial of this matter. Further, all documents filed by the Plaintiff with myself and/or the other Defendants in this matter may be submitted to the Court, a deponent, or a witness at trial for consideration.

C.     Response of Jason Neely, PVA, Clark County:

I have not yet determined which documents I may offer into evidence or submit to the Court for consideration in this matter, at any deposition scheduled herein, or at the trial of this matter. However, it can be assumed that every document filed by either myself or the Plaintiff with the Court and/or produced in the discovery phase of this litigation by any party may be used as evidence at both the depositions and at the trial of this matter. Further, all documents filed by the Plaintiff with myself and/or the other Defendants in this matter may be submitted to the Court, a deponent, or a witness at trial for consideration.

D.     Response of Jason Scriber, PVA, Henry County:

I have not yet determined which documents I may offer into evidence or submit to the Court for consideration in this matter, at any deposition scheduled herein, or at the trial of this matter. However, it can be assumed that every document filed by either myself or the Plaintiff with the Court and/or produced in the discovery phase of this litigation by any party may be used as evidence at both the depositions and at the trial of this matter. Further, all documents filed by the Plaintiff with myself and/or the other Defendants in this matter may be submitted to the Court, a deponent, or a witness at trial for consideration.

E.      Response of Jill Mahoney, PVA, Trimble County:

I have not yet determined which documents I may offer into evidence or submit to the Court for consideration in this matter, at any deposition scheduled herein, or at the trial of this matter. However, it can be assumed that every document filed by either myself or the Plaintiff with the Court and/or produced in the discovery phase of this litigation by any party may be used as evidence at both the depositions and at the trial of this matter. Further, all documents filed by the Plaintiff with myself and/or the other Defendants in this matter may be submitted to the Court, a deponent, or a witness at trial for consideration.

F.      Response of Kellie Lang, PVA, Franklin County:

I have not yet determined which documents I may offer into evidence or submit to the Court for consideration in this matter, at any deposition scheduled herein, or at the trial of this matter. However, it can be assumed that every document filed by either myself or the Plaintiff with the Court and/or produced in the discovery phase of this litigation by any party may be used as evidence at both the depositions and at the trial of this matter. Further, all documents filed by the Plaintiff with myself and/or the other Defendants in this matter may be submitted to the Court, a deponent, or a witness at trial for consideration.

**6.**     For every person who, within the last three years, has made a request pursuant to the Kentucky ORA for the same records as, or records substantially similar to, those requested by the Zillow Request made to your office, provide the following:

> i.      the name of the requester;
>
> ii.     the records requested;
>
> iii.    the amount the requester was quoted and/or charged for the records sought (if any); and
>
> iv.     the requester's contact information.

**RESPONSE:**

**Objection**. The term "substantially similar to" is vague, ambiguous and unclear. Some of the PVA Defendants did not have any Open Records Act requests that were exactly the same as Zillow's April 25, 2019 requests to all of the Defendant PVAs, which included requests for all of the data sets maintained by the PVAs. See, e.g., Exhibit D to Zillow's Complaint (April 25, 2019 request letter to Brad McDowell). Without waiving this objection, and out of an abundance of caution, the PVAs have responded listing all of the Open Records Act requests they received during the indicated time period.

A.      Response of Blake Robertson, PVA, Owen County:

i.      CoreLogic Tax Services LLC ("CoreLogic") 2018, 2019, and 2020.
        Black Knight Real Estate Data Solutions, LLC ("Black Knight") 2018, 2019, and 2020.

ii.      CoreLogic: Tax roll bill file, exempt properties
Black Knight: Tax roll bill file, exempt properties

iii.     CoreLogic: 2018: $1,905.95 and $1,868.45; 2019: $1,874.30 and $1,913; 2020: $3,630.05

Black Knight: 2018: $1,905.95; 2019: $1,913; 2020: $1,920.35

iv.     Black Knight, Sara Fazal, 1900 NW Expressway, Suite 930, Oklahoma City, OK 73118, (405) 546-3112, Sara.fazal@bkfs.com

Black Knight, Chuck Crawford, 1900 NW Expressway, Suite 930, Oklahoma City, OK 73118, (405) 546-3112

CoreLogic Tax Services LLC, 2500 Westfield Dr., Suite 102, Elgin, IL 60124

CoreLogic Tax Services LLC, 40 Pacifica Ave., Suite 900, Irvine, CA 92618

B.     Response of Brad McDowell, PVA, Shelby County:

i.      CoreLogic 2018 and 2019
Black Knight 2018 and 2019

ii.     CoreLogic: Property characteristics, entire county and tax bill file both years.
Black Knight: Property characteristics, entire county and tax bill file both years.

iii.     CoreLogic: 2018: $ 41,826.75 and $3,413.70; 2019: $ 40,746.65 and $3,577.30

Black Knight: 2018: $39,079.95 and $3,413.70; 2019: $41,446.30 and $3,577.30

iv.     Black Knight, Sara Fazal, 1900 NW Expressway, Suite 930, Oklahoma City, OK 73118, (405) 546-3112, Sara.fazal@bkfs.com

CoreLogic, Irene Eaton, 1637 NW 136th Ave., Suite G-100, Sunrise, FL 33323, (800) 327-1072

C.     Response of Jason Neely, PVA, Clark County:

i.      CoreLogic 2018, 2019 and 2020
Black Knight 2019 and 2020
Geenex Solar 2018
Wells Fargo 2018
KY American Water 2019
Log Building Maintenance and Restoration 2019

ii.    CoreLogic: Tax Roll, Exempt Roll, Sales File
Black Knight: Tax roll;
Geenex: GIS data
Wells Fargo: Tax roll
KY American Water: GIS data
Log Building Maintenance and Restoration: mailing list

iii.    CoreLogic: 2018: $3,846; 2019 $3,532.65; 2020 $3,630.05
Black Knight: 2019 $3,076.20; 2020 contract has not been signed, data just requested
Greenex Solar: $3,705
Wells Fargo: $3,196;
Ky. American Water: $4,362;
Log Building Maintenance and Restoration: $224

iv.    Chuck Crawford, Black Knight, 1900 NW Expressway Suite 930, Oklahoma City, OK 73118, (405) 546-3112

Juergen Fehr, Geenex Solar, 1910 Abbot St Suite 200, Charlotte, NC 28203, (980) 737-0090

Wells Fargo, 1 Home Campus, MAC F2302-037, Des Moines, IA 50328, (800) 499-4829

Ky. American Water, 2300 Richmond Rd, Lexington, KY 40502, (859) 269-2386

Cassandra Chubb, Log Building Maintenance and Restoration, 657 South Front St., Milton, PA 17847, (800) 284-6520

Vickie Van Duys, CoreLogic, 1625 NW 136th Ave, suite E-100, Sunrise, FL 33323, (954) 321-7591

D.    Response of Jason Scriber, PVA, Henry County:

i.    CoreLogic Spatial Solutions, LLC ("CoreLogic")
Black Knight Real Estate Data Solutions LLC ("Black Knight")
Sage Information Services

ii.    CoreLogic:
2020 (K. DaCosta) - Entire database, changes only, 8716 parcels; tax bill file, 8985 parcels
2020 (B. Stout) - Tax bill file, 8985 parcels
2019 (K. DaCosta) - Entire database, changes only, 8298 parcels; tax bill file, 9042 parcels
2019 (B. Stout) - Tax bill file, 9042 parcels

