UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ZILLOW, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:19-cv-00049-GFVT |
| | ) | |
| V. | ) | |
| | ) | **OPINION** |
| DANIEL P. BORK, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In recent years, Zillow has transcended its identity as a housing services brand and
achieved social media stardom.  "Zillow Surfing" has become a popular alternative form of
social media and the brand inspired a viral Twitter account reviewing its most intriguing
listings.[1]  But to provide its services, be they for entertainment or practical use, Zillow relies on
publicly available information.  This case arises from Zillow's attempts to obtain tax roll files
from six Kentucky counties.  Each of those counties informed Zillow it would have to pay an
increased cost, pursuant to a state statute, because it was using the files for commercial purposes.
Zillow then brought this action alleging this practice and the statutory scheme allowing it violate
its rights to free speech and equal protection under the First and Fourteenth Amendments.  The
parties filed cross-motions for summary judgment and the matter is now ripe for review.  [R. 60;
R. 61.]

---

[1] Taylor Lorenz, *Zillow Surfing is the Escape We All Need Right Now*, N.Y. Times (Nov. 19, 2020),
https://www.nytimes.com/2020/11/19/style/zillow-surfing-home-listings html; *Zillow Gone Wild*, Twitter,
https://twitter.com/zillowgonewild?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (last visited
March 10, 2022).

Zillow challenges two distinctions included in these statutes.  The first distinguishes between whether a party is requesting open records for a commercial or non-commercial purpose and imposes a higher fee on commercial purpose requesters.  The second distinction states that newspapers are not to be considered commercial purpose requesters, even if they meet the statutory definition.  As explained below, the Court finds the former distinction is constitutional, but the latter violates Zillow's rights to free speech and equal protection. Consequently, the Court will **GRANT** in part and **DENY** in part each party's Motion.

## I

Zillow is a publicly traded company which owns several "brands focus[ed] on all stages of the home lifecycle."  [R. 1 at 6.]  Its "most well-known brand" is Zillow.com, a database of properties across the country which lists information about the property and a "Zestimate" of the property's value.  *Id.* at 6-7.  Zillow receives this information by requesting tax roll files (tax roll, tax assessment, and tax appraisal files) from local Property Value Administrators.  *Id.*  In 2019, Zillow requested these files from PVAs in Shelby, Franklin, Henry, Owen, Trimble, and Clark Counties.  [R. 60-7.]  Each asked Zillow to pay a "commercial purpose" fee in order to access the files.  [R. 60-8.]

County PVAs are permitted to charge a "commercial purpose" fee pursuant to Kentucky's open records statutory scheme.  Kentucky's Open Records Act, KRS § 61.872, grants Kentucky residents the right to inspect any "public record," subject to some exceptions. KRS § 133.047 mandates property tax rolls be maintained as "an open public record" for five years.  Pursuant to KRS § 61.874, if a requester is seeking records for "commercial or business purposes," they can be charged a "reasonable fee" to compensate for the "cost of personnel time."  KRS § 133.047(4)(b).  The Department of Revenue is directed to assist PVAs in

2

developing "a reasonable fee schedule." *Id.* These fees can be based on (1) the cost of the media, processing, or staff required to make a copy of the record, and/or (2) the cost of the creation, purchase, or acquisition of the record. KRS § 61.874(4)(c). Non-commercial requesters may also be subject to a "reasonable fee," but that fee cannot exceed the actual cost of reproduction, not including the cost of necessary staff. *Id.* at (3).

A request is for a "commercial purpose" if the record will be directly or indirectly used "for sale, resale, solicitation, rent, or lease" or any other use the requester expects will result in a profit. KRS § 61.870(4)(a). However, use by newspapers, periodicals, radio and television stations in news or informational programs, or in prosecution or defense of litigation is not considered a commercial purpose, even if those requesters expect to profit from their use. KRS § 61.870(4)(b). Commercial users can also be required to state the purpose of their request and "enter a contract with the agency" permitting use of the record for that stated purpose. KRS § 61.874(4)(b).[2]

When Zillow requested tax roll files from the PVAs, each deemed Zillow a commercial user and asked it to pay the commercial fee, while some asked it to agree to a commercial user contract. [R. 60-8.] Zillow brought this action in response, claiming the commercial purpose fee statutes are unconstitutional facially and as-applied under the First and Fourteenth Amendments. [R. 1.] The Court previously denied the PVAs' Motion to Dismiss.[3] [R. 29.] The parties then engaged in discovery and have filed cross-motions for summary judgment, which are ripe for review. [R. 60; R. 61.]