2018 (C. Allums) - Entire database, changes only, 6907 parcels; tax bill file, 9016 parcels
2018 (B. Stout) - Tax bill file, 9016 parcels

Black Knight:
2020 - Tax bill file, 8985 parcels
2019 - Entire database, 20,401 parcels; tax bill file, 9042 parcels
2018 - Tax bill file, 9016 parcels

Sage Information Services:
2018 – Entire database, 19,776 parcels; GIS parcel layer, 9228 parcels

iii. CoreLogic: (2020 – DaCosta) entire database, changes only - $9,425.50; tax bill file - $1,847.75; (2020 – Stout) tax bill file - $1,847.75; (2019 – DaCosta) entire database, changes only - $9,766.05; tax bill file - $1,856.30; (2019 – Stout) tax bill file - $1,856.30; (2018 – Allums) entire database, changes only - $8,555.05; tax bill file - $1,852.40; (2018 – Stout) tax bill file - $1,852.40

Black Knight: (2020) tax bill file - $1,847.75; (2019) entire database - $23,880.85; (2018) tax bill file - $1,852.40

Sage Information Services: Entire database - $23,406.60; GIS Parcel Layer - $3,741.20

iv. CoreLogic Solutions, Karen DaCosta, 1625 NW 136th Ave., Sunrise, FL 33323 (954) 321-7577, KDaCosta@corelogic.com; Cynthia Allums, CAllums@corelogic.com; Bo Stout, (847) 783-7361, kstout@corelogic.com

Sage Information Services, Roger W. Hurlbert, 136 Riverwood Dr., Jefferson City, MO 65109

Black Knight, Sara Fazal, (405) 546-3112, Sara.fazal@bkfs.com

E. Response of Jill Mahoney, PVA, Trimble County:

i. Black Knight Real Estate Data Solutions LLC
PTX-Tech
Fast4ward Capital Group
CoreLogic Spatial Solutions, LLC
First American Data Co.

ii. Black Knight Real Estate Data Solutions LLC: Tax roll - 5376 parcels
PTX-Tech: Tax roll - 5376 parcels
Fast4ward Capital Group: Tax roll - 5948 parcels
CoreLogic Spatial Solutions, LLC: Tax roll - 5948 parcels; Tax roll - 5376 parcels; Tax roll - 5709 parcels; Various - 48,303; Various - 46,819; Various - 50,766

First American Data Co.: Various - 49,127

iii.    Black Knight Real Estate Data Solutions LLC: $1306.40 (.20 per parcel, first 5000 + .15 per parcel next 10,000) + $250.00 request fee

PTX-Tech: $1306.40 (.20 per parcel, first 5000 + .15 per parcel next 10,000) + $250.00 request fee

Fast4ward Capital Group: $1392.20 (.20 per parcel, first 5000 + .15 per parcel next 10,000) + $250.00 request fee

CoreLogic Spatial Solutions, LLC (2020): $1392.20 (.20 per parcel, first 5000 + .15 per parcel next 10,000) + $250.00 (Request fee)

CoreLogic Spatial Solutions, LLC (2018): $23,396.10 (.15 per parcel exempt property 170 units; 1.75 per parcel first building 8419 units, .70 per each extra building 2503 units, $250 request fee; .30 per parcel, first 1000 real estate sales records 1000 units, .15 next 5000 records 5000 units, .05 each record after 5000th record 7719 units, $150 request fee; .20 first 5000 units real property records 5000 units, .15 next 5000 records 1148 units, $250 request fee; .20 first 5000 real estate assessment records 5000 units; .15 next 10,000 records 7220 units, $250 request fee; .20 first 5000 accounts tax roll 5000 units, .15 next 10,000 accounts 294 units; $250 request fee)

CoreLogic Spatial Solutions, LLC (2019): $23,396.10 (.15 per parcel exempt property 170 units; 1.75 per parcel first building 8566 units, .70 per each extra building 2568 units, $250 request fee; .30 per parcel, first 1000 real estate sales records 1000 units, .15 next 5000 records 5000 units, .05 each record after 5000th record 6290 units, $150 request fee; .20 first 5000 units real property records 5000 units, .15 next 5000 records 1006 units, $250 request fee; .20 first 5000 real estate assessment records 5000 units; .15 next 10,000 records 6925 units, $250 request fee; .20 first 5000 accounts tax roll 5000 units, .15 next 10,000 accounts 294 units; $250 request fee)

CoreLogic Spatial Solutions, LLC (2020): $24,171.60 (.15 per parcel exempt property 1 unit; 1.75 per parcel first building 8775 units, .70 per each extra building 2792 units, $250 request fee; .30 per parcel, first 1000 real estate sales records 1000 units, .15 next 5000 records 5000 units, .05 each record after 5000th record 6483 units, $150 request fee; .20 first 5000 units real property records 5000 units, .15 next 5000 records 1006 units, $250 request fee; .20 first 5000 real estate assessment records 5000 units; .15 next 10,000 records 10,000 units, $250 request fee; .20 first 5000 accounts tax roll 5000 units, .15 next 10,000 accounts 709 units; $250 request fee)

First American Data Co.: $23,494.20 (.15 per parcel exempt property 170 units; 1.75 per parcel first building 8419 units, .70 per each extra building 2503 units,

$250 request fee; .30 per parcel, first 1000 real estate sales records 1000 units, .15 next 5000 records 5000 units, .05 each record after 5000th record 7719 units, $150 request fee; .20 first 5000 units real property records 5000 units, .15 next 5000 records 1148 units, $250 request fee; .20 first 5000 real estate assessment records 5000 units; .15 next 10,000 records 7220 units, $250 request fee; .20 first 5000 accounts tax roll 5000 units, .15 next 10,000 accounts 948 units; $250 request fee)

iv.    Black Knight Real Estate Data Solutions LLC, Sara Fazal, Content Acquisition Associate/Data and Analytics Assessor, Sara.fazal@bkfs.com, 1900 NW Expressway, Ste. 930, Oklahoma City, OK  73188

Black Knight Real Estate Data Solutions LLC, Donna Finegan, Content Acquisition/Data and Analytics- Assessor, Donna.finegan@bkfs.com, Maitland Green I,601 S. Lake Destiny Rd. Ste. 405, Maitland, FL  32751

PTX-Tech, Loretta M. Duvall, lduvall@ptxtech.com, (404) 800-5187 ext. 1023

Fast4ward Capital Group, Krista Boretti, Intern, Kristaboretti3@gmail.com, (410) 924-9751

CoreLogic, Cynthia Allums, Business Liaison, CAllums@corelogic.com, 1625 NW 136th Ave., Ste. E-100, Sunrise, FL  33323

CoreLogic, Stephen Jones, Associate, Data Acquisition, stjones@corelogic.com, 1625 NW 136the Ave., Ste. E-100, Sunrise, FL  33323

CoreLogic, Kenneth Bo Stout, Sr. Associate, Data Acquisition Support Tax Data Operations, kstout@corelogic.com, 2500 Westfield Dr. Ste. 102, Elgin, IL  60124

First American Data Co., Hazen Buckley, Data Acquisition, 4 First American Way, Santa Ana, CA 92707, (800) 525-3633