---

[2] These statutes will collectively be referred to as the "commercial purpose fee statutes" throughout this Order.
[3] The Defendants include the Shelby, Franklin, Henry, Owen, Trimble, and Clark County PVAs, in addition to the Commissioner of Kentucky's Department of Revenue. For clarity, the Court will refer to the Defendants collectively as the "PVAs" throughout this Order.

**II**

Zillow brings facial and as-applied challenges to the commercial purpose fee statutes under the First and Fourteenth Amendments.  [R. 1 at 22-31.]  A successful facial challenge shows that a regulation would be valid in no set of circumstances.  *Ohio Council 8 AFSCME v. Brunner*, 912 F. Supp. 2d 556, 561 (2012) (citations omitted).  This standard is lower when a regulation allegedly violates a challenger's right to free speech, as the First Amendment gives "the benefit of any doubt to protecting rather than stifling speech.'"  *Id.*  (quoting *Citizens United*, 130 S. Ct. at 891).  A regulation restricting free speech is facially invalid if a "'substantial number'" of its applications are unconstitutional.  *Id.* (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)).  If a court finds a challenged regulation is facially unconstitutional, it need not address any additional as-applied challenge.  *See Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 291 (6th Cir. 2018).  The Court will address each of Zillow's claims in turn, first resolving its facial challenges.

**A**

Zillow first claims the commercial purpose fee statutes violate its right to free speech.  [R. 61 at 15-24.]  The First Amendment protects the American public's right to freedom of speech.  U.S. CONST. amend. I.  This right extends to corporations.  *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 784 (1978).  Naturally, for a party to invoke the First Amendment, a government entity must have somehow abridged their speech.  The first issue that must be resolved is whether Zillow's requests for tax roll files from the PVAs constitute speech.

**1**

The PVAs argue that access to government records does not constitute speech, as access to information is distinct from use and communication of information.  [R. 61 at 12-14.]  Zillow

claims that once a government allows the public to access information, limits on that access are bound by the First Amendment.  [R. 61 at 15-16; R. 64 at 8-10.]  Generally, actual speech and symbolic or expressive conduct are protected by the First Amendment.  *Virginia v. Black*, 538 U.S. 343, 358 (2003).  This Court previously recognized Zillow's claim that access to government records constitutes protected speech is a "novel theory."  [R. 29 at 5.]  However, the claim is not unprecedented.  Two Supreme Court cases address access to information in the free speech context.  The parties' disagreement over whether the commercial purpose fee statutes violate the First Amendment is largely focused on those decisions.

The Supreme Court was first presented with a California statute allowing "public access to arrestees' addresses," but requiring requesters to certify they were obtaining the information for one of five specified purposes.  *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 34 (1999).  United Reporting believed the statute was unconstitutional and asked for declaratory and injunctive relief *before* the statute became effective.  *Id.* at 36.  The Court held that United Reporting could not pursue facial invalidation of the statute because *facially*, the statute merely regulated access to information in the government's hands, which is permissible. *Id.* at 40.  However, two concurrences, joined by a total of six Justices, expressed limitations on the Court's ruling.  Justice Scalia clarified that the Court was not deciding whether a restriction allowing access to some but not all parties would be "in reality a restriction upon speech."  *Id.* at 41-42 (Scalia, J., concurring).  Justice Ginsburg stated a government can decide how to distribute information to the public, so long as that decision was "not based on an illegitimate criterion such as viewpoint."  *Id.* at 43 (Ginsburg, J., concurring).  The PVAs argue, and the Court recognizes, that these statements are not binding precedent.  [R. 63 at 4.]  However, in the

absence of more definitive guidance applicable to this matter, these concurrences are persuasive. *See EMWomen's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 457 (2020).