F.    Response of Kellie Lang, PVA, Franklin County:

i.    LGE-KU
Black Knight Data & Analytics LLC
Black Knight Real Estate Data Solutions
HMB Professional Engineers, Inc. ("HMB")
CoreLogic Spatial Solutions, LLC
Info-Pro Lender Services
Kentucky Nature Preserves
Kentucky Wired DB LLC
Lareta, LLC
Palmer Engineering
HMB Professional Engineers Inc.
Wells Fargo Home Mortgage

ii.     LGE-KU - 111 parcels
Black Knight Data & Analytics LLC - 23,763 Tax bills (2020)
Black Knight Real Estate Data Solutions - 23,528 Tax bills (2018); 23,614 Tax bills (2019)
HMB - 858 parcels
CoreLogic Spatial Solutions, LLC - 214 parcels; 23,528 Tax bills (2018); 23,614 Tax bills (2019); 23,763 Tax bills (2020)
Info-Pro - 56 parcels; 23,614 Tax bills (2019); 23,763 Tax bills (2020)
Kentucky Nature Preserves - 151 parcels
Kentucky Wired DB LLC - 18 parcels
Lareta, LLC - 23,528 Tax bills (2018); 23,614 Tax bills (2019)
Palmer Engineering - 19 parcels
HMB Professional Engineers Inc. - 368 parcels
Wells Fargo - 23,528 Tax bills (2018); 23,614 Tax bills (2019); 23,763 Tax bills (2020)

iii.    LGE-KU - $44.40 (.40 per parcel) + $50.00 (Request fee)=$94.50

Black Knight - $3,602.80 (2018 tax bills); $3,611.40 (2019 tax bills); $3,626.30 (2020 tax bills) (tax bill requests are billed as follows: 5,000 parcels at .20 each; 10,000 parcels at .15 each and 8528 (2018), 8614 (2019), and 8763 (2020) at .10 per parcel plus $250 request fee

HMB - $343.20 + 50.00 = $393.20

Info-Pro - $3,611.40 (2019 tax bills); $3,626.30 (2020 tax bills)

CoreLogic - $85.60 + 50.00 = $135.60; $3,602.80 (2018 tax bills); $3,611.40 (2019 tax bills); $3,626.30 (2020 tax bills)

Kentucky Nature Preserves - $60.40 + 50.00 = $110.40

Kentucky Wired DB LLC - $7.20 + 50.00 = $57.20

Palmer Engineering - $7.60 + 50.00 = $57.60

HMB - $147.20 + 50.00 = $197.20

Wells Fargo - $3,602.80 (2018 tax bills); $3,611.40 (2019 tax bills); $3,626.30 (2020 tax bills)

iv.     LGE-KU, Roger Finnie, Sr. Transmission Project Coordinator, One Quality Street Lexington, KY 40507, (859) 367-5659, Roger.Finnie@lge-ku.com

HMB Professional Engineers, Inc., Mitchell Green, Principal in Charge, 3 HMB Circle, U.S. 460, Frankfort, KY 40601, (502) 695-9800, mgreen@hmbpe.com

CoreLogic Spatial Solutions, LLC, Ramon Gilberto, AP Disbursement, 40 Pacifica, Ste. 900, Irvine, CA 92618, (800) 447-1772 ext. 3266, gramon@corelogic.com

Info-Pro Lender Services, Merry Boede, 1325 S. Main St., Fond du Lac, WI 54935, (920) 322-4156

Kentucky Nature Preserves, J. Brent Frazier, 300 Sower Blvd., Frankfort, KY 40601

Kentucky Wired DB LLC, Ayman Wakas, GIS Specialist 2, Telecommunications, Black and Veatch, 6800 W. 115th St., Ste. 292, Overland Park, KS 66211, (913) 458-6954, Wakasa@BV.com

Lareta, LLC, Patrick Grimm, 1123 Park View Dr., Covina, CA 91724, (800) 537-3821 ext. 1630

Palmer Engineering, Andrew Brown, 541 Buttermilk Pike, Ste. 108, Crescent Springs, KY 41017

HMB Professional Engineers Inc., Jeff Reynolds, P.E., 3 HMB Circle, US 460, Frankfort, KY 40601, (502) 680-1735

Wells Fargo Home Mortgage, Bryan Cabrera, 1 Home Campus, Des Moines, IA 50328, (800) 499-4829 ext. 5153986773, bryan.cabrera@wellsfargo.com

Wells Fargo Home Mortgage, Alyssa Ryan, 1 Home Campus F2302-037, West Des Moines, IA 50328, (515) 398-6664

**7.** State what requirements a requester seeking public records from you for a commercial purpose must satisfy.

**RESPONSE:**

A.  Response of Blake Robertson, PVA, Owen County:

**Objection**. The interrogatory is vague and confusing, as it is unclear what is meant by "must satisfy." Without waiving this objection, in order to receive the requested records a requester seeking public records for a commercial purpose from the Owen County PVA's office must fill out Department of Revenue Form 62A030, "Request for Reproduction of PVA Public Records and Contract for Commercial Users," and pay the fees applied to the subject request via Attachment A to Form 62A030 and the Department of Revenue's "PVA Open Records Commercial Fee Guidelines," Form 62FO15, as authorized by KRS 61.870 to 61.884, including KRS 61.874(4)(a)-(c), which provides that:

(a)  Unless an enactment of the General Assembly prohibits the disclosure of public records to persons who intend to use them for commercial purposes, if copies of nonexempt public records are requested for commercial purposes, the public agency may establish a reasonable fee.

(b) The public agency from which copies of nonexempt public records are requested for a commercial purpose may require a certified statement from the requestor stating the commercial purpose for which they shall be used, and may require the requestor to enter into a contract with the agency. The contract shall permit use of the public records for the stated commercial purpose for a specified fee.

(c) The fee provided for in subsection (a) of this section may be based on one or both of the following:

1. Cost to the public agency of media, mechanical processing, and staff required to produce a copy of the public record or records;

2. Cost to the public agency of the creation, purchase, or other acquisition of the public records.

B.      Response of Brad McDowell, PVA, Shelby County:

My response is the same as Mr. Robertson's Response at 7.A, above.

C.      Response of Jason Neely, PVA, Clark County:

My response is the same as Mr. Robertson's Response at 7.A, above.

D.      Response of Jason Scriber, PVA, Henry County:

My response is the same as Mr. Robertson's Response at 7.A, above.

E.      Response of Jill Mahoney, PVA, Trimble County:

My response is the same as Mr. Robertson's Response at 7.A, above.

F.      Response of Kellie Lang, PVA, Franklin County:

My response is the same as Mr. Robertson's Response at 7.A, above.


**8.**     Describe the actual costs your office would incur to provide the records sought by the Zillow Request made to your office. In answering this interrogatory, you are asked to itemize each cost and provide a description of the cost, the dollar amount, the reason your office would need to incur the cost to provide the records, and for any staff time, the names and titles of the staffers, the time required to fulfill the request, and the staff member's hourly rate.

**RESPONSE:**

A.    Response of Jason Neely, PVA, Clark County

i.    KRS 61.874(4) authorizes the collection of a "reasonable fee" for the provision of nonexempt public records that are "requested for a commercial purpose" defined by KRS 61.870(4)(a) as: "the direct or indirect use of any part of a public record or records, in any form, for sale, resale, solicitation, rent, or lease of a service, or any use by which the user expects a profit either through commission, salary, or fee." KRS 61.874(4)(c) expressly authorizes the collection of a fee that offsets all costs to my office for all of the following: "media, mechanical processing, and staff required to produce a copy of the public record or records;" and the "creation, purchase, or other acquisition of the public records." The fee quote issued to Zillow for its April 25, 2019 Open Records request as a commercial purpose requester represents both the actual total costs for media, mechanical processing, and staff required to produce a copy of the public records requested and a proportional amount of the actual total costs to my office for creating, purchasing, or otherwise acquiring the requested data.