A similar issue arose in *Sorrell*.  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 557 (2011).  A Vermont statute prevented the sale of doctors' prescribing practices, with exceptions such as sale for "educational communicators."  *Id.* at 564.  It also prevented any use of that information in marketing.  *Id.*  The Court found the law was a content and speaker-based restriction on speech because it disfavored "marketing, that is, speech with a particular content."  *Id.* at 564-66.  The Vermont statute is distinguishable because it regulated information in private hands, unlike *United Reporting* and the case at hand, which regulate access to information held by the government.  But in *Sorrell*, the Court helpfully explained its ruling in *United Reporting*, stating the concurrences and dissent all "recognized that restrictions on the disclosure of government-held information can facilitate or burden the expression of potential recipients and so transgress the First Amendment."  *Id.* at 569.  Stated more succinctly, access to government information can implicate the First Amendment.

The Sixth Circuit's ruling in *Amelkin* makes clear that the First Amendment is implicated when access to government information is restricted based on the requester's content or viewpoint*.*  A Kentucky statute made accident reports confidential, allowing access only to the parties to the accident, their insurers and attorneys, and news organizations distributing the report for the purpose of news publication (not commercial purposes).  *Amelkin v. McClure*, 330 F.3d 822, 824 (6th Cir. 2003).  The court stated the policy would be unconstitutional if it "singled out a small group for unfavorable treatment based either on the content or the viewpoint of the group's speech."  *Id.* at 828 (citing *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229 (1987)).  However, the court found the statute's exceptions allowing disclosure to news

organizations and "individuals with a personal interest in the accident" did not constitute a content-based speech restriction. *Id.* The court noted that the Plaintiffs had argued this was content-based because it effectively restricted commercial speech but found that was not a reasonable interpretation of the statute. *Id.*

These cases establish that the First Amendment is implicated when government imposes content-based restrictions on access to information. The PVAs' reliance on *Houchins*, which established there is no First Amendment right to access government information, is therefore misplaced. [R. 61 at 12]; *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978). While there is no such right and governments can choose not to provide information, once information is publicly accessible, there can be no content-based restrictions on access to it. *See United Reporting*, 528 U.S. at 42-44 (Ginsburg, J., concurring). The Court recognizes that this line of cases establishes a unique application of the First Amendment. In these situations, there is no true analysis of whether the requester is engaging in speech or expressive conduct, which would traditionally be necessary to warrant First Amendment protection. Rather, the very nature of a party's ability to access government information, which indirectly involves speech, is protected if that ability is conditioned on the content of the requester's speech. *See Sorrell*, 564 U.S. at 569 ("restrictions on the disclosure of government-held information can facilitate or burden the expression of potential recipients and so transgress the First Amendment.") Accordingly, the Court must determine whether the commercial purpose fee statutes make content-based distinctions on access to Kentucky's open records. If so, the First Amendment is implicated and the Court will proceed with the resulting analysis.

**2**

Zillow argues the commercial purpose fee statutes facially contain two distinct content-based restrictions on its speech.  [R. 61 at 17-18.]  These distinctions include (1) the commercial/non-commercial purpose distinction contained in KRS § 61.874(3)-(4) and (2) the newspaper exception to the definition of "commercial purpose" outlined in KRS § 61.870(4)(b)(1).  Generally, a restriction is content-based if it applies to certain speech "because of the topic discussed or the idea or message expressed."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  The Court has recognized that some facial distinctions "are more subtle, defining regulated speech by its function or purpose," but are still content-based and therefore subject to strict scrutiny.  *Id.*  The Court will address whether each of the distinctions established in the commercial purpose fee statutes are content-based.

**a**

Merely distinguishing use for a commercial versus non-commercial purpose is not a content-based distinction.  "Commercial purpose" is defined as direct or indirect use of public records for "sale, resale, solicitation, rent, or lease of a service" or any other use from which a profit is expected.  KRS § 61.870(4)(a).  Whether the requester expects a profit from their use of government records does not implicate the content or viewpoint of that use.  The only inquiry to determine whether a requester is engaged in a commercial purpose is the expected consequence of their use of the requested information.  This inquiry is content-neutral because that expectation is not tied in any way to the topic, idea, or message of any eventual speech containing the requested information.  *Reed*, 576 U.S. at 163.  As the Court previously stated, "the fees are charged based on whether the recipient seeks economic gain, not based on the content of the recipient's speech."  [R. 29 at 6.]