The fees under the PVA Open Records Commercial Fee Guidelines are inclusive of the estimated costs to my office for the media, mechanical processing, and staff required to produce a copy of the public records, as well as all costs incurred by my office to create, purchase, or otherwise acquire the data and information used to create the public records. These costs include computers; tax roll software and other software licenses and purchases, including the ESRI Enterprise License Agreement (GIS software); printers; plotters; GPS USB devices; scanners; aerial photography; internet access fees, and GIS training.

ii.    The costs incurred by my office in creating the data requested by Plaintiff include the personnel, materials, vehicle mileage, and other costs for myself and my five (5) deputy PVAs who spend approximately ninety percent (90%) of each work day gathering, processing, and creating assessment data and inspecting one fourth (1/4) of all of the parcels of real property in Clark County each year pursuant to KRS 132.690. That statute provides, in pertinent part that:

> (a) Each parcel of taxable real property or interest therein subject to assessment by the property valuation administrator shall be revalued during each year of each term of office by the property valuation administrator at its fair cash value in accordance with standards and procedures prescribed by the department and shall be examined no less than once every four (4) years by the property valuation administrator.
> (b) For any real property upon which any improvements have been made since the prior examination, the property valuation administrator or his or her deputy shall perform an on-site, in-person visual examination of the real property and the improvements. The examination shall be conducted in a manner approved by the department and for the purpose of gathering any necessary information related to the characteristics of the real property and the improvements for purposes of assessing their value. Any subsequent

examination of the real property for purposes of assessing its value by the property valuation administrator or his or her deputy shall be performed by:

1. On-site, in-person visual examination;

2. Use of digital imaging technology as defined by the International Association of Assessing Officers Standard on Mass Appraisal of Real Property; or

3. Any other examination method approved by the department.

A reasonable approximation of the actual cost to my office of all work that my employees and I do in gathering, processing, and creating assessment data can be calculated by multiplying the estimated 90% of time spent on those activities by my office's annual budget for personnel salaries and benefits ($704,335 for FY 2020/2021) and operating expenses ($200,343 FY 2020/2021): 90% x ($704,335+ $200,343) = $814,210.

Deputy PVAs employed by the Clark County PVA's office and their equivalent "hourly rates"[1] are:

Dane Garber, Chief Deputy, $4,743.36/month ($31.62/hr.)
James Tegge, Real Property Assessor, $3,364.38/ month ($22.43/hr.)
Mary Davis, Chief Property Assessor Clerk, $3,062.54/month ($20.42/hr.)
Whitney Scribner, Real Property Assessor Sr., $2,670.18/month ($17.80/hr.)
Brent Chapman, Customer Service Rep, $2,206.70/month ($14.71/hr.)

Note that these monthly and hourly pay figures do not include other employee benefits such as insurance and retirement, which make up a substantial portion of my office's annual budget for personnel salaries.

As to your request to itemize each cost which comprised the $31,055.50 quote issued to Zillow for its April 25, 2019 Open Records request as a commercial purpose requester, in my April 26, 2019 email to Ms. Noto, the PVA Open Records Commercial Fee Guidelines, Revenue 62FO15 sets the fee for "Bulk Rate for Property Characteristics – Entire County" at "$1.75 per property (no more than one building)" and "$0.70 each additional building." The total was comprised of 17,746 units at the $1.75 rate. I did not calculate an additional building fee ($0.70 for each additional building) for the quote issued to Zillow.

B.      Response of Blake Robertson, PVA, Owen County:

My response is the same as Mr. Neely's Response at 8.A.i, above. My response with regard to the cost figures applicable to the Owen County PVA office is as follows.

ii.      The costs incurred by my office in creating the data requested by Plaintiff include the personnel, materials, vehicle mileage, and other costs for myself and my two (2) deputy

---

[1] Deputy PVAs are salaried employees. The equivalent hourly rate is calculated as their monthly salary divided by the number of hours worked (37.5 hours per week; 150 hours per month).

PVAs who spend approximately eighty percent (80%) of each work day gathering, processing, and creating assessment data and inspecting one fourth (1/4) of all of the parcels of real property in Owen County each year pursuant to KRS 132.690.

A reasonable approximation of the actual cost to my office of all work that my employees and I do in gathering, processing, and creating assessment data can be calculated by multiplying the estimated 80% of time spent on those activities by my office's annual budget for personnel salaries and benefits ($347,819 for FY 2020/2021) and operating expenses ($59,472 FY 2020/2021): 80% x ($347,819 + $59,472) = $325,833.

Deputy PVAs employed by the Owen County PVA's office and their equivalent "hourly rates" are:

> Jane Ann Johnson, Deputy PVA, $2,670.20/month ($17.80/hr.)
> Jane Zula Blackwell, Deputy PVA, $2,111.50/month ($14.08/hr.)

Note that these monthly and hourly pay figures do not include other employee benefits such as insurance and retirement, which make up a substantial portion of my office's annual budget for personnel salaries.

As to your request to itemize each cost which comprised the fee quoted to Zillow for its April 25, 2019 request, the quote issued to Zillow by the Owen Co. PVA office was comprised of two fees: the $1.75 bulk rate fee ("Bulk Rate for Property Characteristics – Entire County") multiplied by 9,035 parcels ($15,811.25) and the $0.70 "each additional building" fee multiplied by 4,414 units ($3,089.80), for a total of $18,901.05.

C.      Response of Brad McDowell, PVA, Shelby County:

My response is the same as Mr. Neely's Response at 8.A.i, above. My response with regard to the cost figures applicable to the Shelby County PVA office is as follows.

ii.      The costs incurred by my office in creating the data requested by Plaintiff include the personnel, materials, vehicle mileage, and other costs for myself and my four (4) deputy PVAs who spend our workdays gathering, processing, and creating assessment data and inspecting one fourth (1/4) of all of the parcels of real property in Shelby County each year pursuant to KRS 132.690. I spend approximately seventy percent (70%) of each workday on such assessment data work. My field person, who measures properties and collects property characteristics, spends approximately 75-80% of each workday on such assessment data work. My deputy who does our GIS mapping spends approximately sixty percent (60%) of each workday on such assessment data work. I also have 2 other deputies who spend approximately fifty percent (50%) of each workday on such assessment data work. The average of these percentages is sixty-two percent (62%).

A reasonable approximation of the actual cost to my office of all work that my employees and I do in gathering, processing, and creating assessment data can be calculated by multiplying the estimated 62% of time spent on those activities by my office's annual

budget for personnel salaries and benefits ($347,819 for FY 2020/2021) and operating expenses ($59,472 FY 2020/2021): 62% x ($347,819 + $59,472) = $325,833.

Deputy PVAs employed by the Shelby County PVA's office and their equivalent "hourly rates" are:

> Marla Ethington, Chief Deputy, $3,546.86/month ($23.65/hr.)
> Elizabeth Clark, Mapping/GIS Tech. Supervisor, $2,933.04/month ($19.55)
> Michelle McKinney, General Deputy, $2,767.26 ($18.45/hr.)
> Stewart Shirley, Field Rep. Principal, $2,935.44/month ($19.57/hr.)