The commercial/non-commercial purpose distinction is content-neutral, so the First Amendment is not implicated.  In a traditional First Amendment analysis, this conclusion would be followed by an analysis of whether the restriction satisfies a lower level of scrutiny. However, the cases outlined above hold that when access to government records is at issue, the First Amendment is *only* implicated when there is a content-based distinction.  *See Amelkin*, 330 F.3d at 827-28.  Further analysis of the First Amendment challenge to the commercial/non-commercial purpose distinction is not warranted.  Summary judgment will be granted to the PVAs on Zillow's First Amendment challenge to the commercial/non-commercial purpose distinction contained in KRS § 61.874(3)-(4).

**b**

In contrast, the newspaper exception outlined in KRS § 61.870(4)(b)(1) establishes a more suspect distinction. The commercial purpose fee statutes distinguish between speakers: those seeking tax roll files for publication in a newspaper or periodical, and those seeking files for other commercial purposes.  KRS § 61.870(4)(b)(1).  This provision includes other exceptions as well, which Zillow initially also challenged, but the parties have only presented arguments relating to the newspaper exception.  [*See* R. 1 at 22-31; R. 61 at 17; R. 63 at 5-7; R. 60-1 at 16-18; R. 64 at 13-16.]  Because there has been no briefing apart from passing mentions of the other exceptions, the Court deems Zillow's challenge to those exceptions waived.  *See Haddad v. Sec'y, U.S. Dep't of Homeland Sec.*, 610 F. App'x 567, 568 (6th Cir. 2015).  Only the challenge to the newspaper exception is properly before the Court.

The newspaper exception plainly allows some speakers to access the tax roll files at a lower cost.  *See Citizens United v. FEC*, 558 U.S. 310, 340 (2010) ("Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others.").

Speaker-based distinctions are considered content-based because such restrictions "are all too often simply a means to control content." *Id.* Further, the statutes on their face favor those exempted uses (by not charging the heightened commercial purpose fee) over other commercial purpose requesters. *See Thomas v. Bright*, 937 F.3d 721, 728 (6th Cir. 2019). Favoring some content over others constitutes discrimination. *Id.*

The newspaper exception to the commercial purpose fee statutes is comparable to the legislation in *Sorrell*, which the Court held was a content and speaker-based restriction on speech. 564 U.S. at 563. Vermont prohibited pharmacies from disclosing prescribing information "for marketing." *Id.* at 559. There were a number of exceptions to this prohibition, including research, insurance compliance, "care management educational communications," law enforcement, and as otherwise provided by law. *Id.* at 559-60. The Court found these exceptions were "based in large part on the content of a purchaser's speech." *Id.* at 564. Certain "educational communications" were exempted, while marketing was restricted. *Id.* The same is true in the commercial purpose fee statutes. A newspaper is not subject to the commercial purpose fee even if it satisfies the definition of a commercial purpose. Meanwhile, other commercial purposes are restricted. *Sorrell* clearly indicates such a restriction is content-based.

*Amelkin* supports this conclusion as well. Access to government information cannot impose unfavorable treatment based on the content or viewpoint of the requester's speech. *Amelkin*, 330 F.3d at 828. Both Zillow and a newspaper could publish the tax roll files in the same manner and expect the same profit, but only Zillow would have to pay the commercial purpose fee. This distinction is based on the viewpoint of the requester's speech: news reporting versus other purposes, regardless of the requester's expected profit.

10

The PVAs point out that all but one stated they would have charged a newspaper the commercial purpose fee if it was requesting the volume of information requested by Zillow.  [R 60-1 at 9.]  They argue this means that the commercial purpose fee is levied depending on the nature and amount of requested records.  [R. 63 at 9.]  This application would blatantly conflict with the text of the statute.  "'Commercial purpose' *shall not include*" publication or related use by a newspaper.  KRS § 61.870(4)(b)(1).  Therefore, a newspaper could request every tax roll file from every county in the state every year and, so long as it published that information, would be exempt from the commercial purpose fee.  It would violate the statutory scheme for any PVA to impose the commercial purpose fee on a newspaper requesting such documents.