Note that these monthly and hourly pay figures do not include other employee benefits such as insurance and retirement, which make up a substantial portion of my office's annual budget for personnel salaries.

As to your request to itemize each cost which comprised the fee quoted to Zillow for its April 25, 2019 request, the May 1, 2019 invoice issued to Zillow by the Shelby Co. PVA office was comprised of two fees: the $1.75 bulk rate fee ("Bulk Rate for Property Characteristics – Entire County") multiplied by 21,613 parcels ($37,822.75) and the $0.70 "each additional building" fee multiplied by 4,177 units ($2,923.90), for a total of $40,746.65.

D.      Response of Jason Scriber, PVA, Henry County:

My response is the same as Mr. Neely's Response at 8.A.i. above. My response with regard to the cost figures applicable to the Henry County PVA office is as follows.

ii.      The costs incurred by my office in creating the data requested by Plaintiff include the personnel, materials, vehicle mileage, and other costs for myself and my three (3) deputy PVAs who spend approximately ninety percent (85%) of each work day gathering, processing, and creating assessment data and inspecting one fourth (1/4) of all of the parcels of real property in Henry County each year pursuant to KRS 132.690.

A reasonable approximation of the actual cost to my office of all work that my employees and I do in gathering, processing, and creating assessment data can be calculated by multiplying the estimated 85% of time spent on those activities by my office's annual budget for personnel salaries and benefits ($462,616 for FY 2020/2021) and operating expenses ($123,100 FY 2020/2021): 85% x ($462,616 + $123,100) = $497,859.

Deputy PVAs employed by the Henry County PVA's office and their equivalent "hourly rates" are:

> Elizabeth Warner, Real Property Assessor, $2,340.50/month ($15.60 per hr.)
> Cherie Sentelle, Chief Property Assessment Clerk, $2,831.75/month ($18.88 per hr.)
> Joseph Wilson, Chief Deputy PVA, $3,055.58/month ($20.37 per hr.).

Note that these monthly and hourly pay figures do not include other employee benefits such as insurance and retirement, which make up a substantial portion of my office's annual budget for personnel salaries.

As to your request to itemize each cost which comprised the quote issued to Zillow for its April 25, 2019 Open Records request as a commercial purpose requester, I did not issue a quote to Zillow for its request. I informed Zillow's representative that there would be a fee for the request, but I did not provide her a quote, because Zillow never signed and returned the contract.

E.      Response of Jill Mahoney, PVA, Trimble County:

My response is the same as Mr. Neely's Response at 8.A.i, above. My response with regard to the cost figures applicable to the Trimble County PVA office is as follows.

ii.      The costs incurred by my office in creating the data requested by Plaintiff include the personnel, materials, vehicle mileage, and other costs for myself and my chief deputy PVA who spends approximately ninety-five percent (95%) of each work day gathering, processing, and creating assessment data and inspecting one fourth (1/4) of all of the parcels of real property in Trimble County each year pursuant to KRS 132.690. I spend approximately seventy-five percent (75%) of my workday on such assessment data work, and I have a general deputy who spends approximately twenty-five percent (25%) of her time on such assessment data work. The average of these percentages is sixty-five percent (65%).

A reasonable approximation of the actual cost to my office of all work that my employees and I do in gathering, processing, and creating assessment data can be calculated by multiplying the estimated 65% of time spent on those activities by my office's annual budget for personnel salaries and benefits ($316,530 for FY 2020/2021) and operating expenses ($52,400 FY 2020/2021): 65% x ($316,530 + $52,400) = $239,805.

Deputy PVAs employed by the Trimble County PVA's office and their equivalent "hourly rates" are:

> Shelia A. Robertson, Chief Deputy, $19.02/ hr.[2]
> Vanessa L Woods, General Deputy, $2106.62/month ($14.04/hr.)

Note that these monthly and hourly pay figures do not include other employee benefits such as insurance and retirement, which make up a substantial portion of my office's annual budget for personnel salaries.

As to your request to itemize each cost which comprised the fee quoted to Zillow for its April 25, 2019 request, my office drafted six (6) invoices totaling $23,494.20 for six (6) different data set requests for data regarding 49,127 total parcels. These requests were billed as follows: (a) $0.15 per parcel exempt property 170 units = $25.50; (b) $1.75 per

---

[2] Ms. Robertson is part-time. Her hours vary from month to month, and she cannot work over 99 hours in any month.

parcel first building 8419 units, $0.70 per each extra building 2503 units, $250 request fee = $16,735.35; (c) $0.30 per parcel, first 1000 real estate sales records 1000 units, $0.15 next 5000 records 5000 units, $0.05 each record after 5000th record 7719 units, $150 request fee $1,585.95; (d) $0.20 first 5000 units real property records 5000 units, $0.15 next 5000 records 1148 units, $250 request fee = $1,422.20; (e) $0.20 first 5000 real estate assessment records 5000 units; $0.15 next 10,000 records 7220 units, $250 request fee = $2,333; and (f) $0.20 first 5000 accounts tax roll 5000 units, $0.15 next 10,000 accounts 948 units; $250 request fee = $1,392.20. Note that the $23,494.20 total is the same as the total fees for the same data sets requested by First American Data Co. in 2019. See response to Interrogatory 6(iii) above.

F.      Response of Kellie Lang, PVA, Franklin County:

My response is the same as Mr. Neely's Response at 8.A.i, above. My response with regard to the cost figures applicable to the Franklin County PVA office is as follows.

ii.      The costs incurred by my office in creating the data requested by Plaintiff include the personnel, materials, vehicle mileage, and other costs for myself and my five (5) deputy PVAs who spend approximately ninety percent (90%) of each work day gathering, processing, and creating assessment data and inspecting one fourth (1/4) of all of the parcels of real property in Franklin County each year pursuant to KRS 132.690.

A reasonable approximation of the actual cost to my office of all work that my employees and I do in gathering, processing, and creating assessment data can be calculated by multiplying the estimated 90% of time spent on those activities by my office's annual budget for personnel salaries and benefits ($766,789 for FY 2020/2021) and operating expenses ($300,500 FY 2020/2021): 90% x ($766,789 + $300,500) = $960,560.

Deputy PVAs employed by the Franklin County PVA's office and their equivalent "hourly rates" are:

Rebecca (Jill) Johnson, Chief Deputy PVA, $4,280/month ($28.53/ hr.)
Rhonda Brown, Deputy PVA, $3,215.72/month ($21.44/hr.)
Lynn Green, Deputy PVA, $2,990/month ($19.93/hr.)
David Anglin, Field Deputy, $1,437.12/month ($9.58/hr.)
Kim Jefferies, Field Deputy, $1,434.24/month ($9.56/hr.)[3]

Note that these monthly and hourly pay figures do not include other employee benefits such as insurance and retirement, which make up a substantial portion of my office's annual budget for personnel salaries.

As to your request to itemize each cost which comprised the fee quoted to Zillow for its April 25, 2019 request, there were 24,686 parcels in the Franklin County data set as of April 25, 2019. I calculated the $9,924.40 fee quoted to Zillow by multiplying the number of parcels by the $0.40 fee per parcel under the "GIS/Topographic Data (in digital electronic data format)" and adding the

---

[3] Mr. Anglin and Ms. Jefferies are part-time employees, each working 96 hours per month.