This illustrates the infirmity at issue.  If a newspaper were to establish a page on its website listing all of the properties in its county and the information about them provided in the tax roll file, it would not be considered a commercial purpose requester.  This is true even if the newspaper was profiting off of advertisements on the site, which would make it identical to Zillow's operation.  Therefore, requests for the same information being used for the same purpose would be subject to different burdens based on the identity of the speaker.  This is textbook viewpoint discrimination because the newspaper exception contemplates the identity of the speaker.  *See Sorrell*, 564 U.S. at 565.  Accordingly, the newspaper exception in KRS § 61.870(4)(b)(1) is content-based and for it to be upheld, the PVAs must show it satisfies strict scrutiny.

**3**

Next, the Court must establish and apply the appropriate level of scrutiny to determine whether the newspaper exception passes constitutional muster.  The parties disagree over what is the applicable level of scrutiny.  Generally, content-based restrictions on speech are only

11

permissible if they are "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). However, commercial speech has traditionally been subject to a lower standard of review. *See Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563 (1980). The PVAs rely on *Central Hudson*, arguing its ruling that commercial speech is subject to a lower form of scrutiny applies even when the distinction is content-based. [R. 63 at 10.] Zillow relies on a recent supreme court case, *AAPC*, claiming it holds all content-based restrictions are subject to strict scrutiny, even if they distinguish between commercial and non-commercial speech. [R. 61 at 18.]

The Sixth Circuit has affirmed Zillow's position. After the Supreme Court issued its opinion in *AAPC*, the court considered the appropriate level of scrutiny for a content-based regulation affecting commercial speech. *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 703-706 (6th Cir. 2020). Relying in part on *AAPC*, the court found that strict scrutiny applies to content-based regulations. *Id.* at 706 (citing *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2346-50 (2020). The court recognized there had been some inconsistency in the commercial speech standard following the Supreme Court's decision in *Reed*, which emphasized applying strict scrutiny to content-based restrictions on speech. *See id.* at 702-707. The court thoroughly explained its disagreement with other circuits which applied *Central Hudson's* intermediate scrutiny test to content-based restrictions on commercial speech. *Troy* clearly establishes that content-based commercial speech restrictions are subject to strict scrutiny, rather than the lower scrutiny established in *Central Hudson. Id.* at 706 ("strict scrutiny applies to content-based restrictions").

The PVAs also ask the Court to impose the modified standard of review for time, place, and manner restrictions on speech. [R. 60-1 at 14-15.] A regulation on the time, place, and

manner in which the public can engage in speech is constitutional if it is (1) content-neutral, (2) serves a significant government interest, and (3) leaves open ample alternative channels of communication. *Heffron v. Int'l Soc. For Krishna Consciousness*, 452 U.S. 640, 648 (1981) (citations omitted). The cases addressing unequal access to government information, albeit limited, do not consider such regulations to be on the time, place, or manner of speech. More importantly, content-based restrictions are not appropriate for time, place, and manner review. *See Cincinnati v. Discovery Network*, 507 U.S. 410, 428 (1993). As established above, the newspaper exception is content-based. Accordingly, the government must show the exception is (1) narrowly tailored to (2) serve a compelling interest to uphold the exception. *Reed*, 576 U.S. at 163.

The government asserts that it has a compelling interest in performing government functions, specifically funding the provision of open records. [R. 60-1 at 22-23.] The PVAs also mention that the purpose of the newspaper exception is to protect the press, though this is not specifically presented as a compelling interest. *Id.* at 18-19. The Supreme Court faced arguments that government funding is a compelling interest in two cases involving exceptions for the press. *Ragland*, 481 U.S. at 231; *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 586 (1983). Those cases clearly state that government funding is not sufficiently important to justify "special treatment" for the press. *See id.* Further, *exempting* certain requesters from paying an increased fee in no way serves an interest in increased, or even adequate, funding.