$50 per request fee from the same fee category of the PVA Records Commercial Fee Guidelines. 24,686 x $0.40 + $50 = $9,924.40.

**9.** State the dollar amount of fees received by your office for producing public records in response to requests made under the ORA for 2019.

**RESPONSE:**

      A.     Response of Blake Robertson, PVA, Owen County: $5700.30

      B.     Response of Brad McDowell, PVA, Shelby County: $45,023.60

      C.     Response of Jason Neely, PVA, Clark County: $14,271.05

      D.     Response of Jason Scriber, PVA, Henry County: $32,878.96

      E.     Response of Jill Mahoney, PVA, Trimble County: $9,148.85

      F.     Response of Kellie Lang, PVA, Franklin County: $335.20

**10.** Describe the factors you relied upon when you determined that Zillow's Request was made for a "commercial purpose" within the meaning of KRS 61.870(4)(a).

**RESPONSE:**

      A.     Response of Blake Robertson, PVA, Owen County:

At page 2 of Zillow's April 25, 2019 Open records Request to the Owen County PVA's office, Zillow stated:

> As you may know, Zillow is an online real estate and rental marketplace that provides free access to online property listings, among other services. Zillow intends to make some or all of the information contained in the real property records sought by this request available to users of its website, Zillow.com, free of charge. Zillow generates revenue from, among other sources, the sale of advertising space on Zillow.com, where the information contained in these records will appear. More information about Zillow can be found at https://www.zillow.com/corp/About.htm .

By declaring such information to the Owen County PVA's office in its Open Records request, Zillow self-identified as a commercial purpose requester pursuant to KRS 61.870(4)(a), which defines "commercial purpose" as, "the direct or indirect use of any part of a public record or records, in any form, for sale, resale, solicitation, rent, or lease of a service, or any use by which the user expects a profit either through commission, salary, or fee."

21

Therefore, no other "determination" was necessary by myself or any of my deputy PVAs to identify that Zillow's April 25, 2019 request was for a commercial purpose.

Moreover, the website link, which Zillow provided in its request letter,[4] contains a link to a webpage for "Investors."[5] The "Investors" webpage currently shows that Zillow Group, Inc. ("ZGI"), of which Plaintiff is a subsidiary, made revenues totaling $768 million in the second quarter of 2020, which is revenue derived from their 218 million users per month in the same time period. The website states that:

> Zillow, the top real estate website in the U.S., is building an on-demand real estate experience. Whether selling, buying, renting or financing, customers can turn to Zillow's businesses to find and get into their next home with speed, certainty and ease.
>
> In addition to for-sale and rental listings, Zillow Offers buys and sells homes directly in dozens of markets across the country, allowing sellers control over their timeline. Zillow Home Loans, our affiliate lender, provides our customers with an easy option to get pre-approved and secure financing for their next home purchase.

From the "Investors" webpage, there is a link to "Financials."[6] This webpage contains additional links to ZGI's Securities Exchange Commission ("SEC") filings, including ZGI's Annual Report on Form 10-K for the Fiscal Year Ended December 31, 2018 ("2018 10-K").[7]

ZGI's 2018 10-K contains numerous statements that clearly indicate that Plaintiff is a commercial purpose requester under Kentucky law. Page 116 contains a table which shows that ZGI's total revenues for the year ended December 31, 2018, including revenues from its various products and services, amount to over $1.3 billion, including revenues from: "Premier Agent" ($898,332,000), "Rentals" ($134,587,000), "Mortgages" ($80,046,000), "Other" ($168,224,000), and "Homes" ($52,365,000).

At page 9-10 of the 2018 10-K, ZGI states that:

> Our Zestimate and Rent Zestimate valuations are computed using complex, proprietary algorithms we have developed and refined through years of statistical analysis and technological development.
> A Zestimate is our estimated current market value of a home. We generate Zestimates using a variety of information, including:
> •Physical attributes: location, lot size, square footage, number of bedrooms and bathrooms and many other details.

---

[4] Located online at: https://www.zillow.com/corp/About.htm, last accessed October 26, 2020.

[5] Located online at: https://investors.zillowgroup.com/investors/overview/default.aspx, last accessed Oct. 26, 2020.

[6] Located online at: https://investors.zillowgroup.com/investors/financials/quarterly-results/default.aspx, last accessed October 26, 2020.

[7] Located online at: https://s24.q4cdn.com/723050407/files/doc_financials/quarterly/2018/q4/Q4-2018-Form-10K.pdf#Q42018FORM10-KDOC_HTM_S0216F915E4394ACAB162A5F535A28E9A, last accessed October 26, 2020.

> • **Tax assessments: property tax information, actual property taxes paid, exceptions to tax assessments and other information provided in the tax assessors' records**.
> • Prior and current transactions: actual sale prices over time of the home itself and comparable recent sales of nearby homes
> • User data: data provided directly by millions of users of our mobile applications and websites.

(Emphasis added).

Therefore, it is clear from ZGI's sworn public statements to the SEC concerning its business model that at least part of ZGI's $1.3 billion in 2018 revenues is attributable to the use of the very valuable data that Plaintiff requested, which is gathered, reviewed, processed, managed, or otherwise created and stored by the Owen County PVA's office personnel in carrying out their duties to assess all taxable real property in the jurisdiction.

B.       Response of Brad McDowell, PVA, Shelby County:

My response is the same as Mr. Robertson's Response at 10.A, above.

C.       Response of Jason Neely, PVA, Clark County:

My response is the same as Mr. Robertson's Response at 10.A, above.

D.       Response of Jason Scriber, PVA, Henry County:

My response is the same as Mr. Robertson's Response at 10.A, above.

E.       Response of Jill Mahoney, PVA, Trimble County:

My response is the same as Mr. Robertson's Response at 10.A, above.

F.       Response of Kellie Lang, PVA, Franklin County:

My response is the same as Mr. Robertson's Response at 10.A, above.

**11.**       Describe the size, in bytes, of the records requested by the Zillow Request made to your office and the amount of time required to copy that information to an external electronic storage device, such as an external hard drive or flash drive.

**RESPONSE:**

A.       Response of Blake Robertson, PVA, Owen County:

I do not know the size of the file containing the records requested by Zillow on April 25, 2019. I did not create the file, because Zillow did not sign and return the contract. Had I made a copy of the file, it would likely have taken 10 to 15 minutes.

B.      Response of Brad McDowell, PVA, Shelby County:

I do not know the size of the file containing the records requested by Zillow on April 25, 2019. I did not create the file, because Zillow did not sign and return the contract. Had I made a copy of the file, it would likely have taken 10 to 15 minutes.

C.      Response of Jason Neely, PVA, Clark County:

I do not know the file size. It should take 5-10 minutes to copy it to an external hard drive or flash drive.

D.      Response of Jason Scriber, PVA, Henry County:

Database file size (4 files) – 9.25 MB / Tax Bill File – 1.15 MB.   It typically takes our software around 15 minutes to create the files.

E.      Response of Jill Mahoney, PVA, Trimble County:

The files that were requested in the Spring of 2019 by Zillow have been deleted.  So I am not sure what the actual size of those files were.  Each year we do a new extraction, so the size will vary from year to year. I have never extracted such files to an external device, so I am not sure how long that process would take.

F.      Response of Kellie Lang, PVA, Franklin County:

I do not know the file size. It would take 10-15 minutes to copy the information to an external hard drive or flash drive.