The Commonwealth's asserted interest in protecting the freedom of the press could be a compelling interest if the feared violation would actually be incompatible with the First Amendment. *See Lamb's Chapel v. Ctr. Moriches Free Sch. Dist.*, 508 U.S. 384, 394 (1993);

*Widmar v. Vincent*, 454 U.S. 263, 271 (1981).  The PVAs have not shown that requiring newspapers to pay the commercial purpose fee would violate the First Amendment by imposing on the freedom of the press.  In attempting to make this showing, the PVAs cite *Grosjean*, which held a tax on newspapers' advertising revenue unconstitutional.  *Grosjean v. Am. Press Co.*, 297 U.S. 233 (1936).  But that case specifically states "the owners of newspapers are [not] immune from any of the ordinary forms of taxation for support of the government."  *Id.* at 250.  "It is beyond dispute that the States and the Federal Government can subject newspapers to generally applicable economic regulations without creating constitutional problems."  *Minneapolis Star*, 460 U.S. at 581 (collecting cases).

The feared constitutional violation in this matter, charging newspapers for access to open records, would be part of a "generally applicable economic regulation" because all requesters who expect a profit from their use of the records would be subject to the commercial purpose fees.  The PVAs provide no more specific support for their contention that the newspaper exception upholds the First Amendment.  Accordingly, making newspapers subject to the commercial purpose fees would not violate the First Amendment, so the PVAs do not have a compelling interest in protecting the press.  *See Lamb's Chapel*, 508 U.S. at 394-95 (finding there was no compelling interest in avoiding an Establishment Clause violation when "the posited fears of an Establishment Clause violation are unfounded.")

The newspaper exception to the commercial purpose fee statutes is a content-based restriction which fails strict scrutiny because the PVAs provided no compelling interest in its support.  Therefore, the exception is facially unconstitutional and summary judgment will be granted to Zillow on its challenge under the First Amendment to KRS § 61.870(4)(b)(1).

**B**

In addition to its First Amendment claim, Zillow claims the commercial purpose fee statutes violate its right to equal protection under the Fourteenth Amendment.  [R. 1 at 28-31.] The Fourteenth Amendment's Equal Protection Clause requires government bodies to treat similarly-situated persons alike.  *Chambers v. Stengal*, 256 F.3d 397, 401 (6th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  If a restriction that treats groups differently implicates a fundamental right and is content-based, it must satisfy strict scrutiny.  *Id.*  Content-neutral restrictions must only be narrowly tailored to further a significant governmental interest.  *Id.* As with its First Amendment claims, Zillow argues both the commercial/non-commercial purpose distinction and the newspaper exception violate its right to equal protection.  [R. 64 at 19-20.]

**1**

The commercial/non-commercial distinction does not implicate, let alone violate, the Equal Protection Clause.  Equal protection requires *similarly situated* persons to be treated alike. *Chambers*, 256 F.3d at 401.  Parties are similarly situated when they are "in all relevant purposes alike" or do not "differ in several material respects."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005).  Commercial purpose requesters, as the statutes define them, do materially differ from non-commercial purpose requesters because they expect to receive a profit from their use of the record.  These two groups of requesters are not alike "in all relevant purposes."  Whether a requester anticipates a profit is a relevant distinction because, in adopting this provision, the Kentucky legislature determined that requesters who anticipate profiting off of their requested record should contribute more to funding the provision of open records than those who do not.  [R. 60-1 at 21.]  Therefore,

commercial and non-commercial purpose requesters are not similarly situated, so an equal protection challenge to KRS § 61.874(3)-(4) is inappropriate. Summary judgment will be granted to the PVAs on this portion of Zillow's Fourteenth Amendment claim.

2

Conversely, the newspaper exception does distinguish between similarly situated groups. A newspaper could make the exact same request for records, for the same purpose, as Zillow and would still be treated differently by not being exposed to the commercial purpose fee. Those requesters would be the same in all respects, except for the newspaper's identity. Because the newspaper would still anticipate profiting off of the records, this distinction is immaterial. Zillow is similarly situated to a newspaper requesting records for the same purpose, so the Equal Protection Clause is implicated. *Chambers*, 256 F.3d at 401.