**12.**      Describe the basis for the fee you quoted Zillow for the records requested by the Zillow Request made to your office. If you are relying upon the "PVA OPEN RECORDS COMMERCIAL FEE GUIDELINES" attached to Zillow's Complaint as Exhibit A, identify which charges listed in those guidelines you incorporated, and the dollar amount of each.

**RESPONSE:**

A.      Response of Blake Robertson, PVA, Owen County:

The quote issued to Zillow by the Owen Co. PVA office in response to its April 25, 2019 Open Records Act request was comprised of two fees: the $1.75 bulk rate fee ("Bulk Rate for Property Characteristics – Entire County") multiplied by 9,035 parcels ($15,811.25) and the $0.70 "each additional building" fee multiplied by 4,414 units ($3,089.80), for a total of $18,901.05.

B.      Response of Brad McDowell, PVA, Shelby County:

24

The May 1, 2019 invoice issued to Zillow by the Shelby Co. PVA office was comprised of two fees: the $1.75 bulk rate fee ("Bulk Rate for Property Characteristics – Entire County") multiplied by 21,613 parcels ($37,822.75) and the $0.70 "each additional building" fee multiplied by 4,177 units ($2,923.90), for a total of $40,746.65.

C.     Response of Jason Neely, PVA, Clark County:

There were 17,746 parcels, and I calculated the fee by multiplying that amount of parcels by the $1.75 fee per property under the "Bulk Rate for Property Characteristics" category. 17,746 x $1.75 = $31,055.50.  I did not calculate any additional building fee ($0.70 for each additional building) under that category.

D.     Response of Jason Scriber, PVA, Henry County:

I informed Zillow's representative that there would be a fee for the request, but I did not provide her a quote, because Zillow never signed and returned the contract.

E.     Response of Jill Mahoney, PVA, Trimble County:

For Zillow's April 25, 2019 request, my office drafted six (6) invoices totaling $23,494.20 for six (6) different data set requests for data regarding 49,127 total parcels, billed as follows: (a) $0.15 per parcel exempt property 170 units = $25.50; (b) $1.75 per parcel first building 8419 units, $0.70 per each extra building 2503 units, $250 request fee = $16,735.35; (c) $0.30 per parcel, first 1000 real estate sales records 1000 units, $0.15 next 5000 records 5000 units, $0.05 each record after 5000th record 7719 units, $150 request fee $1,585.95; (d) $0.20 first 5000 units real property records 5000 units, $0.15 next 5000 records 1148 units, $250 request fee = $1,422.20; (e) $0.20 first 5000 real estate assessment records 5000 units; $0.15 next 10,000 records 7220 units, $250 request fee = $2,333; and (f) $0.20 first 5000 accounts tax roll 5000 units, $0.15 next 10,000 accounts 948 units; $250 request fee = $1,392.20. Note that this is the same $23,494.20 total for the same data sets requested by First American Data Co. in 2019. See response to Interrogatory 6(iii) above.

F.     Response of Kellie Lang, PVA, Franklin County

There were 24,686 parcels in the Franklin County data set as of April 25, 2019, and I calculated the $9,924.40 fee quoted to Zillow by multiplying the number of parcels by the $0.40 fee per parcel under the "GIS/Topographic Data (in digital electronic data format)" and adding the $50 per request fee from the same fee category of the PVA Records Commercial Fee Guidelines. 24,686 x $0.40 + $50 = $9,924.40.

**13.** State what governmental interests you contend the Commercial Purpose Fee Statutes (as that term is defined in the Complaint) advance, and how the law advances each interest identified.

**RESPONSE:**

A.    Response of Blake Robertson, PVA, Owen County:

The Owen County PVA office expends a considerable sum of public funds to gather, process, create, catalogue, manage, and store the data and information requested by Zillow. The Kentucky legislature has created a statutory right to access this information and data through the Open Records Act, KRS 61.870 to 61.884, and for the collection of fees to offset the costs to the Commonwealth of gathering, processing, creating, cataloguing, managing, or otherwise acquiring, and storing the data and information by persons and business entities, such as the Plaintiff, that make a profitable use of the data and information in their private business ventures.

In particular, KRS 61.874(4) authorizes the collection of a "reasonable fee" for the provision of nonexempt public records that are "requested for a commercial purpose" as defined pursuant to KRS 61.870(4)(a) (see Response to Interrogatory No. 10 above). KRS 61.874(4)(c) expressly authorizes the collection of a fee that offsets all costs to my office for all of the following: "media, mechanical processing, and staff required to produce a copy of the public record or records;" and the "creation, purchase, or other acquisition of the public records." The bill presented to Zillow for its April 25, 2019 Open Records request, as a commercial purpose requester, represents both the actual total costs for media, mechanical processing, and staff required to produce a copy of the public records requested and a proportional amount of the actual total costs to my office for creating, purchasing or otherwise acquiring the requested data.

The "user pays" principle of public resource allocation is served by charging the users of the very valuable PVA data a fair proportion of the enormous costs that go into creating that data on an annual basis.

B.    Response of Brad McDowell, PVA, Shelby County:

My response is the same as Mr. Robertson's Response at 13.A, above.

C.    Response of Jason Neely, PVA, Clark County:

My response is the same as Mr. Robertson's Response at 13.A, above.

D.    Response of Jason Scriber, PVA, Henry County:

My response is the same as Mr. Robertson's Response at 13.A, above.

E.    Response of Jill Mahoney, PVA, Trimble County:

My response is the same as Mr. Robertson's Response at 13.A, above.

26

F.      Response of Kellie Lang, PVA, Franklin County:

My response is the same as Mr. Robertson's Response at 13.A, above.


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Interrogatories Propounded to Thomas B. Miller, Commissioner, Department of Revenue**

**1.**      Identify each person who provided information for your answers to the Interrogatories.

**RESPONSE:**

Myself; Tom Crawford, Executive Director of the Office of Property Valuation, Department of Revenue; Mike Tackett, Director, Unmined Minerals and GIS Services, Office of Property Valuation, Department of Revenue; Mack Bushart, Executive Director, Kentucky PVAs' Association; and counsel.

**2.**      Identify each individual with personal knowledge of discoverable matters relating to the affirmative defenses asserted in your Answer to the Complaint.

**RESPONSE:**

See Defendants' Rule 26 Initial Disclosures served on Plaintiff on July 30, 2020.

**3.**      Identify each person you expect to call as an expert witness at trial within the meaning of Fed. R. Civ. P. 26; the subject matter on which the person is expected to testify; the substance of the facts and opinions to which the expert expected to testify; and a summary of the grounds for each opinion the expert intends to offer at trial.

**RESPONSE:**

I have not determined whether I will call an expert witness at trial.  However, if I determine that I will use an expert witness, this response will be promptly supplemented and all necessary disclosures will be made pursuant to Rule 26(a)(2) and (b)(4).

**4.**      Identify each person you expect to call as a lay witness at any trial in this matter and the subject-matter of the person's expected testimony.

**RESPONSE:**

I have not yet determined which persons, if any, I intend to call to testify at the trial in this matter. It may be assumed that I may call Tom Crawford to testify as a fact witness and/or as a rebuttal witness. If I determine that I will call any other witnesses, this response will be promptly supplemented.

**5.**     Identify each document you expect to introduce as an exhibit at any deposition, hearing, or trial in this matter.