As explained above, the newspaper exception is a content-based distinction in violation of the First Amendment. Content-based regulations that burden a fundamental right are typically subject to strict scrutiny under the Equal Protection Clause. *Id.* However, the standard of review is complicated because, like in the First Amendment context, commercial speech is treated differently than other speech. In *Chambers*, the Sixth Circuit tied the standard of scrutiny for an equal protection claim based on a burden on commercial speech to the First Amendment standard. *Id.* (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (2001)). After outlining the First Amendment's commercial speech standard, the court stated, "*it follows* that equal protection claims involving commercial speech also are subject to the same level of review." *Id.* (emphasis added). Therefore, the appropriate equal protection standard of review for the newspaper exception, which burdens commercial speech, is determined by the First Amendment commercial speech standard of review.

16

Above, the Court explained the Sixth Circuit's holding in *Troy* that, under the First Amendment, content-based restrictions on commercial speech are subject to strict scrutiny, while *Central Hudson*'s intermediate scrutiny standard applies if the restriction is content-neutral.  *See supra* II.A.2.b.  It does not appear the Sixth Circuit has had a chance to address an equal protection claim to burdened commercial speech following *Troy*.  However, it clearly stated in *Chambers* that burdened commercial speech is subject to the same level of scrutiny whether it is challenged under the First or Fourteenth Amendment.  256 F.3d at 401 (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992) ("noting that the First Amendment underlies the Court's equal protection analysis")).  As the First Amendment standard for commercial speech has been clarified since *Chambers*, it follows that that clarification would also apply to the Fourteenth Amendment.  Therefore, challenges to burdened commercial speech under the Equal Protection Clause are subject to strict scrutiny if they are content-based and intermediate scrutiny if they are content-neutral.

Above, the Court held the newspaper exceptions are content-based and fail strict scrutiny. *Supra* II.A.3.  The same analysis applies to the equal protection claim, so the newspaper exception is also in violation of the Fourteenth Amendment.  Accordingly, summary judgment will be granted to Zillow on its Fourteenth Amendment challenge to KRS § 61.870(4)(b)(1).

## C

The parties disagree over what portions of the commercial purpose fee statutes should be severed.  Zillow does not suggest the entire Kentucky Open Records Act should be stricken; rather, it argues all of the provisions establishing a distinction between commercial and non-commercial purposes should be severed from the remainder of the Act.  [R. 61 at 25.]  The PVAs

argue that if the Court decides to sever the statute, only the newspaper exception should be severed.  [R. 63 at 14-15.]

There is a strong presumption that statutes are severable so long as the statute, without the invalidated provision, is "capable of functioning independently."  *AAPC*, 140 S. Ct. at 2335, 2352 (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2209 (2020)). The Court only found the newspaper exceptions are unconstitutional, so it must determine whether the Open Records Act, more specifically the commercial purpose distinction, can exist without these exceptions.  This is clearly the case.  The PVAs themselves argue that the newspaper exceptions are severable because the purpose of the statute—funding the provision of open records—is maintained without the exceptions.  [R. 63 at 14-15.]  There is no suggestion or evidence that the legislature would only desire the commercial purpose fee statutes to exist if newspapers could be exempted.  *See AAPC*, 140 S. Ct. at 2350.  Therefore, the newspaper exceptions are severable and there is no need to invalidate the entire statutory scheme.

**D**

Having found the newspaper exception to the commercial purpose fee statutes to be facially unconstitutional, the Court must determine whether Zillow is entitled to each of its requested forms of relief.  Zillow requests declaratory relief stating the statutes are unconstitutional and a permanent injunction restraining enforcement of the statutes.  [R 1 at 31-32.]  The parties present minimal briefing on Zillow's entitlement to these forms of relief. Though the Court has found the commercial purpose fee statutes to be unconstitutional, the elements necessary to grant such relief must be satisfied for the Court to grant them.

1

The Court would only have the power to grant the requested declaratory relief under the Declaratory Judgment Act.  28 U.S.C. § 2201.  The Act requires the Court be faced with a "case of actual controversy" before granting declaratory relief.  *Id.*  The Sixth Circuit interprets this in line with the Article III case or controversy requirement.  *TCI/TKR Cable v. Johnson*, 30 Fed. App'x 581, 583 (6th Cir. 2002) (citing *Brennan v. Rhodes*, 423 F.2d 706, 706–07 (6th Cir. 1970)).  Determining whether a case presents an actual controversy or merely an attempt to obtain an advisory opinion is a "difficult task."  *Id.*  A case or controversy exists when the facts show "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *MedImmune v. Genentech, Inc.*, 549 U.S. 118 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941)).