**RESPONSE:**

I have not yet determined which documents I may offer into evidence or submit to the Court for consideration in this matter, at any deposition scheduled herein, or at the trial of this matter. However, it can be assumed that every document filed by either myself or the Plaintiff with the Court and/or produced in the discovery phrase of this litigation by any party may be used as evidence at both the depositions and at the trial of this matter. Further, all documents filed by the Plaintiff with the department of Revenue and/or the other Defendants in this matter, may be submitted to the Court, a deponent, or a witness at trial for consideration.

**6.**     Describe how the charges specified in the "PVA OPEN RECORDS COMMERCIAL FEE GUIDELINES" (attached to the Complaint as Exhibit A) for the "PROPERTY TAX ROLL/BILL FILE" were formulated. For each charge, state what costs to the PVA the charge is based upon, if any.

**RESPONSE:**

**Objection.** Zillow's April 25, 2019 requests to each of the PVA Defendants was for the tax roll file along with all property characteristics, land, sales history and other items that are not part of the "tax roll file." See, e.g. Exhibit D to Zillow's Complaint (April 25, 2019 request letter to Brad McDowell). Therefore, to the extent that this Interrogatory requests information concerning the basis of the fees for only a "Request For Property Tax Roll/Bill File," the Interrogatory is irrelevant or, at a minimum, appears to be seeking an answer or response that does not acknowledge these additional facts.

Without waiving this objection, I state that the "Request For Property Tax Roll/Bill File" category of the PVA Open Records Commercial Fee Guidelines consists of five (5) categories: a single fee of $250 per request; a fee of 20 cents per record for the first 5,000 records; a fee of 15 cents per record for the next 10,000 records; a fee of 10 cents per record for the next 15,000 records and 5 cents per record for each additional record over the 30,000th record. Each of these fees are comprised of the costs described by the PVAs in their responses to Interrogatory No. 8 above.

KRS 61.874(4) authorizes the collection of a "reasonable fee" for the provision of nonexempt public records that are "requested for a commercial purpose" defined by KRS 61.870(4)(a) as: "the direct or indirect use of any part of a public record or records, in any form, for sale, resale, solicitation, rent, or lease of a service, or any use by which the user expects a profit either through commission, salary, or fee." KRS 61.874(4)(c) expressly authorizes the collection of a fee that offsets all costs to each PVA office for all of the following: "media, mechanical processing, and staff required to produce a copy of the public record or records;" and the "creation, purchase, or other acquisition of the public records."

The fees listed in the "Request For Property Tax Roll/Bill File" category of the PVA Open Records Commercial Fee Guidelines represent both the actual total costs for media, mechanical processing, and staff required to produce a copy of the public records requested and a proportional amount of the actual total costs to each PVA office for creating, purchasing, or otherwise acquiring the requested data. These costs include computers; tax roll software and other software licenses and purchases, including the ESRI Enterprise License Agreement (GIS software); printers; plotters; GPS USB devices; scanners; aerial photography; internet access fees, and GIS training. These itemized costs were determined by the Department, in cooperation with the Kentucky PVAs' Association.

      **7.**     State whether or not you contend that you have the legal authority to order all PVAs in the Commonwealth of Kentucky to cease charging fees for public records.

**RESPONSE:**

      **Objection**. I object to Interrogatory No.7, because it calls for a legal conclusion. I further object to Interrogatory No. 7 as it is irrelevant to the issues and facts of the present matter.

      **8.**     State whether your office has ever conducted an analysis or study to determine what the cost to a PVA is of media, mechanical processing, and staff required to produce electronic copies of the PVA records requested by the Zillow Request.

**RESPONSE:**

No analysis or study was undertaken with regard to Zillow's specific Open Records requests of April 25, 2019. However, in the past, the Department has worked with the Kentucky PVAs' Association to identify the specific costs for media, mechanical processing, and staff required to produce electronic copies of the records that would have been responsive to Zillow's April 25, 2019 requests.

      **9.**     State whether your office has ever conducted an analysis or study to determine what the cost to a PVA is of the creation, purchase, or other acquisition of the PVA records requested by the Zillow Request.

**RESPONSE:**

No analysis or study was undertaken with regard to Zillow's specific Open Records requests of April 25, 2019. However, in the past, the Department has worked with the Kentucky PVAs' Association to identify the specific costs that are associated with the creation, purchase, or other acquisition of the data used by the PVAs to create the records that would have been responsive to Zillow's April 25, 2019 requests.

**10.** State what governmental interests you contend the Commercial Purpose Fee Statutes (as that term is defined in the Complaint) advance, and how the law advances each interest identified.

**RESPONSE:**

The PVA offices expend a considerable sum of public funds to gather, process, create, catalogue, manage, and store the data and information requested by Zillow. The Kentucky legislature has created a statutory right to access this information and data through the Open Records Act, KRS 61.870 to 61.884 and for the collection of fees to offset the costs to the Commonwealth of gathering, processing, creating, cataloguing, managing, or otherwise acquiring, and storing the data and information by persons and business entities, such as the Plaintiff, that make a profitable use of the data and information in their private business ventures.

In particular, KRS 61.874(4) authorizes the collection of a "reasonable fee" for the provision of nonexempt public records that are "requested for a commercial purpose" as defined pursuant to KRS 61.870(4)(a). KRS 61.874(4)(c) expressly authorizes the collection of a fee that offsets all costs to the PVA offices for all of the following: "media, mechanical processing, and staff required to produce a copy of the public record or records;" and the "creation, purchase, or other acquisition of the public records." The invoices or price quotes presented to Zillow for its April 25, 2019 Open Records requests, as a commercial purpose requester, represents both the actual total costs for media, mechanical processing, and staff required to produce a copy of the public records requested and a proportional amount of the actual total costs to each PVA office for creating, purchasing, or otherwise acquiring the requested data.

The "user pays" principle of public resource allocation is served by charging the users of the very valuable PVA data a fair proportion of the enormous costs that go into creating that data on an annual basis.

/s/Jason Neeley (with permission – RWB)
Jason Neely, PVA, Clark County

/s/Kellie Lang (with permission – RWB)
Kellie Lang, PVA, Franklin County

/s/Jason Scriber (with permission – RWB)
Jason Scriber, PVA, Henry County

/s/Blake Robertson (with permission – RWB)
Blake Robertson, PVA, Owen County

/s/Brad McDowell (with permission – RWB)
Brad McDowell, PVA, Shelby County

/s/Jill Mahoney (with permission – RWB)
Jill Mahoney, PVA, Trimble County

/s/Thomas B. Miller (with permission – RWB)
Thomas B. Miller, Commissioner, Department of Revenue

Respectfully submitted,

/s/ Richard W. Bertelson, III
Richard W. Bertelson, III (KBA #87463)
Office of Legal Services for Revenue
P.O. Box 423
Frankfort, KY 40602-0423
richard.bertelson@ky.gov
(502) 564-9572

Laura C. Tipton (KBA #92527)
Taylor Payne (KBA #93524)
Office of the Governor
700 Capitol Ave., Suite 106
Frankfort, KY 40601
laurac.tipton@ky.gov
Taylor.Payne@ky.gov
(502) 564-2611

COUNSEL FOR DEFENDANTS

## Certificate of Service

I certify that on October 27, 2020, a copy of the foregoing was served electronically on all parties of record via electronic mail.

/s/ Richard W. Bertelson, III
Counsel for Defendants