The Court agrees with Zillow that the matter is ripe for declaratory judgment because it anticipates requesting the tax roll files again this, indeed every, year, and the unconstitutional statutory scheme is still in place.  Zillow will inevitably request the records again, and there is no indication that it would not be asked to pay the commercial purpose fee at that time.  [*See* R. 65 at 16.]  In *Austin*, the Sixth Circuit found an actual controversy existed when the defendant clearly intended to enforce the challenged law, and the plaintiff intended to engage in conduct violating the allegedly unconstitutional law.  *Mich. State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1184 (6th Cir. 1986).  The dynamic at hand is the same, so it is sufficiently immediate to warrant a declaratory judgment.[4]

---

[4] The PVAs argue Zillow's claims are moot because it received the records it requested in 2019 from a third-party data provider.  [R. 63 at 13-14.]  However, Zillow receiving these records for 2019 does not moot its request for *prospective* relief, as it intends to request records in the future.

The Declaratory Judgment Act states that courts "may" issue a declaratory judgment if an actual controversy is present, giving courts discretion over whether to exercise jurisdiction. There is typically a five-factor test to determine whether the Court should exercise that discretion. *See Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).  But when a case also raises claims that the Court must exercise jurisdiction over, such as claims for damages or injunctive relief, that are closely intertwined with the claim for declaratory relief, judicial economy no longer favors declining jurisdiction and the court should still consider the declaratory judgment claim. *Adrian Energy Assoc's v. Mich. PSC*, 481 F.3d 414, 422-23 (6th Cir. 2007).  In this matter, there is also a claim for injunctive relief, so the Court will exercise its discretion to consider the request for declaratory judgment.  Accordingly, the Court will grant declaratory judgment in Zillow's favor on its claims under the First and Fourteenth Amendments against the newspaper exception.  [*See* R. 1.]

### 2

Zillow also requests a permanent injunction preventing enforcement of the commercial purpose fee statutes.  A permanent injunction is warranted if the movant shows it suffered a constitutional violation and will suffer continuing irreparable injury with no adequate remedy at law. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 602 (2006).  As established above, Zillow has shown it suffered a constitutional violation by the PVAs' enforcement of the newspaper exceptions.  Similarly, Zillow is suffering an irreparable injury because its First Amendment rights are being violated.  Loss of such rights "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  This injury is continuing because the unconstitutional provisions are still in place, the PVAs plan to enforce them, and Zillow plans to continue to make requests subject to those provisions.  [R. 65 at 16.]  Therefore, Zillow

faces a continuing irreparable injury.  There is also no other adequate remedy at law because there are no money damages that can compensate a violation of one's First Amendment rights. While the Court is granting another form of relief—declaratory judgment—that judgment will not prevent enforcement of the unconstitutional statutory provisions.  A permanent injunction is necessary to ensure the newspaper exceptions will not be enforced to Zillow's detriment in the future.  Accordingly, the Court will issue a permanent injunction prohibiting enforcement of the newspaper exception.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.     Plaintiff Zillow, Inc.'s Motion for Summary Judgment **[R. 61]** is **GRANTED IN PART** and **DENIED IN PART**.  Summary Judgment is **GRANTED** in the Plaintiff's favor on the portions of Counts I and II challenging the newspaper exception, KRS § 61.870(4)(b)(1).

2.     The Defendants' Motion for Summary Judgment **[R. 60]** is **GRANTED IN PART** and **DENIED IN PART**.  Summary Judgment is **GRANTED** in the Defendants' favor on the portions of Counts I and II challenging the commercial/non-commercial distinction, KRS § 61.874(3)-(4).

3.     The Defendants are **PERMANENTLY ENJOINED** from enforcing KRS § 61.870(4)(b)(1) in light of the unconstitutional restriction it places on the First Amendment rights of other commercial purpose requesters.

4.     The newspaper exception established in KRS § 61.870(4)(b)(1) is **DECLARED** unconstitutional under the First and Fourteenth Amendments.

5.     This case is **STRICKEN** from the Court's active docket.

6.      Judgment shall issue promptly.


This the 23rd day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge

22